**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| RAQUEL CAMPS, in her capacity as the personal representative of the ESTATE OF ALBERTO CAMPS, <br> EDUARDO CAPPELLO, in his individual capacity, and in his capacity as the personal representative of the ESTATE OF EDUARDO CAPPELLO, <br> ALICIA KRUEGER, in her individual capacity, and in her capacity as the personal representative of the ESTATE OF RUBÉN BONET, <br> and, MARCELA SANTUCHO, in her individual capacity, and in her capacity as the personal representative of the ESTATE OF ANA MARÍA VILLARREAL DE SANTUCHO, <br>        Plaintiffs, <br>    v. <br> ROBERTO GUILLERMO BRAVO, <br>        Defendant. | Case No. 1:20-cv-24294-KMM |

## JOINT PROPOSED JURY INSTRUCTIONS

In accordance with the Court's Order dated December 29, 2020, ECF No. 18, the Parties jointly submit the following proposed jury instructions. Instructions the Parties do not agree on are set forth in bold type. Instructions proposed only by Plaintiffs are underlined, instructions proposed only by Defendant are italicized.

1869266

## <u>TABLE OF CONTENTS</u>

**1. Preliminary Instructions** ...................................................................................1

   1.1   Joint Proposed: General Preliminary Instruction ....................................1

   1.2   Joint Proposed: Official English Translation/Interpretation ...................8

   1.3   Joint Proposed: Jury Questions...............................................................9

   1.4   Joint Proposed: Opening Statements .....................................................11

   1.5   Joint Proposed: The Parties....................................................................12

   1.6   Joint Proposed "Representative of the Estate" Defined..........................13

**2. Trial Instructions** .............................................................................................14

   2.1   Joint Proposed: Stipulations....................................................................14

   2.2   Joint Proposed: Use of Depositions .......................................................15

   2.3   Joint Proposed: Interim Statements ........................................................16

   2.4   Joint Proposed: Judicial Notice..............................................................17

   2.5   Joint Proposed: Use of Interrogatories...................................................18

   2.6   Joint Proposed: In-Trial Instructions on News Coverage .......................19

**3. Basic Instructions** .............................................................................................20

   3.1   Joint Proposed: Introduction...................................................................20

   3.2   Joint Proposed: The Duty to Follow Instructions – No Corporate Party Involved ...................................................................................................21

   3.3   Joint Proposed: Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court ....................................22

   3.4   Joint Proposed: Credibility of Witnesses...............................................23

   3.5   Joint Proposed: Impeachment of Witnesses Because of Inconsistent Statements...............................................................................................24

   3.6   Disputed - Plaintiffs' Proposed Instruction: Expert Witnesses...............25

   3.6   Disputed - Defendant's Proposed Instruction: Expert Witnesses ...........27

   3.7.1   Disputed - Plaintiffs' Proposed Instruction: Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence .............................29

   3.7.1   Disputed - Defendant's Proposed Instruction: Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence .........................32

   3.7.2   Joint Proposed: Responsibility for Proof – Affirmative Defense – Preponderance of the Evidence..............................................................34

   3.8   Joint Proposed: Duty to Deliberate When Only the Plaintiffs Claims Damages.................................................................................................35

   3.9   Joint Proposed: Election of Foreperson Explanation of Verdict Form.................36

## TABLE OF CONTENTS

**4. Disputed: Plaintiffs' Proposed Specific Instructions on Claims & Liability** ......................37

**4. Disputed: Defendant's Proposed Specific Instructions on Claims & Liability** .................40

    4.1    Disputed - Plaintiffs' Proposed Instruction: Extrajudicial Killing .......................44

    4.1    Disputed - Defendant's Proposed Instruction: Extrajudicial Killing ...................54

    4.2    Disputed - Plaintiffs' Proposed Instruction: Attempted Extrajudicial
          Killing ...........................................................................................................58

    4.2    Disputed - Defendant's Proposed Instruction: Attempted Extrajudicial
          Killing ...........................................................................................................63

    4.3    Disputed - Plaintiffs' Proposed Instruction: Torture .............................................66

    4.3    Disputed - Defendant's Proposed Instruction: Torture ..........................................70

    4.4    Disputed - Plaintiffs Proposed Instruction: Political Views or Past Actions
          Do Not Provide An Affirmative Defense for International Law Violations .........72

    4.5    Disputed - Plaintiffs' Proposed Instruction: Illegal Orders Do Not Provide
          An Affirmative Defense for International Law Violations...................................76

    4.6    Disputed - Plaintiffs' Proposed Instruction: Self-Defense Excludes
          Liability in Some Circumstances .....................................................................80

    4.6    Defendant's Proposed Instruction: Self Defense ...................................................85

    4.7    Joint Proposed: Defendant's Liability ..................................................................87

    4.8    Disputed - Plaintiffs' Proposed Instruction: Liability for Aiding and
          Abetting...........................................................................................................89

    4.8    Disputed - Defendant's Proposed Instruction: Liability for Aiding and
          Abetting...........................................................................................................93

    4.9    Disputed - Plaintiffs' Proposed Instruction: Liability for Conspiracy...................95

    4.9    Disputed - Defendant's Proposed Instruction: Conspiracy..................................101

    4.10   Disputed - Plaintiffs' Proposed Instruction: Liability for Joint Criminal
          Enterprise ......................................................................................................104

    4.10   Disputed - Defendant's Proposed Instruction: Joint Criminal Enterprise ..........108

**5. Disputed - Plaintiffs' Proposed Instruction: Affirmative Defenses**..................................111

    5.1    Disputed - Plaintiffs' Proposed Instruction: Affirmative Defense – Statute
          of Limitations................................................................................................114

    5.1    Disputed - Defendant's Proposed Instruction: Affirmative Defense –
          Statute of Limitations.....................................................................................123

    5.2    Disputed - Plaintiffs' Proposed Instruction: Affirmative Defense –
          Exhaustion of Remedies ................................................................................128

    5.2    Disputed - Defendant's Proposed Instruction: Affirmative Defense –
          Exhaustion of Local Remedies .......................................................................133

1869266

## <u>TABLE OF CONTENTS</u>

**6. Plaintiffs' Proposed Instruction: Damages**................................................................**135**

    6.1    Disputed - Plaintiffs' Proposed Instruction: Compensatory Damages ...............138

    6.1    Disputed - Defendant's Proposed Instruction: Compensatory Damages............143

    6.2    Disputed - Plaintiffs' Proposed Instruction: Punitive Damages .........................146

    6.2    Disputed - Defendant's Proposed Instruction: Punitive Damages – The
        Torture Victim Protection Act ............................................................................151

1869266

<strong>Joint Proposed Jury Instructions[1]</strong>

<strong>1. Preliminary Instructions</strong>

**1.1    Joint Proposed: General Preliminary Instruction**

Members of the Jury:

Now that you've been sworn, I need to explain some basic principles about a civil trial and your duty as jurors. These are preliminary instructions. I'll give you more detailed instructions at the end of the trial.

The jury's duty:

It's your duty to listen to the evidence, decide what happened, and apply the law to the facts. It's my job to provide you with the law you must apply – and you must follow the law even if you disagree with it.

<u>What is evidence</u>:

You must decide the case on only the evidence presented in the courtroom. Evidence comes in many forms. It can be testimony about what someone saw, heard, or smelled. It can be an exhibit or a photograph. It can be someone's opinion.

Some evidence may prove a fact indirectly. Let's say a witness saw wet grass outside and people walking into the courthouse carrying wet umbrellas. This may be indirect evidence that it rained, even though the witness didn't personally see it rain. Indirect evidence like this is also called "circumstantial evidence" – simply a chain of circumstances that likely proves a fact.

---

[1] Instructions 1.1 through 3.9 on page 31 are modeled on the Eleventh Circuit Civil Pattern Jury Instructions, to the extent they differ, citations to supporting authority are provided. Citations to supporting authority are included for the remaining sections.

As far as the law is concerned, it makes no difference whether evidence is direct or indirect. You may choose to believe or disbelieve either kind. Your job is to give each piece of evidence whatever weight you think it deserves.

<u>What is not evidence</u>:

During the trial, you'll hear certain things that are not evidence and you must not consider them.

First, the lawyers' statements and arguments aren't evidence. In their opening statements and closing arguments, the lawyers will discuss the case. Their remarks may help you follow each side's arguments and presentation of evidence. But the remarks themselves aren't evidence and shouldn't play a role in your deliberations.

Second, the lawyers' questions and objections aren't evidence. Only the witnesses' answers are evidence. Don't decide that something is true just because a lawyer's question suggests that it is. For example, a lawyer may ask a witness, "You saw Mr. Jones hit his sister, didn't you?" That question is not evidence of what the witness saw or what Mr. Jones did – unless the witness agrees with it.

There are rules of evidence that control what the court can receive into evidence. When a lawyer asks a witness a question or presents an exhibit, the opposing lawyer may object if he/she thinks the rules of evidence don't permit it. If I overrule the objection, then the witness may answer the question or the court may receive the exhibit. If I sustain the objection, then the witness cannot answer the question, and the court cannot receive the exhibit. When I sustain an objection to a question, you must ignore the question and not guess what the answer might have been.

Sometimes I may disallow evidence – this is also called "striking" evidence – and order you to disregard or ignore it. That means that you must not consider that evidence when you are deciding the case.

I may allow some evidence for only a limited purpose. When I instruct you that I have admitted an item of evidence for a limited purpose, you must consider it for only that purpose and no other.

<u>Credibility of witnesses</u>:

To reach a verdict, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, part of it, or none of it. When considering a witness's testimony, you may take into account:

- · the witness's opportunity and ability to see, hear, or know the things the witness is testifying about;

- · the witness's memory;

- · the witness's manner while testifying;

- · any interest the witness has in the outcome of the case;

- · any bias or prejudice the witness may have;

- · any other evidence that contradicts the witness's testimony;

- · the reasonableness of the witness's testimony in light of all the evidence; and

- · any other factors affecting believability.

At the end of the trial, I'll give you additional guidelines for determining a witness's credibility.

<u>Description of the case</u>:

This is a civil case. To help you follow the evidence, I'll summarize the parties' positions. The Plaintiffs – Raquel Camps, in her capacity as the personal representative of the Estate of Alberto Camps, Eduardo Cappello ("Eduardo Cappello II"), Alicia Krueger, and Marcela

Santucho – claim that Defendant, Roberto Guillermo Bravo, extrajudicially killed Rubén Bonet, Eduardo Cappello I, and Ana María Villarreal de Santucho, and attempted to extrajudicially kill and tortured Alberto Camps by shooting him on or about August 22, 1972. Alternatively, Plaintiffs contend that, even if Defendant did not personally commit these violations, Defendant Bravo is responsible for the extrajudicial killing, attempted extrajudicial killing, and torture of their relatives because he aided and abetted, conspired with and/or entered into a joint criminal enterprise with the person or people who extrajudicially killed, attempted to extrajudicially kill, and tortured their relatives on or about August 22, 1972. Defendant Bravo denies those claims and asserts that he acted in self defense. Bravo also asserts the statute of limitations on the basis Plaintiffs waited too long before suing him.

Burden of proof:

Plaintiffs – Raquel Camps, in her capacity as the personal representative of the Estate of Alberto Camps, Eduardo Cappello II Alicia Krueger, and Marcela Santucho – have the burden of proving their case by what the law calls a "preponderance of the evidence." That means Plaintiffs must prove that, in light of all the evidence, what they claim is more likely true than not. So, if you could put the evidence favoring Plaintiffs and the evidence favoring Defendant Bravo on opposite sides of balancing scales, Plaintiffs need to make the scales tip to their side. If Plaintiffs fail to meet this burden, you must find in favor of Defendant Bravo.

To decide whether any fact has been proved by a preponderance of the evidence, you may – unless I instruct you otherwise – consider the testimony of all witnesses, regardless of who called them, and all exhibits that the court allowed, regardless of who produced them. After considering all the evidence, if you decide a claim or fact is more likely true than not, then the claim or fact has been proved by a preponderance of the evidence.

On certain issues, called "affirmative defenses," Defendant Bravo has the burden of proving the elements of a defense by a preponderance of the evidence. I'll instruct you on the facts Defendant Bravo must prove for any affirmative defense. After considering all the evidence, if you decide that Defendant Bravo has successfully proven that the required facts are more likely true than not, the affirmative defense is proved.

<u>Conduct of the jury</u>:

While serving on the jury, you may not talk with anyone about anything related to the case. You may tell people that you're a juror and give them information about when you must be in court. But you must not discuss anything about the case itself with anyone.

You shouldn't even talk about the case with each other until you begin your deliberations. You want to make sure you've heard everything – all the evidence, the lawyers' closing arguments, and my instructions on the law – before you begin deliberating. You should keep an open mind until the end of the trial. Premature discussions may lead to a premature decision.

In this age of technology, I want to emphasize that in addition to not talking face-to-face with anyone about the case, you must not communicate with anyone about the case by any other means. This includes e-mails, text messages, phone calls, and the internet, including social-networking websites and apps such as Facebook, Instagram, Snapchat, YouTube, and Twitter. You may not use any similar technology of social media, even if I have not specifically mentioned it here.

You must not provide any information about the case to anyone by any means whatsoever, and that includes posting information about the case, or what you are doing in the case, on any device or Internet site, including blogs, chat rooms, social websites, or any other means.

You also shouldn't Google or search online or offline for any information about the case, the parties, or the law. Don't read or listen to the news about this case, visit any places related to this case, or research any fact, issue, or law related to this case. The law forbids the jurors to talk with anyone else about the case and forbids anyone else to talk to the jurors about it. It's very important that you understand why these rules exist and why they're so important. You must base your decision only on the testimony and other evidence presented in the courtroom. It is not fair to the parties if you base your decision in any way on information you acquire outside the courtroom. For example, the law often uses words and phrases in special ways, so it's important that any definitions you hear come only from me and not from any other source. Only you jurors can decide a verdict in this case. The law sees only you as fair, and only you have promised to be fair – no one else is so qualified.

<u>Taking notes</u>:

If you wish, you may take notes to help you remember what the witnesses said. If you do take notes, please don't share them with anyone until you go to the jury room to decide the case. Don't let note-taking distract you from carefully listening to and observing the witnesses. When you leave the courtroom, you should leave your notes hidden from view in the jury room.

Whether or not you take notes, you should rely on your own memory of the testimony. Your notes are there only to help your memory. They're not entitled to greater weight than your memory or impression about the testimony.

<u>Course of the trial</u>:

Let's walk through the trial. First, each side may make an opening statement, but they don't have to. Remember, an opening statement isn't evidence, and it's not supposed to be argumentative; it's just an outline of what that party intends to prove.

Next, Plaintiffs will present their witnesses and ask them questions. After Plaintiffs' counsel questions the witness, Defendant's counsel may ask the witness questions – this is called "cross-examining" the witness. Then Defendant's counsel will present his witnesses, and Plaintiffs' counsel may cross-examine them. You should base your decision on all the evidence, regardless of which party presented it.

After all the evidence is in, the parties' lawyers will present their closing arguments to summarize and interpret the evidence for you, and then I'll give you instructions on the law.

[Note: Some judges may wish to give some instructions before closing arguments. See Fed. R. Civ. P. 51(b)(3).]

You'll then go to the jury room to deliberate.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 1.1 (2020).

**1.2     Joint Proposed: Official English Translation/Interpretation**

You may hear or see languages other than English during this trial.

You must consider evidence provided through only the official court translators/interpreters. It is important that all jurors consider the same evidence. So even if some of you know Spanish, you must accept the English translation/interpretation provided and disregard any different meaning.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 1.2 (2020).

### 1.3     Joint Proposed: Jury Questions

During this trial, you may submit questions to a witness after the lawyers have finished their own questioning. Here is how the procedure works: After each witness has testified, and the lawyers have asked all of their questions, I'll ask if any of you have questions. If you have a question, write it down and give it to the court staff.

You may submit a question for a witness only to clarify an answer or to help you understand the evidence. Our experience with juror questions indicates that jurors rarely have more than a few questions for any one witness, and there may be no questions at all for some witnesses.

If you submit a question, the court staff will give it to me and I'll share your questions with the lawyers in the case. If the rules of evidence allow your question, one of the lawyers or I will read your question to the witness. I may modify the form or phrasing of a question so that it's allowed under the evidence rules. Sometimes, I may not allow the questions to be read to the witness, either because the law does not allow it or because another witness is in a better position to answer the question. If I can't allow the witness to answer a question, you must not draw any conclusions from that fact or speculate on what the answer might have been.

Here are several important things to keep in mind about your questions for the witnesses:

·   First, you must submit all questions in writing. Please don't ask any questions aloud.

·   Second, the court can't re-call witnesses to the stand for additional juror questions. If you have a question for a particular witness, you must submit it when I ask.

·   Finally, because you should remain neutral and open-minded throughout the trial, you should phrase your questions in a way that doesn't express an opinion about the case or a witness. You must keep an open mind until you've heard all the evidence, the closing arguments, and my final instructions on the law.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 1.3 (2020).

**1.4    Joint Proposed: Opening Statements**

At times during the trial, the lawyers will address you. You'll soon hear the lawyers' opening statements, and at the trial's conclusion you'll hear their closing arguments. Sometimes the lawyers may choose to make short statements to you, either to preview upcoming evidence or to summarize and highlight evidence they just presented. These statements and arguments are the lawyers' views of the evidence or of what they anticipate the evidence will be. They are not evidence themselves.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 1.4 (2020).

**1.5    Joint Proposed: The Parties**

The parties to this case are the following four Plaintiffs and the Defendant:

Plaintiffs:

·    Raquel Camps, as the personal representative of the estate of Alberto Camps;

·    Eduardo Cappello II;

·    Alicia Krueger, formerly Alicia Bonet; and

·    Marcela Santucho.

Defendant:

·    Roberto Guillermo Bravo

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 1.5 (2020).

**1.6      Joint Proposed "Representative of the Estate" Defined**

As part of this lawsuit, Plaintiffs Eduardo Capello II, Alicia Krueger, and Marcela Santucho have brought claims against Defendant Bravo in their individual capacities—that is, on behalf of themselves personally—for the extrajudicial killings of Eduardo Capello I, Rubén Bonet, and Ana María Villarreal de Santucho, respectively.

In addition, Plaintiff Raquel Camps has been appointed the representative of the estate of Alberto Camps. As the representative of this estate, Plaintiff Raquel Camps may file lawsuits on behalf of Alberto Camps for injuries he suffered during his lifetime.

In this case, Plaintiff Raquel Camps contends that the estate of Alberto Camps is entitled to damages because Defendant Bravo is responsible for the torture and attempted extrajudicial killing of Alberto Camps. Therefore, you should think of the estate of the Alberto Camps as the real plaintiff as regards claims brought on behalf of his estate. If you decide in favor of Alberto Camps on one or more of the claims brought by Plaintiff Raquel Camps on behalf of his estate, then any damages that you find will be awarded to the estate of Alberto Camps, not Plaintiff Raquel Camps.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 1.6 (2020).

## 2. Trial Instructions

### 2.1    Joint Proposed: Stipulations

Sometimes the parties have agreed that certain facts are true. This agreement is called a stipulation. You must treat these facts as proved for this case. The parties have stipulated to the following facts:

- On October 15, 2012, an Argentine court convicted Luis Emilio Sosa and Emilio Jorge Del Real of (1) homicide committed with malice for the killings of Carlos Heriberto Astudillo, Rubén Pedro Bonet, Eduardo Adolfo Capello, Mario Emilio Delfino, Alberto Carlos Del Rey, Alfredo Elías Kohon, Clarisa Rosa Lea Place, Susana Lesgart, José Ricardo Mena, Miguel Angel Polti, Mariano Pujadas, María Angélica Sabelli, Ana María Villarreal de Santucho, Humberto Segundo Suárez, Humberto Adrián Toschi, and Jorge Alejandro Ulla; and (2) attempted homicide committed with malice for the attempted killings of Maria Antonia Berger, Alberto Miguel Camps, Ricardo René Haidar.

- Messrs. Sosa and Del Real received sentences of life imprisonment for those convictions.

- From August 15, 1972, to August 22, 1972, 19 prisoners were held captive at the Almirante Zar Naval Base in Trelew, Argentina.

- Prior to August 15, 1972, these prisoners were held in Rawson prison. After having escaped from that prison, they surrendered to the Argentine military subject to certain conditions, including that they each be examined by a physician who could confirm that they were in good health. Following their surrender and the physician's examination, the prisoners were transferred to Almirante Zar Naval Base in Trelew, Argentina.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 2.1 (2020).

**2.2     Joint Proposed: Use of Depositions**

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition(s) of the following witnesses will be presented to you by a video:

· Julio Ulla (May 14, 2021)

· Miguel Marileo (June 15, 2021)

· Carlos Marandino (August 26, 2021)

· Carlos Celi (February 14, 2022)

· Alicia Krueger (March 28, 2022)

· Marcela Santucho (April 4, 2022)

The deposition testimony that you will see is entitled to the same consideration as live testimony, and you must judge the deposition testimony just as if the witness was testifying in court.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 2.2 (2020).

**2.3**   **Joint Proposed: Interim Statements**

At the beginning of the trial, I told you that the lawyers might make statements previewing upcoming evidence or summarizing and highlighting evidence that they have already presented before. Right now, [Mr./Ms.] [name of attorney] is going to make a short statement. Please remember that the statement you are about to hear – like all statements by the lawyers – is [Mr./Ms.] [name of attorney]'s view of the evidence or of what he anticipates the evidence will be, but isn't itself evidence.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 2.3 (2020).

**2.4**      **Joint Proposed: Judicial Notice**

The rules of evidence allow me to accept facts that no one can reasonably dispute. The law calls this "judicial notice." I've accepted [state the fact(s) that the court has judicially noticed] as proved even though no one introduced evidence to prove it. You must accept it as true for this case.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 2.4 (2020).

**2.5     Joint Proposed: Use of Interrogatories**

During the trial, you may hear answers that Defendant gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, Defendant gave the answers in writing while under oath.

You must consider Defendant's answers to the interrogatories as though Defendant gave the answers on the witness stand.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 2.5 (2020).

**2.6     Joint Proposed: In-Trial Instructions on News Coverage**

Reports about this trial or about this incident may appear in the media. The reporters may not have heard all the testimony as you have, may be getting information from people who are not under oath and subject to cross examination, may emphasize an unimportant point, or may simply be wrong.

You must not read, listen to, or watch anything about this trial. It would violate your oath as a juror to decide this case on anything other than the evidence presented at trial and on your own common sense. You must decide this case exclusively on the evidence you receive here in court.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 2.6 (2020).

## 3. Basic Instructions

**3.1     Joint Proposed: Introduction**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-24294-KMM

RAQUEL CAMPS, in her capacity as the
personal representative of the ESTATE OF
ALBERTO CAMPS,
EDUARDO CAPPELLO, in his individual
capacity, and in his capacity as the personal
representative of the ESTATE OF
EDUARDO CAPPELLO,
ALICIA KRUEGER, in her individual
capacity, and in her capacity as the
personal representative of the ESTATE OF
RUBÉN BONET,
and, MARCELA SANTUCHO, in her
individual capacity, and in her capacity as
the personal representative of the ESTATE
OF ANA MARÍA VILLARREAL DE
SANTUCHO,
        Plaintiffs,
    v.
ROBERTO GUILLERMO BRAVO,
       Defendant.

COURT'S INSTRUCTIONS TO THE JURY

Members of the jury:

It's my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes

called deliberations.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.1 (2020).

**3.2      Joint Proposed: The Duty to Follow Instructions – No Corporate Party Involved**

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.2 (2020).

### 3.3    Joint Proposed: Consideration of Direct and Circumstantial Evidence; Argument of Counsel; Comments by the Court

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact.

There's no legal difference in the weight you may give to either direct or circumstantial evidence.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.3 (2020).

**3.4     Joint Proposed: Credibility of Witnesses**

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.4 (2020).

**3.5**     **Joint Proposed: Impeachment of Witnesses Because of Inconsistent Statements**

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony that same witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.5 (2020).

**3.6     Disputed - Plaintiffs' Proposed Instruction: Expert Witnesses**

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case, the witnesses providing expert opinions are:

·   **Dr. Rodolfo Guillermo Pregliasco**

·   **Professor James Brennan**

·   **Professor Maximo Langer**

·   **Dr. William R. Anderson**

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.6 (2020).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 3.6 Expert Witnesses**

Both parties propose instructions that mirror Eleventh Circuit Civil Pattern Jury Instruction 3.6.1. At the end of the instruction, Plaintiffs' proposal adds a list identifying the witnesses who will be providing expert opinion testimony during trial. Plaintiffs expect to present testimony from twelve witnesses, four of whom are expert witnesses who Plaintiffs disclosed to Defendant pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). Given the number of witnesses, Plaintiffs propose identifying the witnesses who will provide expert testimony to help the jury follow and assess the evidence presented at trial. Because Plaintiffs' instruction will assist the jury, without misleading or confusing them, it should be given as proposed by Plaintiffs. *See Kaplan v. Daimlerchrysler, A.G.,* No. 02-13223, 2003 WL 22023315, at *4 (11th Cir. Aug. 1, 2003) ("Judges are not restricted to standard jury instructions in formulating and giving jury instructions. . . . '[I]f the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction.'") (quoting *Jennings v. BIC Corp.*, 181 F.3d 1250, 1254 (11th Cir. 1999)).

3.6     **Disputed - Defendant's Proposed Instruction: Expert Witnesses**

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

**Authority:**
*Mamani v. Berzain*, Case 1:07-cv-22459-JIC, Dkt. 455 (S.D. Fla. March 27, 2018) (jury instructions in TVPA case that did not add historical or forensic to definition of expert witness of standard jury instruction); *Richardson v. Bombardier, Inc*., Nos. 8:03-cv-544-T-31MSS, 8:03-cv-539-T-31MSS, 2005 U.S. Dist. LEXIS 30025, at *15 (M.D. Fla. Nov. 16, 2005)("As explained in Daubert and subsequent case law, courts have a gatekeeping function under Rule 702 to determine whether an assertion, which purports to be scientific, is sufficiently reliable that it may form a sound basis for knowledge of a relevant historical fact.").

**Defendant's Argument in Support of Defendant's Proposed Instruction 3.6 Expert Witnesses**

### Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 3.6

Plaintiffs added the terms "historical" and "forensic" to the 11th Circuit Pattern instruction.

### Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 3.6

Defendant objects to Plaintiffs' addition of terms "historical" and "forensic" to the instruction. Instruction 3.6 should follow the pattern instruction and therefore neither "historical" nor "forensic" should be used in that instruction.

### 3.7.1    Disputed - Plaintiffs' Proposed Instruction: Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence

In this case it is the responsibility of Plaintiffs to prove every essential part of their claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiffs' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiffs.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiffs' claims by a preponderance of the evidence, you should find for Defendant as to that claim.

You may have heard of the term "proof beyond a reasonable doubt." This standard applies in criminal cases and is a stricter standard, requiring more proof than a preponderance of evidence. The reasonable doubt standard does not apply to civil cases such as this. You should, therefore, put that standard out of your minds.

**Sources**: Eleventh Circuit Civil Pattern Jury Instructions § 3.7.1 (2020); Model Civ. Jury Instr. Eighth Cir. § 3.04 (2021); Model Civ. Jury Instr. Third Cir. § 1.10 (2019); O'Malley, 3 Fed. Jury Prac. & Instr. §§ 104:01, 104:03 (6th ed.).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 3.7.1 – Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence**

Both parties propose instructions that mirror the Eleventh Circuit Civil Pattern Jury Instruction 3.7.1. Plaintiffs have included an additional final paragraph directing the jury to disregard the inapplicable "beyond reasonable doubt" standard for burden of proof. This variation is both regularly given and justified in this case.

Plaintiffs' proposed additional paragraph is regularly given in civil cases when instructing the jury on the preponderance of the evidence standard and is taken from pattern instructions used in several jurisdictions. *See, e.g.*, Model Civ. Jury Instr. Eighth Cir. § 3.04 (2021) ("You have probably heard the phrase 'proof beyond a reasonable doubt.' That is a stricter standard than 'more likely true than not true.' It applies in criminal cases, but not in this civil case; so put it out of your mind."); Model Civ. Jury Instr. Third Cir. § 1.10 (2019) ("You may have heard of the term 'proof beyond a reasonable doubt.' That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind."); O'Malley, 3 Fed. Jury Prac. & Instr. § 104:03 (6th ed.) (burden of proof where some jurors have served on jury in criminal case); *see also* Transcript of Trial at III-201, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021) (instruction in a TVPA case related to torture and attempted extrajudicial killing).

This addition is justified in this case for two reasons. First, the facts of this case – relating to the shooting, killing, and attempted killing of nineteen individuals – would ordinarily be the subject of a criminal case. Thus, it would be reasonable—albeit erroneous—for lay jurors to believe that this case requires a heightened burden of proof. Second, there are parallel criminal proceedings related to the same set of facts in Argentina, and the jury will learn of these

proceedings as the parties have stipulated to the admissibility of the convictions of Bravo's co-perpetrators. A lay juror may therefore believe—again, erroneously—that because Bravo's co-perpetrators were convicted of crimes, and because the only reason that Bravo was not tried in Argentina is that he was not in the country, that this trial is a substitute for Bravo's criminal trial. Plaintiffs' proposed instruction is therefore necessary to avoid confusion and to ensure the jury applies the correct burden of proof standard. *See Kaplan v. Daimlerchrysler, A.G.,* No. 02-13223, 2003 WL 22023315, at *4 (11th Cir. Aug. 1, 2003) ("Judges are not restricted to standard jury instructions in formulating and giving jury instructions."); *LaGarde v. U.S.*, 1975 WL 782 at *3 (N.D. Ala. 1975) (instructing the jury that "the burden in a case like this is not to prove something beyond a reasonable doubt, that's not the rule in a civil case, that's a criminal rule, just by a preponderance of the evidence").

### 3.7.1   Disputed - Defendant's Proposed Instruction: Responsibility for Proof – Plaintiffs' Claims – Preponderance of the Evidence

In this case it is the responsibility of Plaintiffs to prove every essential part of their claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the Plaintiffs' claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiffs.

When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the Plaintiffs' claims by a preponderance of the evidence, you should find for Defendant as to that claim.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.7.1 (2020).

**Defendant's Argument in Support of Defendant's Proposed Instruction 3.7.1 Responsibility for Proof – Plaintiffs' Claims**

Defendant proposed the 11th Circuit pattern instruction.

**<u>Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 3.7.1</u>**

Plaintiffs added an additional paragraph to the instruction as follows: "You may have heard of the term "proof beyond a reasonable doubt." This standard applies in criminal cases and is a stricter standard, requiring more proof than a preponderance of evidence. The reasonable doubt standard does not apply to civil cases such as this. You should, therefore, put that standard out of your minds."

**<u>Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 3.7.1</u>**

Defendant objects to the addition of the clause "proof beyond a reasonable doubt" to the pattern instruction.  Defendant objects to the phrase added about reasonable doubt. "The addition of this phrase will mislead the jury, is improper, this is not a criminal case, and this paragraph should not be added.  The Court should instruct the jury in accordance with the pattern instruction on the burden of proof in civilt cases in the Eleventh Circuit.

### 3.7.2   Joint Proposed: Responsibility for Proof – Affirmative Defense – Preponderance of the Evidence

In this case, the Defendant asserts the affirmative defenses of statute of limitations and failure to exhaust remedies. Even if the Plaintiffs prove their claims by a preponderance of the evidence, the Defendant can prevail in this case if he proves an affirmative defense by a preponderance of the evidence.

When more than one affirmative defense is involved, you should consider each one separately.

I caution you that the Defendant does not have to disprove the Plaintiffs' claims, but if the Defendant raises an affirmative defense, the only way he can prevail on that specific defense is if he proves that defense by a preponderance of the evidence.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.7.2 (2020).

**3.8     Joint Proposed: Duty to Deliberate When Only the Plaintiffs Claims Damages**

The fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that the Plaintiffs should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.8 (2020).

**3.9      Joint Proposed: Election of Foreperson Explanation of Verdict Form**

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

**Source:** Eleventh Circuit Civil Pattern Jury Instructions § 3.9 (2020).

**4. Disputed: Plaintiffs' Proposed Specific Instructions on Claims & Liability**

Under United States law, there is a civil action for recovery of damages for extrajudicial killings or torture committed by an individual acting with the actual or apparent authority of a foreign government. This law is known as the Torture Victim Protection Act or the "TVPA" for short.

Plaintiffs are pursuing three claims against Defendant based on the allegations that Rubén Bonet, Eduardo Cappello I, and Ana María Villarreal de Santucho were the victims of extrajudicial killing, that Alberto Camps was the victim of attempted extrajudicial killing and torture by shooting, and that Defendant is liable for those violations. In a moment I will tell you what the Plaintiffs must prove in order for you to find that those violations happened.

Plaintiffs have alleged that the Defendant is liable for each of these violations under various forms of liability. A form of liability is the way the law defines how a person may be held legally responsible for a violation against another person.

Plaintiffs allege that the Defendant is liable for each of the violations because he: (1) personally committed the violation; (2) aided and abetted the person or persons who committed the violation; (3) entered into a conspiracy to commit the violation; and/or (4) entered into a joint criminal enterprise to commit the violation. Any single one of these forms of liability is sufficient to establish the Defendant's liability in connection with one of the violations alleged by Plaintiffs. After I discuss the alleged violations themselves, I will provide you with more detail on each of these forms of liability.

**Sources:** Torture Victim Protection Act, 28 U.S.C. § 1350 note; Court's Instructions to the Jury at 17-18, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-202-03, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294; 28 U.S.C. § 1350 note.

**Plaintiffs' Argument in Support of Instruction 4.0 Specific Instructions on Claims & Liability**

Plaintiffs' proposed instruction 4.0 Specific Instruction on Claims & Liability accurately reflects the nature of the allegations in this case and provides a correct statement of the governing law. By contrast, Defendant's proposed instruction misstates the allegations in this case—*e.g.*, Alberto Camps is not a "Plaintiff" as Defendant's instruction wrongly states; rather, as the estate representative, Plaintiff Raquel Camps is asserting the claim Alberto Camps' estate.

Additionally, the definition of the Torture Victim Protection Act (TVPA) Defendant proposes is misleading and will confuse the jury. Plaintiffs' definition tracks the text of the statute itself almost verbatim and accurately reflects the claims that can be brought under the TVPA. The TVPA provides for liability against individuals, for acts they have committed, including when committed with only ***apparent*** and not actual authority; it does not provide for liability against foreign governments as Defendant's proposed definition suggests. *Compare* 28 U.S.C. § 1350 note, sec. 2(a) ("***An individual*** who, under actual or apparent authority, or color of law, of any foreign nation," subjects an individual to torture or extrajudicial killing shall be liable for damages (emphasis added)) *and* Plaintiffs' Proposed Instruction 4.0 ("Under United States law, there is a civil action for recovery of damages for extrajudicial killings or torture committed by ***an individual*** acting with the actual or apparent authority of a foreign government." (emphasis added)), *with* Defendant's Proposed Instruction 4.0 ("Under United States law, there is a civil action for recovery of damages for extrajudicial killings ***by a foreign government***." (emphasis added)); *see also Mohamad v. Palestinian Authority*, 566 U.S. 449, 453, 456 (2012) ("[F]oreign states may not be sued under the [Torture Victim Protection] Act", "the Act authorizes liability solely against natural persons."). Defendant's instruction thus erroneously misstates TVPA law and must be rejected.

Defendant also objects to the fact that Plaintiffs included the sentence: "Any single one of these forms of liability is sufficient to establish the Defendant's liability in connection with one of the violations alleged by Plaintiffs" in their proposed instruction. This makes no sense, it is a correct statement of the law and Defendant's own proposed instruction, correctly, includes this language virtually verbatim: "any single one of which is sufficient to establish his liability in connection with one of the violations."

**4. Disputed: Defendant's Proposed Specific Instructions on Claims & Liability**

**The Torture Victim Protection Act – Introduction**

Under United States law, there is a civil action for recovery of damages for extrajudicial killings or torture by a foreign government. This law is known as the Torture Victim Protection Act or "TVPA" for short.

Plaintiffs are pursuing three claims against Defendant based on the allegations that Eduardo Cappello, Ruben Bonet and Ana Maria Villarreal de Santucho were the victims of extrajudicial killing; that Plaintiff Alberto Camps was the victim of two distinct violations, torture and attempted extrajudicial killing; and, that the Defendant is liable for those violations. In a moment I will tell you what the Plaintiffs must prove in order for you to find that those violations happened.

Plaintiffs have alleged that the Defendant is liable for each of these violations under various forms of liability, any single one of which is sufficient to establish his liability in connection with one of the violations. Plaintiffs allege that the Defendant is liable for each of the violations because he: (1) personally committed the violation; (2) aided and abetted the person or persons who committed the violation; (3) entered into a conspiracy to commit the violation; and/or (4) entered into a joint criminal enterprise to commit the violation. After I discuss the alleged violations themselves, I will provide you with more detail on each of these forms of liability.

**Authority:** Torture Victim Protection Act Of 1991, March 12, 1992, 106 Stat 73; *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009); *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338 (11th Cir. 2011); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82 (D.C. Cir. 2002); *Curbelo Garcia v. Chapman*, No. 1:12-cv-21891, Dkt. 239-1 (S.D. Fla. Oct. 6, 2014); *Curbelo Garcia v. Chapman*, 911 F. Supp. 2d

1222, 1237 (S.D. Fla. 2012) (citing *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1344 (S.D. Fla. 2011).

**Defendant's Argument in Support of Defendant's Instruction 4.0**

<u>**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.0**</u>

Plaintiffs added the phrase "an individual acting with the actual or apparent authority of" before the phrase "by a foreign government" in the first paragraph

Plaintiffs added the words "by shooting" after torture in the fourth line of the second paragraph qualifying the type of torture that Plaintiffs suffered.

Plaintiffs added the phrase "A form of liability is the way the law defines how a person may be held legally responsible for a violation against another person," to the third paragraph.

Plaintiffs added the phrase "Any single one of these forms of liability is sufficient to establish the Defendant's liability in connection with one of the violations alleged by Plaintiffs" to the last paragraph.

<u>**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.0**</u>

Defendant's instruction more accurately states the law. Defendant objects to Plaintiffs' addition of terms "by shooting" to qualify the torture allegedly inflicted by Defendant.  Neither Plaintiffs' complaint nor any of their pleadings show this qualification to the torture claim.  Thus, the words "by shooting should be deleted from this instruction

Defendant further objects to Plaintiffs' addition of the phrases "an individual acting with the actual or apparent authority of," "A form of liability is the way the law defines how a person may be held legally responsible for a violation against another person,"  and "Any single one of these forms of liability is sufficient to establish the Defendant's liability in connection with one of the violations alleged by Plaintiffs" to the first, third and fourth paragraphs, respectively. Defendant modeled this instruction from the final instruction given in *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009). The phrases added by Plaintiffs were not part of the instruction of *Mamani* .  Further, Plaintiffs did not

cite any authority from the Southern District of Florida or the Eleventh Circuit for the addition of same.

**4.1     Disputed - Plaintiffs' Proposed Instruction: Extrajudicial Killing**

Plaintiffs Alicia Krueger, Eduardo Cappello II, and Marcela Santucho contend that Rubén Bonet, Eduardo Cappello I, and Ana María Villarreal de Santucho were the victims of extrajudicial killing. On their claims for extrajudicial killing, Plaintiffs must prove by a preponderance of the evidence:

1.  A person or persons deliberately killed Rubén Bonet, Eduardo Cappello I, and Ana María Villarreal de Santucho;

2.  The person or persons killed Rubén Bonet, Eduardo Cappello I, and Ana María Villarreal de Santucho while acting under the actual or apparent authority, or color of law, of the Argentine Republic; and

3.  The killing was not previously authorized by a judgment of a regularly constituted court affording all the judicial guarantees, which are recognized as indispensable by civilized peoples.

I want to provide you with some additional details regarding some of the terms I have just used.

**Extrajudicial**

You have heard me use the term "extrajudicial." Extrajudicial means that the killing was not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. A "regularly constituted court" must be independent and impartial, and it excludes all special tribunals (that is, courts or tribunals created for a specific event). Further, the judicial guarantees recognized as indispensable by civilized peoples, and that the Plaintiffs' relatives were entitled to receive, include:

1.  The right to a fair hearing free from torture of the accused and bribery of witnesses;

2.  The right to a lawyer to represent the accused without restrictions or undue pressure and the right to freely communicate with one's lawyer;

3.  The right of access to evidence in the possession of the prosecution that could potentially assist the accused; and

4.  The right to have a conviction and sentence reviewed by appeal to a higher court or tribunal.

A killing may have been extrajudicial even if it was authorized by a judge, court or tribunal or done pursuant to a judgment that was legal under the laws of the Argentine Republic at the time, if the proceedings for authorizing the killing did not afford "all the judicial guarantees which are recognized as indispensable by civilized peoples" as explained above.

## Under Color of Law

You have also heard me use the term "under color of law." Acting "under color of law" means that a person is acting or purporting to act in the performance of his official duties; it means that the action is cloaked with the authority of the government. A person can act under "color of law" even when his actions overstep, or constitute an abuse of, the actor's legal authority.

## Proof By Circumstantial Evidence

Finally, I want to explain something about proving extrajudicial killing, as it is relevant to the instructions I have given you. Sometimes proof may be offered in the form of direct evidence. It is also possible, however, to prove extrajudicial killing through the use of evidence that is entirely circumstantial or through a combination of direct and circumstantial evidence. All that is required is that the weight of the evidence supports a reasonable inference that an extrajudicial killing occurred.

**Sources:**

Extrajudicial Killing: Court's Instructions to the Jury at 14–15, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-205–06, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294; 28 U.S.C. § 1350 note ("For the purposes of this Act, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples."); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *4–*5  (S.D. Fla. Sept. 27, 2021); (finding that the hiring of a hitman to execute a specific, targeted killing constitutes an extrajudicial killing under the TVPA); *Jane W. v. Thomas*, No. CV 18-569, 2021 WL 4206665, at *15 (E.D. Pa. Sept. 15, 2021) (noting "[c]ourts have held that summary executions and a course of indiscriminate brutality, known to result in death can also be extrajudicial killings" and finding the killing of civilians sheltering in a church amounted to extrajudicial killing under the TVPA (quoting *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 17 (D.D.C. 1998))); *Chavez v. Carranza*, 413 F. Supp. 2d 891, 903–904 (W.D. Tenn. 2005) (granting summary judgment on two plaintiffs' claims of extrajudicial killing under the TVPA where undisputed evidence showed their family members were executed by members of the security forces without judicial process); *Chiminya Tachiona v. Mugabe*, 216 F. Supp. 2d 262, 271–73, 275 (S.D.N.Y. 2002) (finding that plaintiffs "easily met" the standard for extrajudicial killing under the TVPA where ZANU-PF, Zimbabwe's ruling party, murdered members of an opposition party).

Color of Law: Court's Instructions to the Jury at 15, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-205–06, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294; S. Rep. No. 102-249, at 8 (1991) (directing courts to apply "principles of liability under U.S. civil rights laws, in construing 'under color of law'"); *United States v. Picklo*, 190 F. App'x 887, 888 (11th Cir. 2006) (affirming that "under color of law" means under "pretense of law," and not necessarily under authority of law. Therefore, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law." Defendant acted under color of law when he robbed and shot the victim after identifying himself as a state investigator, flashing a badge, and using his official status to get plaintiff to follow his instructions (quoting *Williams v. United States*, 341 U.S. 97, 99 (1951))); *United States v. Ramey*, 336 F.2d 512, 515 (4th Cir. 1964) (finding "under color of law" means under pretense of law and includes misuse of power possessed by virtue of law and made possible only because the wrongdoer is clothed with the authority of the law. Defendant acted under color of law when he went to plaintiff's home as a police officer and arrested him without a valid warrant); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *3 (S.D. Fla. Sept. 27, 2021) (noting that, to interpret "color of law," "the Eleventh Circuit looks to "the principles of agency law and jurisprudence under 42 U.S.C. § 1983" and finding that defendant acted under color of law when paramilitary to which defendant belonged "operated in symbiotic relationship with Colombian state actors" (citation omitted)); *United States v. Emmanuel*, No. 06-20758-CR, 2007 WL 2002452, at *14 (S.D. Fla. July 5, 2007) (finding under the Torture Act, 18 U.S.C. § 2340(1), that "[t]o act under color of law is not synonymous with sovereignty, as government officials may act under color of law even when violating the law."); *Belfast v. United States*, No. 06-20758-CR, 2012 WL 7149532, at *13 (S.D. Fla. Oct. 17, 2012) (holding that defendant acted under color of law under the Torture Act when he committed acts of

torture in concert with the President of Liberia and members of the Liberian police and armed forces), *report and recommendation adopted*, No. 12-20754-CIV, 2013 WL 594023 (S.D. Fla. Feb. 14, 2013).

<u>Judicial Guarantees</u>: Court's Instructions to the Jury at 15–16, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-205–06, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294; *Hamdan v. Rumsfeld*, 548 U.S. 557, 632-34 (2006) ("The commentary accompanying a provision of the Fourth Geneva Convention, for example, defines 'regularly constituted' tribunals to include 'ordinary military courts' and 'definitely exclud[e] all special tribunals.'" . . . . [Indispensable judicial guarantees] "must be understood to incorporate at least the barest of those trial protections that have been recognized by customary international law. Many of these are described in Article 75 of Protocol I to the Geneva Conventions of 1949, adopted in 1977 (Protocol I)." [The accused] "must be privy to the evidence against him."); Protocol Additional to the Geneva Conventions of 12 August 1949, and Relating to the Protection of Victims of International Armed Conflicts (Protocol I), June 8, 1977, 1125 U.N.T.S. 3, art. 75(4) (Rights of the accused, under "generally recognized principles of regular judicial procedure," include, inter alia, rights to know the nature of the charges against him; to "all necessary rights and means of defense"; to present and examine witnesses; and, upon conviction, to be advised of "his judicial and other remedies and of the time-limits within which they may be exercised.").

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instructions 4.1**

Plaintiffs' instruction regarding extrajudicial killing accurately reflects the elements of extrajudicial killing under the TVPA and is taken virtually verbatim from instructions given in other cases involving claims of extrajudicial killing. *See* Court's Instructions to the Jury at 12, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, *aff'd*, 402 F.3d 1148 (11th Cir. 2005) ("*Cabello* Extrajudicial Killing Instruction"); Court's Instructions to the Jury at 14–15, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 ("*Jara* Extrajudicial Killing Instruction"); Transcript of Trial at III-205–06, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021) ("*Warfaa* Extrajudicial Killing Instruction").

Defendant's instruction is problematic as to (1) the definition of "deliberate" (or, as Defendant uses the term, "deliberated killing"), (2) its suggestion that extrajudicial killing "does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation," and (3) as to the meaning of "under color of law."

**<u>Deliberate or "Deliberated Killing"</u>**

Defendant contends that the instruction is not an accurate statement of the law because it does not include a definition of deliberation or the following sentence: "It does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation," pursuant to the definition of "Extrajudicial Killing" in the Torture Victim Protection Act ("TVPA"). 28 U.S.C. § 1350 *note* (Section 3 "Definitions"). Neither addition is appropriate.

First, Plaintiffs' instruction clearly directs the jury to find that there was an extrajudicial killing only if the decedents were killed *"deliberately." See* Plaintiffs Proposed Instruction 4.1 ("A person or persons ***deliberately*** killed Rubén Bonet, Eduardo Cappello I, and Ana María

Villarreal de Santucho" (emphasis added)). Defendant contends that the instruction should include a definition for "deliberated killing," but instructions from both the Southern and Middle Districts of Florida make clear that such definition is unnecessary, which makes sense given the commonplace use of the term "deliberate." *See Cabello* Extrajudicial Killing Instruction; *Jara* Extrajudicial Killing Instruction; *see also Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1233 (11th Cir. 2020) ("*Mamani III*").

Even if this Court were to find that a definition for "deliberate" is necessary to assist the jury, Defendant's proposed definition that a "deliberated killing" means a killing "undertaken with studied consideration and purpose" was interpreted too narrowly and has been clarified by recent Eleventh Circuit caselaw. Defendant relies on a single case in support of this proposed narrow definition—*Mamani v. Berzain,* 654 F.3d 1148 (11th Cir. 2011) ("*Mamani I*"). But since *Mamani I*, the Eleventh Circuit clarified in *Mamani III* that its definition of "deliberated" must be understood more broadly, explaining that, "[w]hile deliberation requires some period of reflection, it is not necessary that a person 'shall have brooded over a plan to kill or entertained it for any considerable period of time." For example, the *Mamani III* decision explained that "[e]ngaging in an act, such as shooting, with the 'goal and expectation of killing' another is deliberation even if the actor could not produce a list of names who would perish or 'look their victims in the eye.'" *Mamani III*, 968 F.3d at 1234. Ultimately, *Mamani III* held that a "deliberated killing" occurs when the "deaths were the result of a purposeful act to take another's life" without "just provocation." *See also Mamani v. Berzain*, 533 F. Supp. 3d 1252, 1257–58 (S.D. Fla. 2021) (explaining that *Mamani III* broadened the standard articulated in *Mamani I* by holding that "deliberated killing" occurred when "the cause of death was consistent with a deliberate shot from a member of the Bolivian military in the absence of just provocation"). The court emphasized that

"the definition encompasses a broad range of conduct . . . meant to encompass **many types of purposeful killing**" not limited to targeted killings and executions. *Mamani III*, 968 F.3d at 1233 (emphasis added). For example, "[e]ngaging in an act, such as shooting, with the 'goal and expectation of killing' another is deliberation even if the actor could not produce a list of names who would perish or 'look their victims in the eye.'" *Mamani III*, 968 F.3d 1216, 1234 (internal citations omitted).

Additionally, Defendant's proposal altogether ignores the prohibition on "indiscriminate firing against unarmed persons." Mamani III, 968 F.3d at 1216, 1237. "International tribunals have frequently held that 'indiscriminate firing' against unarmed persons [...] is unlawful." Mamani III, 968 F.3d 1237 (collecting cases). This is so even in situations that are not completely peaceful, for example, it was unlawful when Paraguayan police "fired indiscriminately at [demonstrators] who were fleeing with live ammunition", or when Kyrgyzstan militias "open[ed] fire on demonstrators in an attempt to disperse the crowd." Mamani III, 968 F.3d 1238 (internal citations omitted).

To the degree that the Court determines a definition of "deliberated killing" would assist the jury, the definition should be based on the more-recent Eleventh Circuit standard articulated in Mamani III that requires the killing occur **as the result of a purposeful act to take another's life without just provocation**.

Moreover, the Court should reject Defendant's self-serving proposals to include examples of nondeliberate killings that are entirely inapplicable to this case—e.g., "mistakenly identifying a target as a person who did pose a threat to others" or killings motivated by "personal reasons." To the extent the Court determines that additional context as to what qualifies as a "deliberated killing" would assist the jury, it should incorporate the factors the *Mamani III* court considered that **are** relevant to this case, such as that the decedents were unarmed, there was no evidence the

decedents posed a threat to the soldiers, many decedents where shot while they were hiding or fleeing, and there was no evidence that the military members were in imminent danger or acted out of sudden passion as they shot the decedents. *Mamani III*, 968 F.3d at 1235.

### Killings Lawfully Carried Out Under Authority of Foreign Nation

Defendant's proposed addition that an extrajudicial killing does not include killings that, "under international law," are "lawfully carried out under the authority of a foreign nation" improperly calls on the jury to reach a legal conclusion and will only distract them from their role as the finder of fact.[2] There is literally ***no evidence*** in this case that these killings were previously authorized; nor are there any proposed jury instructions about the substance of "international law" and what it requires. Under Plaintiffs' proposed instruction, if the jury reaches the factual conclusion that no judicial guarantees were provided, then it has found that the alleged killing was unlawful under international law, and thus extrajudicial within the meaning of the TVPA. *See* 28 U.S.C. § 1350, sec. 3. This is precisely what the District Court in *Mamani* held on remand, finding "that [a] decedent was deliberately killed by a member of [the] military in the absence of just provocation precludes a finding that the deaths were lawful under international law." *Mamani v. Berzain*, 533 F. Supp. 3d 1252, 1260 (S.D. Fla. 2021). To have the jurors further determine whether, "under international law," such action was "lawfully carried out" under the authority of the state of Argentina would require a legal conclusion and is unnecessary and improper.

---

[2] Note that the full definition in the statute reads: "For the purposes of this Act, the term 'extrajudicial killing' means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation." 28 U.S.C. § 1350 *note* (Section 3 "Definitions").

**Under Color of Law**

Defendant's instruction is also problematic because of its improper and misleading definition of "under color of law." Defendant improperly suggests that Plaintiff must cite to and prove the existence of a "law, ordinance, or regulation" to establish that Defendant's acts were "under color of law." That is wrong. Here, there is no serious question that Bravo was acting under color of law because he was on duty, at a naval basis, in uniform, carrying out what he claims were his official duties of overseeing prisoners. The notion that Plaintiffs must find some "law, ordinance, or regulation" that authorized Bravo's activities as a naval officer is legally baseless and contrary to established precedents. *Jara* Extrajudicial Killing Instruction; *Warfaa* Extrajudicial Killing Instruction; *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *3 (S.D. Fla. Sept. 27, 2021) (the color of law requirement may be met "by presenting evidence of the active participation of a single official") (quoting *Romero v. Drummond Co.*, 552 F.3d 1303, 1317 (11th Cir. 2008)); *Belfast v. United States*, No. 06-20758-CR, 2012 WL 7149532, at *9 (S.D. Fla. Oct. 17, 2012), *report and recommendation adopted*, No. 12-20754-CIV, 2013 WL 594023 (S.D. Fla. Feb. 14, 2013) (upholding conviction under the Torture Act where jury was instructed that "'under color of law' means to act beyond the bounds of lawful authority, but in such a manner that the unlawful acts were done while an official was purporting or pretending to act in the performance of official duties. In other words, the unlawful acts must consist of an abuse or misuse of power which is possessed by the official only because that person is an official."); *Jane W v. Thomas*, 560 F. Supp. 3d 855, 880 (E.D. Pa. 2021) (holding that "the observation of 'uniformed members' of a sovereign state's security forces has been found to meet the TVPA requirement" of color of law); *Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1092 (N.D. Cal. 2008), aff'd, 621 F.3d 1116 (9th Cir. 2010) (ruling in an ATS case that plaintiffs plead torture was committed "under

color of law" because they alleged "they were severely beaten by the Nigerian Government Special Forces", and did not need to allege that the acts were "committed in accordance with official Nigerian policy"); *Doe v. Rafael Saravia*, 348 F. Supp. 2d 1112, 1149–50 (E.D. Cal. 2004) (to meet the "under color of law "definition, plaintiff must show "some governmental involvement" in the Romero assassination.).

Finally, Plaintiffs appropriately include a paragraph on "circumstantial evidence" which is common in TVPA cases because these are areas where reliance on circumstantial evidence is common and often necessary given the fact patterns that are presented in TVPA cases. *See* Court's Instructions to the Jury at 14–15, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 (instruction on extrajudicial killing).

Plaintiffs' instruction should, therefore, be given as proposed because it reflects the controlling legal principles of extrajudicial killing under the TVPA in the Eleventh Circuit, and does so without confusing or prejudicing the jury. *See U.S. v. Gibson,* 708 F.3d 1256, 1281 (11th Cir. 2013) (approving jury instructions that "accurately express the law applicable to the case without confusing or prejudicing the jury" (quoting *U.S. v. Beasley*, 72 F.3d 1518, 1525 (11th Cir. 1996)).

**4.1**     **Disputed - Defendant's Proposed Instruction: Extrajudicial Killing**

The term "extrajudicial killing" means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized people. It does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation.

To prove that a death was an extrajudicial killing, Plaintiffs must prove by a preponderance of evidence, as to each death, that:

(1) The relative's death was the result of a *deliberated* killing. A "deliberated killing" is one that is undertaken with studied consideration and purpose. A deliberated killing is not one that is the result of accidental or negligent shooting (including mistakenly identifying a target as a person who did pose a threat to others), individual motivations (personal reasons) not linked to Defendant, or precipitate shootings during an ongoing civil uprising.   Thus, Defendant would not be liable for extrajudicial killings if the deaths resulted from "accidental or negligent shooting" that caused the loss of life of an attacker in self-defense.

(2) A member of the Argentinean military deliberately killed that relative while acting under the actual or apparent authority, or color of law, of the Republic of Argentina. Acts are done under color of law when a person acts or purports to act in the performance of official duties under any law, ordinance, or regulation.

and

(3) The killing was not previously authorized by a judgment of a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples. A "regularly constituted court" is an independent and impartial

**court established and organized in accordance with the laws and procedures already in force in a country, and it excludes all special tribunals (that is, courts or tribunals created for a specific event).**

**Authority:** Torture Victim Protection Act; *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009) (stating that a soldier's killing of an armed attacker in self-defense, though not expressly authorized by a court judgment, would not be extrajudicial in the Sosa sense); *Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) (the Eleventh Circuit provided a clear definition of a "deliberated" killing and provided examples of what does not constitute one in this case, which is particularly important given the dispute about, and potential for confusion regarding, whether the deaths in this case were in fact deliberated killings); H.R. Rep. No. 102-367, at 5 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 87 (TVPA legislative history explains that "deliberated" excludes killings that "lack the requisite extrajudicial intent, such as those caused by a police officer's authorized use of deadly force"); *Mamani v. Berzain*, 21 F.Supp.3d 1353 (S.D. Fla. 2014); *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instructions in TVPA case); *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009).

**Defendant's Argument in Support of Defendant's Proposed Instruction 4.1**

<u>**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.1**</u>

Plaintiffs deleted the first paragraph with the definition of Extrajudicial Killing.

Plaintiffs added sections for the definitions of Extrajudicial, Under Color of Law, and Proof by Circumstantial Evidence and further Plaintiffs go into what needs to be proven by circumstantial evidence.

<u>**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.1**</u>

Defendant modeled this instruction entirely from the jury instruction given in *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009).

Defendant objects to the deletion of the first paragraph with the definition of Extrajudicial Killing. The definition of extrajudicial killing provided by Defendant is copied *verbatim* from the Act and explains and states what Plaintiffs need to prove. This paragraph was part of the instruction given in *Mamani*.

Defendant objects to Plaintiffs' addition of entire sections for the definitions of Extrajudicial Killing, Judicial Guarantees, Color of Law and Proof by Circumstantial Evidence that should not be included. Plaintiffs can argue what they believe the evidence is but it is improper to add the "circumstantial evidence" discussion here. The definitions sections added by Plaintiffs were not part of the instructions on Extrajudicial Killing either in the *Mamani* case or in *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instructions in TVPA case). Plaintiffs did not cite any authority from the Southern District of Florida or the Eleventh Circuit for the addition of these sections. Further, the addition of these sections is unnecessarily confusing and misleading to the jury. *Mamani v. Sánchez de Lozada Sánchez*

*Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020) ("District Court conflated the standard for an

extrajudicial killing with the theory of liability tying Defendants to the decedents' deaths").

**4.2     Disputed - Plaintiffs' Proposed Instruction: Attempted Extrajudicial Killing**

Plaintiff Raquel Camps, in her capacity as the personal representative of the estate of Alberto Camps, contends that Alberto Camps suffered an attempted extrajudicial killing. To establish this claim, Plaintiff must prove by a preponderance of the evidence the following:

1. **That a person or persons attempted to deliberately kill Alberto Camps;**

2. **This person or persons attempted to kill Alberto Camps while acting under the actual or apparent authority, or color of law, of the Argentine Republic;**

3. **That the person or persons intended to carry out a deliberate killing of Alberto Camps and that there was a substantial step made towards commission of the deliberate killing; and**

4. **The attempted killing was not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees, which are recognized as indispensable by civilized peoples.**

<u>Extrajudicial</u>

You may refer to instruction 4.1 for the definition of "extrajudicial."

<u>Under Color of Law</u>

You may refer to instruction 4.1 for the definition of "color of law."

<u>Substantial Step</u>

A substantial step is an act or series of acts that mark Defendant's conduct as criminal and strongly corroborate the required culpability. Certain facts such as detaining the victim, possessing the materials necessary to commit an extrajudicial killing of him, and possessing these materials at or near the place where that crime was attempted, taken together, may constitute a "substantial step" towards the commission of the extrajudicial killing.

<u>Proof by Circumstantial Evidence</u>

1869266

58

I want to explain something about proving attempted extrajudicial killing, as it is relevant to the instructions I have given you. Sometimes proof may be offered in the form of direct evidence. It is also possible, however, to prove attempted extrajudicial killing by using entirely circumstantial evidence or through a combination of direct and circumstantial evidence.

**Sources:**

Attempted Extrajudicial Killing: Transcript of Trial at III-205–06, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294; *Doe v. Constant*, 354 F. App'x 543, 544 (2d Cir. 2009) (affirming default judgment against defendant for attempted extrajudicial killing under the Torture Victims Protection Act); *Jane W. v. Thomas*, No. CV 18-569, 2021 WL 4206665, at *16 (E.D. Pa. Sept. 15, 2021) (granting motion for summary judgment against defendant for attempted extrajudicial killing under the TVPA); *Boniface v. Viliena*, 338 F. Supp. 3d 50, 68 (D. Mass. 2018) (denying defendant's motion to dismiss plaintiffs' claims for attempted extrajudicial killing under the TVPA); *Warfaa v. Ali*, 33 F. Supp. 3d 653, 665–66 (E.D. Va. 2014) (affirming that Plaintiff's allegations under the TVPA—including for attempted extrajudicial killing—were adequately pled), *aff'd*, 811 F.3d 653 (4th Cir. 2016); *Yousuf v. Samantar*, No. 1:04CV1360 LMB/JFA, 2012 WL 3730617, at *14–*16 (E.D. Va. 2012) (awarding damages for plaintiffs' claims, including attempted extrajudicial killing under the ATS and TVPA); *Doe v. Constant*, No. 04 Civ 10108 (SHS), 2006 WL 3490503, at *9 n.3 (S.D.N.Y. Oct. 24, 2006) (entering default judgment against defendant under the TVPA after finding that liability for attempted extrajudicial killing had "been cleary established" where plaintiffs were victims of "attack[s] that were attempts to kill them," even though plaintiffs survived), *aff'd* 354 Fed. App'x 543 (2d Cir. 2009); *see also*; Rome Statute of the International Criminal Court arts. 8(2)(c)(iv), 25(3)(f), July 1, 1998, 2187 U.N.T.S. 3 (stating that extrajudicial execution is a punishable war crime, and a person is liable if that person "[a]ttempts to commit such a crime by taking action that commences its execution by means of a substantial step, but the crime does not occur because of circumstances independent of the person's intentions").

Substantial Step: Transcript of Trial at III-206, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294 ("The term 'substantial step' means certain actions, such as detaining the plaintiff, possessing the materials necessary to commit an attempted extrajudicial killing of him, and possessing these materials at or near the place where that crime was attempted, taken together, may constitute a substantial step towards the commission of the attempted extrajudicial killing."); *Braxton v. United States*, 500 U.S. 344, 349 (1991) (attempted murder requires proof that the defendant intended to commit the crime and that the defendant "must have taken a substantial step towards that crime"); *United States v. Heyn*, 605 F. App'x 801, 803 (11th Cir. 2015) (affirming district court's finding that the possession of materials necessary to commit murder constitutes a "substantial step" toward its commission); *United States v. Scognamiglio*, 424 F. App'x 809, 811 (11th Cir. 2011) (affirming district court's finding that certain facts, taken together, constitute a "substantial step" toward the commission of murder, including the acquisition of materials necessary to commit murder, the identification of victims,

and the surveillance of potential locations to commit the murder); *United States v. Bird*, 409 Fed. App'x 681, 687 (4th Cir. 2011) (finding that certain facts taken together constitute a "substantial step" towards the commission of murder such as lying in wait for the victim, possessing the materials necessary to commit the crime, and possessing these materials at or near the place where the crime was attempted).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 4.2**

Plaintiffs' instruction regarding attempted extrajudicial killing accurately reflects the elements of extrajudicial killing under the TVPA and is taken almost verbatim from instructions given in other cases involving claims of attempted extrajudicial killing. Transcript of Trial at III-206, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021) (instruction on attempted extrajudicial killing); *see also* Court's Instructions to the Jury at 12, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, *aff'd*, 402 F.3d 1148 (11th Cir. 2005) (instruction on extrajudicial killing); Court's Instructions to the Jury at 14–15, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 (instruction on extrajudicial killing).

On the issue of the meaning of "deliberate," Defendant's proposal repeats the mistakes included in his proposed instruction 4.1. Plaintiffs therefore will not repeat those arguments here. *See supra* Plaintiffs' Arguments in Support of Instruction 4.1. This includes not only the language in Section 1 of Defendant's proposed instruction, but also the final sentence of the instruction, with its confusing and inappropriate reference to "international law."

Plaintiffs have also included an explanation of "substantial step" as part of their instruction to aid the jury in its factual determination. This instruction was given by the court in another recent trial concerning attempted extrajudicial killing, Transcript of Trial at III-206, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021), and reflects the definition of "substantial step," as required to establish attempt, in the Eleventh Circuit. *See*, *e.g.*, *United States v. Heyn*, 605 F. App'x 801, 803 (11th Cir. 2015) (affirming district court's finding that the possession of materials necessary to commit murder constitutes a "substantial step" toward its commission); *United States v.*

*Scognamiglio*, 424 F. App'x 809, 811 (11th Cir. 2011) (affirming district court's finding that certain facts, taken together, constitute a "substantial step" toward the commission of murder, including the acquisition of materials necessary to commit murder, the identification of victims, and the surveillance of potential locations to commit the murder).

By contrast, Defendant's proposal altogether omits any clarification on the meaning of "substantial step," which is a term that can easily confuse the jury.

Finally, Plaintiffs appropriately include a paragraph on "circumstantial evidence" which is common in TVPA cases because these are areas where reliance on circumstantial evidence is common and often necessary given the fact patterns that are presented in TVPA cases. Court's Instructions to the Jury at 14–15, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 (instruction on extrajudicial killing).

Because Plaintiffs' instruction is an accurate statement of the law and will assist the jury in its factual determination, the instruction should be given as proposed by Plaintiffs.

**4.2    Disputed - Defendant's Proposed Instruction: Attempted Extrajudicial Killing**

Plaintiff Raquel Camps, as the personal representative of the Estate of Alberto Camps, contends that Alberto Camps suffered an attempted extrajudicial killing by Defendant Bravo. To establish this claim, Plaintiff Raquel Camps must prove by a preponderance of the evidence the following four facts:

1.  That Defendant Bravo attempted to *deliberately* kill Alberto Camps. For the attempted killing to be "deliberated" it needs to be one that is undertaken with studied consideration and purpose. "Deliberated" killing is not one that is the result of accidental or negligent shooting (including mistakenly identifying a target as a person who did pose a threat to others), individual motivations (personal reasons) not linked to Defendant, or precipitate shootings during an ongoing civil uprising.  Thus, Defendant would not be liable for an attempted extrajudicial killings if the attempted killing resulted from "accidental or negligent shooting" that caused injury of an attacker in self-defense.

2.  That Bravo attempted to kill Alberto Camps while acting under the actual or apparent authority or color of law of the Republic of Argentina;

3.  That Bravo intended to carry out a deliberate killing of Alberto Camps and there was a substantial step made towards commission of the deliberate killing; and,

4.  The attempted killing was not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized people.

The term "extrajudicial killing" means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized people. It does not include any

**such killing that, under international law, is lawfully carried out under the authority of a foreign nation.**

**Authority:** Torture Victim Protection Act; *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009) (stating that a soldier's killing of an armed attacker in self-defense, though not expressly authorized by a court judgment, would not be extrajudicial in the Sosa sense); *Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) (the Eleventh Circuit provided a clear definition of a "deliberated" killing and provided examples of what does not constitute one in this case, which is particularly important given the dispute about, and potential for confusion regarding, whether the deaths in this case were in fact deliberated killings); *Mamani v. Berzain*, 21 F.Supp.3d 1353 (S.D. Fla. 2014); *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instructions in TVPA case); *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009).

**Defendant's Argument in Support of Defendant's Proposed Instruction 4.2**

<u>**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.2**</u>

Plaintiffs added sections for the definitions of Extrajudicial, Under Color of Law, Substantial Step, and Proof by Circumstantial Evidence and then Plaintiffs go into what needs to be proven by circumstantial evidence.

<u>**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.2**</u>

Defendant modeled this instruction entirely from the jury instruction given in *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009), for Extrajudicial Killing.

Defendant objects to Plaintiffs' addition of entire sections for the definitions of Extrajudicial, Under Color of Law, Substantial Step, and Proof by Circumstantial Evidence that should not be included. The definitions sections added by Plaintiffs were not part of the instructions on Extrajudicial Killing either in the *Mamani* case or in *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instructions in TVPA case). Plaintiffs did not cite any authority from the Southern District of Florida or the Eleventh Circuit for the addition of these sections.  Further, the addition of these sections is unnecessarily confusing and misleading to the jury.  *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020) ("District Court conflated the standard for an extrajudicial killing with the theory of liability tying Defendants to the decedents' deaths").  The circumstantial evidence instruction should not be repeated here.

**4.3**      **Disputed - Plaintiffs' Proposed Instruction: Torture**

Plaintiff Raquel Camps, in her capacity as the personal representative of the estate of Alberto Camps, alleges that Alberto Camps was tortured. To establish this claim, Plaintiffs must prove that:

1.  **Defendant Bravo intentionally inflicted pain or suffering, whether physical or mental, on Alberto Camps; or actively participated in the intentional infliction of severe pain and suffering, whether physical or mental, on Alberto Camps.**

2.  **Alberto Camps was in the custody or control of Defendant Bravo.**

3.  **The intentional infliction of severe pain or suffering on Alberto Camps was done while acting under the actual or apparent authority, or color of law, of the Argentine Republic;**

4.  **The severe pain or suffering was inflicted for the purpose of intimidation, punishment or any discriminatory purpose.**

Even if Defendant Bravo did not personally torture Alberto Camps, he may still be liable for torture if he (1) aided or abetted torture, (2) conspired to commit torture, or (3) participated in a joint criminal enterprise. You may consider instructions 4.8 (aiding and abetting), 4.9 (conspiracy), and 4.10 (joint criminal enterprise) to evaluate these other forms of liability for torture.

**Sources:** Court's Instructions to the Jury at 12, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, aff'd, 402 F.3d 1148 (11th Cir. 2005); *see also* Court's Instructions to the Jury at 17, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184. Torture Victim Protection Act, 28 U.S.C. §1350 note ("For the purposes of this Act (1) the term 'torture' means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or

coercing that individual or a third person, or for any reason based on discrimination of any kind; and (2) mental pain or suffering refers to prolonged mental harm caused by or resulting from (A) the intentional infliction or threatened infliction of severe physical pain or . . . (C) the threat of imminent death.").

**Plaintiffs' Argument in Support of Instruction 4.3**

Plaintiffs' instruction on torture reflects almost verbatim the instructions given in other TVPA cases. Court's Instructions to the Jury at 12, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, *aff'd*, 402 F.3d 1148 (11th Cir. 2005); *see also* Court's Instructions to the Jury at 17, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184.

Defendant disputes the final paragraph of Plaintiffs' instruction that references Plaintiffs' alleged secondary theories of liability—aiding and abetting; conspiracy; and joint criminal enterprise—to explain to the jury that they may find Defendant liable for torture even if he did not personally torture Alberto Camps.

Defendant has proposed a similar final paragraph: "You may consider instructions 4.8 and 4.9 to determine whether or not the Plaintiffs have proven the elements above by a preponderance of evidence."

Plaintiffs' proposed paragraph will better enable the jury to evaluate Plaintiff Raquel Camps' torture claims for three reasons. First, Plaintiffs' proposed final paragraph makes clear that Defendant could still be liable for torture even if he did not personally torture Alberto Camps. Second, Plaintiffs' paragraph states what the additional theories of liability are, rather than merely cross-referencing the corresponding instruction number. Finally, Plaintiffs' proposal includes Plaintiffs' final secondary theory of liability, joint criminal enterprise, which Defendant's proposal inexplicably omits.

Because Plaintiffs' instruction accurately reflects the law on torture under the TVPA and Eleventh Circuit jurisprudence and identifies the multiple theories of liability at issue in this case

to help the jury to evaluate Defendant's liability thereunder, Plaintiffs' instruction should be given as proposed.

**4.3     Disputed - Defendant's Proposed Instruction: Torture**

Plaintiff Raquel Camps, in her capacity as the personal representative of the estates of Alberto Camps, alleges that Alberto Camps was tortured. To establish this claim, Plaintiff Raquel Camps must prove:

1. That Defendant Bravo intentionally inflicted severe pain and suffering, whether physical or mental on Alberto Camps; or actively participated in the intentional infliction of severe pain or suffering whether physical or mental on Alberto Camps.

2. That Alberto Camps was in the custody or physical control of Defendant Bravo;

3. That the intentional infliction of severe pain or suffering on Alberto Camps was done while under the actual or apparent authority, or color of law of the Republic of Argentina; and

4. The severe pain or suffering was inflicted for the purpose of intimidation, punishment or any discriminatory purpose.

You may consider instructions 4.8, 4.9, and 4.10 to determine whether or not Plaintiff Raquel Camps has proven the elements above by a preponderance of evidence.

Authorities: Torture Victim Protection Act Of 1991, Pl 102–256, March 12, 1992, 106 Stat 73; *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instruction given for torture claim in TVPA case).

**Defendant's Argument in Support of Defendant's Proposed Instruction 4.3 Torture**

**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.3**

Plaintiffs added this sentence at the beginning of the last paragraph: "Even if Defendant Bravo did not personally torture Alberto Camps, he may still be liable for torture if he (1) aided or abetted torture, (2) conspired to commit torture, or (3) participated in a joint criminal enterprise."

**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.3**

Defendant modeled this instruction entirely from the jury instruction given in *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004), for Torture.

Defendant objects to Plaintiffs' addition of the sentence "Even if Defendant Bravo did not personally torture Alberto Camps, he may still be liable for torture if he (1) aided or abetted torture, (2) conspired to commit torture, or (3) participated in a joint criminal enterprise" that should not be included. This sentence was not part of the instruction in *Cabello*. Further, Plaintiffs did not cite any authority from the Southern District of Florida or the Eleventh Circuit for the addition of this sentence. Further, the addition of this sentence is unnecessarily confusing and misleading to the jury. *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020) ("District Court conflated the standard for [the alleged crime] with the theory of liability tying Defendants to the decedents' deaths").

**4.4**     **Disputed - Plaintiffs Proposed Instruction: Political Views or Past Actions Do Not Provide An Affirmative Defense for International Law Violations**

<u>In your deliberations, you should not give any regard to the political views, beliefs, affiliations, or past actions of any parties, or any other person about whom you have heard testimony, as a basis to excuse extrajudicial killing, attempted extrajudicial killing, or torture. The prohibitions against these abuses are absolute. Every person – no matter what his or her political views, beliefs, affiliations, or past actions – has the right to be free from these abuses. There are no circumstances that justify, necessitate or excuse their commission.</u>

**Sources:** Transcript of Trial at III-207, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, aff'd 1 F.4th 289 (4th Cir. 2021) ("You should not give any regard to the political views, beliefs, affiliations, or past actions of any parties or any other person about whom you've heard testimony as the basis to excuse torture or attempted extrajudicial killing. The prohibitions against these abuses are absolute. Every person, no matter what his or her political views, beliefs, affiliations, or past actions has the right to be free from these abuses. There are no circumstances that justify and necessitate or excuse their commission."); Final Jury Instructions at 29, *In re Estate of Ferdinand Marcos Human Rights Litig.*, No. MDL 840 (D. Haw. Feb. 3, 1995) ("In your deliberations, you should not give any regard to whether Plaintiffs in this case may have opposed the Philippine government or what their political views may have been. Every person – even if they are in custody because they have been accused of violating the law – has the right to be free from being tortured by the government or military officials. And every person – no matter what their political persuasion – has the right to be free from being tortured, summarily executed, or 'disappeared' or prolonged arbitrary detention by officials."), *aff'd*, 103 F.3d 767 (9th Cir. 1996); *Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*, G.A. Res. 39/46 Art. 1 (1987), 39 U.N. GAOR, Supp. No. 51, at art. 2(2), U.N. Doc. A/39/51 (1984), *reprinted in* 23 I.L.M. 1027 and 24 I.L.M 535 (ratified by the United States Oct. 21, 1994) ("No exceptional circumstances whatsoever, whether a state of war or a threat of war, internal political in stability or any other public emergency, may be invoked as a justification of torture.");.

**Plaintiffs' Argument in Support of Instruction 4.4**

Plaintiffs' proposed instruction is taken almost verbatim from instructions given in other TVPA cases involving claims of torture and extrajudicial killing. *See* Transcript of Trial at III-207, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019) *aff'd* 1 F.4th 289, ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021) ("You should not give any regard to the political views, beliefs, affiliations, or past actions of any parties or any other person about whom you've heard testimony as the basis to excuse torture or attempted extrajudicial killing. The prohibitions against these abuses are absolute. Every person, no matter what his or her political views, beliefs, affiliations, or past actions has the right to be free from these abuses. There are no circumstances that justify and necessitate or excuse their commission."); *In re Estate of Ferdinand Marcos Human Rights Litig.*, No. MDL 840, Final Jury Instructions at 29 (D. Haw.), *aff'd*, 103 F.3d 767 (9th Cir. Dec. 17, 1996) ("In your deliberations, you should not give any regard to whether Plaintiffs in this case may have opposed the Philippine government or what their political views may have been.  Every person –even if they are in custody because they have been accused of violating the law – has the right to be free from being tortured by the government or military officials.  And every person – no matter what their political persuasion – has the right to be free from being tortured, summarily executed, or 'disappeared' or prolonged arbitrary detention by officials.").

Defendant does not dispute any of the language in Plaintiffs' proposed instruction but instead contends that the instruction should not be given at all. Defendant has tried, as part of his defense, to establish that the decedents' opposition to the military government in power at the time of the events in question in the complaint justified Defendant's actions. *See, e.g.*, Defendant's Omnibus Response to Plaintiffs' Motion for Summary Judgment and Motion Limine at 13 (ECF No. 85) ("[T]he Trelew Prisoners' political [affiliations] are [an] integral part of the story about

why the prisoners were imprisoned to begin with, their penchant for violence and the objective of their political cause."). This Court has recognized that refences to the nineteen decedents' purported political views are irrelevant and inadmissible to prove that Defendant acted in self defense and has barred Defendant from referring to Communism and Cuba. ECF No. 90 at 11-13. Nevertheless, in recent filings, Defendant has continued to suggest Plaintiffs' family members were "terrorists" and members of guerilla groups that opposed the government in Argentina in the 1970s, and the bulk of his exhibits make clear that he intends to argue that political violence in Argentina during the 1970s justified his actions. *See, e.g.*, ECF 91 at 3–4; ECF 102 at 11, 19. The jury must therefore be instructed that, under the TVPA, opposition to the government does not excuse the human rights violations alleged in this complaint.

**Defendant's Objection to Plaintiffs' Proposed Instruction 4.4**

Defendant objects to Plaintiffs' addition of this instruction as misleading, unnecessary and confusing to the jury. *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020) There is no affirmative defense in this case related to "Political Views or Past Actions." Further, this Court ruled on May 17, 2022, on Plaintiffs' Motions in Limine as to Affirmative Defense No. 7 [D.E. 67], that "Defendant and his counsel may not introduce evidence, argument, or suggestion that the nineteen decedents had ties to communism or Cuba to prove that he acted in self-defense." [D.E. 90] at p. 10.

Moreover, Plaintiffs did not cite any authority from the Southern District of Florida or the Eleventh Circuit for the addition of this instructions. The reason may be because this instruction is not part of any of the jury instructions given in any of the TVPA cases handled by the Eleventh Circuit: *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) ; *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009); and *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), Dkt. No. 184. Therefore, there is no basis for this instruction and should be removed.

*Authorities*: Torture Victim Protection Act Of 1991, March 12, 1992, 106 Stat 73; *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instruction given for torture claim in TVPA case).

**4.5     Disputed - Plaintiffs' Proposed Instruction: Illegal Orders Do Not Provide An Affirmative Defense for International Law Violations**

In your deliberations, you should not give any regard to illegal orders that the defendant may have received from a superior as a basis to excuse international crimes including extrajudicial killing, attempted extrajudicial killing, or torture. Thus, for example, an order to murder unarmed prisoners is illegal, and should not be considered during your deliberations. The prohibitions against these abuses are absolute. Every person has the right to be free from these abuses and, in particular, the murder of unarmed prisoners, unarmed civilians, or combatants who have laid down their weapons are prohibited even in times of war. There are no circumstances that justify, necessitate, or excuse these abuses.

**Sources:** Transcript of Trial at III-212, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021) ("A defendant cannot escape liability by claiming that he was himself acting under orders from a higher authority."); *Cabello Barrueto v. Fernandez Larios*, 205 F. Supp. 2d 1325, 1332-33 (S.D. Fla. June 5, 2002) (observing that the Senate Report on the TVPA provides that "low-level officials cannot escape liability by claiming that they were acting under orders of superiors" and that Article 2(3) of the Torture Convention likewise provides that "[a]n order from a superior official or a public authority may not be invoked as a justification for torture"); *Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment*, G.A. Res. 39/46 Art. 1 (1987), 39 U.N. GAOR, Supp. No. 51, at art. 2(3), U.N. Doc. A/39/51  (1984), *reprinted at* 23 I.L.M. 1027 and 24 I.L.M 535 (ratified by the United States Oct. 21, 1994) ("An order from a superior officer or a public authority may not be invoked as a justification of torture."); Rome Statute of the International Criminal Court art. 33, July 1, 1998, 2187 U.N.T.S. 3 ("[O]rders to commit . . . crimes against humanity are manifestly unlawful[,]" regardless of whether the crime was committed by a person pursuant to an order of a superior); Int'l Comm. Red Cross, *Practice Relating to Rule 47: Attacks against Persons Hors de Combat*, CUSTOMARY IHL DATABASE, https://ihl-databases.icrc.org/customary-ihl/eng/docs/v2_rul_rule47 (last visited Aug. 26, 2021) (noting that both customary international law and Argentina's 1969 Law of War Manual prohibit attacks on persons who are *hors de combat*); Int'l Comm. Red Cross, *Practice Relating to Rule 87: Humane Treatment*, CUSTOMARY IHL DATABASE, https://ihl-databases.icrc.org/customary-ihl/eng/docindex/v2_rul_rule87 (last visited Aug. 26, 2021) (noting that both customary international law and Argentina's 1969 Law of War Manual require that prisoners of war be treated humanely); Int'l Comm. Red Cross, *Practice Relating to Rule 89: Violence to Life*, CUSTOMARY IHL DATABASE, https://ihl-databases.icrc.org/customary-ihl/eng/docindex/v2_rul_rule89 (last visited Aug. 26, 2021) (noting that both customary international law and Argentina's 1969 Law of War Manual prohibit violence to the life and person of combatants who are *hors de combat*).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 4.5**

Plaintiffs' proposed instruction mirrors those given in other TVPA cases involving claims of torture and extrajudicial killing. *See* Transcript of Trial at III-207, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019) *aff'd* 1 F.4th 289, ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021) ("A defendant cannot escape liability by claiming that he was himself acting under orders from a higher authority."). Furthermore, Congress made clear in enacting the Torture Victim Protection Act that superior orders cannot be used to excuse liability for extrajudicial killing or torture. *See Cabello Barrueto v. Fernandez Larios*, 205 F. Supp. 2d 1325, 1332-33 (S.D. Fla. June 5, 2002) (observing that the Senate Report on the TVPA provides that "low-level officials cannot escape liability by claiming that they were acting under orders of superiors" and that Article 2(3) of the Torture Convention likewise provides that "[a]n order from a superior official or a public authority may not be invoked as a justification for torture").

Defendant does not dispute any of the language in Plaintiffs' proposed instruction but instead contends that the instruction should not be given at all because it is not an instruction on a legal standard. That argument is plainly incorrect given that, as described above, prior courts have instructed on this very aspect of the law. Moreover, here, this instruction is necessary because Defendant Bravo testified during his deposition that, on the night of August 22, 1972, he acted as he had been trained by the military to act. *See* Bravo Dep. at 128:10-129:8 (explaining that his training "in close combat" influenced his "decision to begin shooting the prisoners because he was "trained to .. prepare to … react accordingly to any surprise that might be a threat …, and without thinking …. In close combat, we're ready to react and quickly – and quickly defend ourselves."). Thus, the jury must understand that any training or illegal orders Defendant received to kill or torture prisoners cannot justify his actions or absolve him of liability under the TVPA.

**Defendant's Objection to Plaintiffs' Proposed Instruction 4.5**

Defendant objects to Plaintiffs' addition of this instruction as misleading, unnecessary and confusing to the jury. *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020). There is no affirmative defense in this case related to "Illegal Orders" given by anyone.

Further, Plaintiffs did not cite any authority from the Southern District of Florida or the Eleventh Circuit for the addition of this instructions. The reason may be because this instruction is not part of any of the jury instructions given in any of the TVPA cases handled by the Eleventh Circuit: *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004); *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009); and *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), Dkt. No. 184.  In fact, Plaintiffs modeled in part this instruction from the Jury Instruction given on *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294 (instruction 20/page 27). In *Warfaa*, this instruction was given by the court for "Directing or Ordering – Generally," because one of the theories of liability of the plaintiff in *Warfaa* was that the defendant there "directed or ordered his subordinates" to perpetrate the crimes.  In this case, Plaintiffs have not alleged as a theory of liability that Defendant "directed or ordered his subordinates." Plaintiffs here are not seeking liability under command responsibility theory. Therefore, there is no basis for this instruction and should be removed.

*Authorities*: : *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004); *Mamani v. Berzain*, No. 07-22459-CIV-JORDAN, 2009 U.S. Dist. LEXIS 139219, at *52 (S.D. Fla. Nov. 9, 2009); and *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), Dkt. No. 184.  In fact, Plaintiffs modeled this instruction from the Jury

Instruction given on *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF

No. 294 (instruction 20/page 27).

**4.6      Disputed - Plaintiffs' Proposed Instruction: Self-Defense Excludes Liability in Some Circumstances**

Defendant has offered evidence of having acted in self-defense. Self-defense is a ground for excluding liability only when the Defendant acted reasonably to defend himself or another person against an imminent and unlawful use of physical force. For self-defense to be applicable, the use of force by the Defendant must have been proportionate to the degree of danger to the Defendant or the other person protected. Firearms should be used only when strictly necessary; that is, as a last resort to protect against the imminent threat of death or serious injury, when less extreme means are insufficient. Thus, for example, firearms cannot be used to prevent the escape from custody of someone who does not pose a serious and imminent threat to the lives or bodily integrity of others. Accordingly, involvement in a defensive operation does not, by itself, establish self-defense if the force used was unnecessary. Additionally, continued use of force after the threat has been subdued does not establish self-defense.

**Sources:** Rome Statute of the International Criminal Court art. 31(1)(c), July 1, 1998, 2187 U.N.T.S. 3 (self-defense may be a ground for excluding criminal responsibility if it was used "reasonably . . . against an imminent and unlawful use of force in a manner proportionate to the degree of danger to the person or the other person . . . protected"); Basic Principles on the Use of Force and Firearms by Law Enforcement Officials, U.N. Doc. A/CONF.144/28/Rev.1 at 112, para. 9 (1990) ("Law enforcement officials shall not use firearms against persons except in self defense or defense of others against the imminent threat of death or serious injury, to prevent the perpetration of a particularly serious crime involving grave threat to life, to arrest a person presenting such a danger and resisting their authority, or to prevent his or her escape, and only when less extreme means are insufficient to achieve these objectives."); G.A. Res. 34/169, Code of Conduct for Law Enforcement Officials, U.N. Doc. A/34/46 (Dec. 17, 1979) ("In general, firearms should not be used except when a suspected offender offers armed resistance or otherwise jeopardizes the lives of others and less extreme measures are not sufficient to restrain or apprehend the suspected offender."); U.N. Hum. Rts. Comm., General Comment No. 36, ¶ 12, U.N. Doc. CCPR/C/GC/36 (Oct. 30, 2018) ("The use of potentially lethal force for law enforcement purposes is an extreme measure, which should be resorted to only when strictly necessary in order to protect life or prevent serious injury from an imminent threat. It cannot be used, for example, in order to prevent the escape from custody of a suspected criminal or a convict who does not pose a serious and imminent threat to the lives or bodily integrity of others. The intentional taking of life by any

means is permissible only if it is strictly necessary in order to protect life from an imminent threat."); *see also United States v. Black*, 692 F.2d 314, 318 (4th Cir. 1982) ("[T]he quantum of force which one may use in self-defense is proportional to the threat which he reasonably apprehends."); *United States v. Middleton*, 690 F.2d 820, 826 (11th Cir. 1982) ("[S]elf-defense is a defense which justifies the use of a reasonable amount of force against an adversary when a person reasonably believes that he is in immediate danger of unlawful bodily harm from his adversary and that the use of such force is necessary to avoid this danger."); *Robinson v. Lambert*, 753 App'x 777, 780 (11th Cir. 2018) ("the use of force is objectively unreasonable" and therefore excessive "when it continues past the need for such force" for example when a prisoner has been subdued, has clearly stopped resisting or is otherwise incapacitated).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 4.6**

The central dispute between the parties is whether the self-defense instruction is governed by international law or by U.S. law. The TVPA case law is clear that courts must the international standard for self-defense; Plaintiffs' proposal is therefore correct and Defendant's proposal is improper. Moreover, to the extent that Plaintiff prevails in his view that U.S. law applies, then his self-defense defense must be treated as an affirmative defense, and since it was not pled, it should be dismissed from the case; alternatively, even if Defendant were still permitted to assert a self-defense defense at trial, then this instruction and others would need to be modified to place the burden of proof on Defendant. Defendant cannot have it both ways by taking advantage of TVPA case law that treats self-defense as something that Plaintiffs must dis-prove *and* using inapplicable U.S. case law to provide the substantive standard for self-defense. Accordingly, the Court should adopt Plaintiffs' proposal and reject Defendant's.

Plaintiffs' proposed instruction for self-defense appropriately applies the international legal standard because what conduct gives rise to or excuses liability for torture and extrajudicial killing under the TVPA is defined by international law. *See Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1240 (11th Cir. 2020) (remanding to the District Court to determine whether the killings were unlawful under international law); *Doe v. Drummond Co*., 782 F.3d 576, 606 (11th Cir. 2015) (noting that courts should look to the "general principles of international law for guidance as to what a theory of liability or statutory definition requires" when "the TVPA itself implicitly or explicitly incorporated those principles from international law"); *see also* S. Rep. No. 102-249, at 6-7 ("The TVPA incorporates into U.S. law the definition of extrajudicial killing found in customary international law" and the U.S. Government "does not regard authorized sanctions that unquestionably violate international law as 'lawful sanctions' exempt from the prohibition on torture" under international law or the TVPA.); H.R. Rep. No. 102-367, at 4 (The TVPA "defines

'torture' and 'extrajudicial killing' in accordance with international standards."). By contrast, Defendant proposes an instruction for self-defense based on U.S. law that is inapplicable in this case.

Unlike Defendant's instruction, Plaintiffs' instruction accurately reflects the legal standard under international law—and therefore under the TVPA—that applies to determine when self-defense can excuse liability for using lethal force. *See* Rome Statute of the International Criminal Court art. 31(1)(c), July 1, 1998, 2187 U.N.T.S. 3 (self-defense may be a ground for excluding international criminal responsibility if it was used "reasonably . . . against an imminent and unlawful use of force in a manner proportionate to the degree of danger to the person or the other person . . . protected"); G.A. Res. 34/169, Code of Conduct for Law Enforcement Officials, U.N. Doc. A/34/46 (Dec. 17, 1979) ("In general, firearms should not be used except when a suspected offender offers armed resistance or otherwise jeopardizes the lives of others and less extreme measures are not sufficient to restrain or apprehend the suspected offender."); U.N. Hum. Rts. Comm., General Comment No. 36, ¶ 12, U.N. Doc. CCPR/C/GC/36 (Oct. 30, 2018) ("The use of potentially lethal force for law enforcement purposes is an extreme measure, which should be resorted to only when strictly necessary in order to protect life or prevent serious injury from an imminent threat. It cannot be used, for example, in order to prevent the escape from custody of a suspected criminal or a convict who does not pose a serious and imminent threat to the lives or bodily integrity of others. The intentional taking of life by any means is permissible only if it is strictly necessary in order to protect life from an imminent threat."). Defendant has admitted that he opened fire on the prisoners, in an enclosed space, with a machine gun – clearly the use of lethal force. Plaintiffs' instruction, modeled on the international standards for when using lethal force is permissible, is the appropriate standard to provide to the jury. Because Plaintiffs' instruction

applies the correct legal framework under international law and provides the jury with clear guidance for how to assess whether Defendant acted in self-defense such that his liability is excused, Plaintiffs' instruction should be given as proposed.

**4.6     Defendant's Proposed Instruction: Self Defense**

Defendant has offered evidence of having acted in self-defense.  If the defendant was not the aggressor and had reasonable grounds to believe and actually did believe that he was in imminent danger of death or serious bodily harm from which he could save himself only by using deadly force against his assailant, he had the right to employ deadly force in order to defend himself.

By deadly force is meant force which is likely to cause death or serious bodily harm.

In order for the Defendant to have been justified in the use of deadly force in self-defense, he must not have provoked the assault on him or been the aggressor. Mere words, without more, do not constitute provocation or aggression.

The circumstances under which he acted must have been such as to produce in the mind of a reasonably prudent person similarly situated the reasonable belief that the other person was then about to kill him or to do him serious bodily harm.

In addition, the defendant must actually believe that he was in imminent danger of death or serious bodily harm and that deadly force must be used to repel it.

If evidence of self-defense is present, the [plaintiffs] must prove [by preponderance of evidence] that the defendant did not act in self-defense.

If you find that Plaintiffs have failed to prove by preponderance of evidence that the Defendant did not act in self-defense, you must find for the Defendant.

**Authority:** *United States v. Alvarez*, 755 F.2d 830, 846-47 (11th Cir. 1985)

**Defendant's Argument In Support of Defendant's Proposed Instruction 4.6**

**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.6**

Plaintiffs provided their own version of this instruction.

**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.6**

Defendant proposed his instruction which was entirely from the jury instruction given in *United States v. Alvarez*, 755 F.2d 830, 846-47 (11th Cir. 1985). Defendant objects to Plaintiffs' instruction because its language is not based on any authority from the Southern District of Florida or the Eleventh Circuit for the text of this instruction. Further, Plaintiffs' instruction is unnecessarily confusing and misleading to the jury as it uses examples and language that is highly prejudicial to Defendant. *Mamani v. Sánchez de Lozada Sánchez Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020).  The 11th Circuit Instruction given in *Alvarez* should be used.

**4.7    Joint Proposed: Defendant's Liability[3]**

Plaintiffs claim that Defendant Bravo directly perpetrated the extrajudicial killing of Eduardo Cappello I, Rubén Bonet, and Ana María Villarreal De Santucho and the attempted extrajudicial killing and torture of Alberto Camps. Plaintiffs also contend that Defendant Bravo is liable for the extrajudicial killing, attempted extrajudicial killing, and torture of their relatives under alternative forms of liability, as they are entitled to do, without prejudice to their claim that Defendant Bravo directly perpetrated the extrajudicial killing, attempted extrajudicial killing, and torture of their relatives.

Thus, even if the jury were to find that Plaintiffs have not shown by a preponderance of the evidence that Defendant Bravo personally extrajudicially killed, attempted to extrajudicially kill, or tortured Plaintiffs' relatives, the jury may still find that Defendant Bravo is nevertheless responsible for the extrajudicial killing of Eduardo Cappello I, Ruben Bonet, and Ana María Villareal De Santucho and the attempted extrajudicial killing and torture of Alberto Camps under one or more of the three following additional theories of liability:

1.    Aiding and abetting;

2.    Conspiracy;

3.    Joint criminal enterprise.

Each of these is a separate theory of liability and will be explained in more detail in subsequent instructions. You must consider them separately. You only need to find in Plaintiffs' favor on one of these four theories to hold Defendant Bravo liable with respect to each of Plaintiffs'

---

[3] Plaintiff and Defendant agree upon the above instruction. However, Defendant reserves an objection to this instruction, to raise at the close of evidence, on the grounds that Defendant does not believe the trial will produce evidence in support of Plaintiff's secondary liability theories; namely, aiding and abetting, conspiracy, and joint criminal enterprise. Should Plaintiff fail to produce evidence in support of these theories of liability, Defendant will ask the Court to strike mention of these theories from the jury instructions and will file for a directed verdict.

claims. If you find that Plaintiffs have not carried their burden of proof on any one theory of liability, that finding does not affect any other theory.

**Sources:**  *See Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1709 (2012) (noting that the TVPA contemplates direct liability as well as "liability against officers who do not personally execute the torture or extrajudicial killing"); *Mamani v. Sanchez Bustamante*, 968 F.3d 1216, 1220 (11th Cir. 2020) (affirming that the TVPA permits theories of indirect liability, including aiding and abetting, conspiracy, agency, and command responsibility); *Doe v. Drummond Co.*, 782 F.3d 576, 607-610 (11th Cir. 2015) (recognizing direct and secondary theories of liability under the TVPA, including command responsibility and aiding and abetting); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157–60 (11th Cir. 2005) (upholding a jury verdict premised on indirect liability claims under the ATS and TVPA, including aiding and abetting and conspiracy); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *6–*8 (S.D. Fla. Sept. 27, 2021) (finding defendant liable under the TVPA on theories of aiding and abetting, conspiracy, and command responsibility); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1116–20 (S.D. Fla. 2016) (noting that, "[b]y its terms, the [TVPA] contemplates claims based on secondary, or indirect, theories of liability" and recognizing that theories of secondary liability under the federal common law, including aiding and abetting and conspiracy, are "available to support TVPA claims"); *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK, 2015 WL 8659954, at *3 (M.D. Fla. Dec. 14, 2015) ("The TVPA contemplates theories of direct and indirect liability," including aiding and abetting, conspiracy, and command responsibility); *Warfaa v. Ali*, 33 F. Supp. 3d 653, 666 (E.D. Va. 2014) (finding Plaintiff's allegations supported secondary liability for "command responsibility, aiding and abetting liability, and joint criminal enterprise"), *aff'd*, 811 F.3d 653 (4th Cir. 2016); *Yousuf v. Samantar*, No. 1:04-cv-1360 (LMB/JFA), 2012 WL 3730617, at *10–11 (E.D. Va. Aug. 28, 2012) ("command responsibility, aiding and abetting liability and joint criminal enterprise liability" are cognizable modes of liability in TVPA cases); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 491 (D. Md. 2009), *aff'd on other grounds*, 402 F. App'x. 834 (4th Cir. 2010) (recognizing joint criminal enterprise); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1148 (E.D. Cal. 2004) (finding that a defendant can be held liable under the TVPA as a direct participant, conspirator, accomplice, or aider and abettor); *Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386(KMW), 2002 WL 319887, at *15–*16 (S.D.N.Y. Feb. 28, 2002) (finding that "the language and legislative history of the TVPA supports liability for aiders and abettors of torture and extrajudicial killings").

**4.8     Disputed - Plaintiffs' Proposed Instruction: Liability for Aiding and Abetting**

Defendant Bravo may be found liable if you find that he aided and abetted others in a wrongful act committed against Alberto Camps, Eduardo Cappello I, Rubén Bonet, and/or Ana María Villarreal De Santucho. To hold Defendant Bravo liable under a theory of aiding and abetting, Plaintiffs must prove by a preponderance of the evidence, as to each claim:

1.  One or more of the wrongful acts that comprise the claim were committed;

2.  Defendant Bravo gave substantial assistance to the person or persons who committed or caused one or more of the wrongful acts that comprise the claim; and

3.  Defendant Bravo knew that his actions would assist in the illegal or wrongful activity at the time he provided the assistance.

If you find that Defendant Bravo is liable for aiding or abetting, then he is liable for all the wrongful acts that were a natural and foreseeable result of the activity Defendant Bravo helped undertake.

**Sources:** Court's Instructions to the Jury at 17, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, aff'd, 402 F.3d 1148 (11th Cir. 2005); Court's Instructions to the Jury at 18–19, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; *Doe v. Drummond Co.*, 782 F.3d 576, 608 (11th Cir. 2015) (holding aiding and abetting liability requires finding that "the wrongful act at the center of the claim was, in fact, committed, and the defendant gave knowing substantial assistance to the person or persons who committed the wrongful act"); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157-1160 (11th Cir. 2005) (upholding a jury verdict premised on indirect liability claims under the ATS and TVPA, including aiding and abetting, and holding that the standard for aiding and abetting under the TVPA is "knowing substantial assistance"); *United States v. Lord*, 543 F. App'x 995, 997 (11th Cir. 2013) (finding that, because defendant pleaded guilty to aiding and abetting, he is "punishable as a principal for any 'reasonably foreseeable action of' the crime" (quoting *United States v. Diaz*, 248 F.3d 1065, 1099–1100 (11th Cir. 2001)); *United States v. Jackson*, 534 F. App'x 917, 920 (11th Cir. 2013) (holding that defendant, who aided and abetted codefendants was liable for codefendant's accidental discharge of the firearm because "an accidental discharge of a firearm is a reasonably foreseeable result of bringing a gun to an attempted bank robbery"); *Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983) ("[U]nder an aiding-abetting theory, it was a natural and foreseeable consequence of the activity [defendant] helped [the perpetrator] to undertake. It was not necessary that [defendant] knew specifically that [the perpetrator] was committing burglaries. Rather, when [defendant] assisted [the perpetrator], it was enough that [defendant] knew [the perpetrator] was involved in some type of personal property crime at night—whether as

a fence, burglar, or armed robber made no difference—because violence and killing is a foreseeable risk in any of these enterprises."); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *6 (S.D. Fla. Sept. 27, 2021) (finding that plaintiffs met "every element of an aiding and abetting theory" under the TVPA when defendant "knew of the [paramilitary]'s pattern of killing people, . . . issued orders for the purpose of silencing critics of the organization, . . . met personally with zone commanders to evaluate regions under his control[,] oversaw regulations that labelled critics of the [paramilitary] as military targets for murder and . . . issued orders to eliminate approximately 1300 people"); *Penaloza v. Drummond Co., Inc*., 384 F. Supp. 3d 1328, 1346 (N.D. Ala. 2019) (liability for aiding and abetting is supported "if the wrongful act at the center of the claim is, in fact, committed, and the defendant gave knowing substantial assistance to the persons who committed the wrongful act"); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig*., 190 F. Supp. 3d 1100, 1117 (S.D. Fla. 2016) ("Aiding and abetting liability . . . requires a showing of 'knowing substantial assistance' to the person or persons who committed the wrongful act."); *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK, 2015 WL 8659954, at *3 (M.D. Fla. Dec. 14, 2015) (plaintiffs sufficiently pled knowing substantial assistance "via allegations that Defendant was involved in the establishment of the system of imprisonment, torture, and execution . . . during a mass detention of civilians in a Chilean university stadium . . . that ultimately led to the torture and killing of Victor Jara by Defendant and by individuals who operated under Defendant's command"); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1148 (E.D. Cal. 2004) (finding that, for accomplice liability, it is "sufficient that the accomplice knows that [their] actions will assist the perpetrator in the commission of the crime" and concluding that defendant was liable under the TVPA as a direct participant, conspirator, accomplice, and aider and abettor in coordinating and planning the assassination of Archbishop Romero).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 4.8**

Plaintiffs' proposed instruction tracks the elements of aiding and abetting as recognized under the law of this Circuit and is taken almost verbatim from instructions given on aiding and abetting in other Eleventh Circuit TVPA cases. Court's Instructions to the Jury at 21, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, aff'd, 402 F.3d 1148 (11th Cir. 2005); Court's Instructions to the Jury at 18–19, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; *Doe v. Drummond Co.*, 782 F.3d 576, 608 (11th Cir. 2015) (holding aiding and abetting liability requires finding that "the wrongful act at the center of the claim was, in fact, committed, and the defendant gave knowing substantial assistance to the person or persons who committed the wrongful act"); *Cabello*, 402 F.3d at 1157-1160 (11th Cir. 2005) (upholding a jury verdict premised on aiding and abetting under the ATS and TVPA, and holding that the standard for aiding and abetting under the TVPA is "knowing substantial assistance"); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *6 (S.D. Fla. Sept. 27, 2021) (finding that plaintiffs met "every element of an aiding and abetting theory" under the TVPA where defendant gave knowing substantial assistance to the persons committing extrajudicial killing and torture).

The only language Plaintiffs have added to the prior aiding and abetting instructions given in the TVPA cases cited above is a sentence explaining that a defendant is liable for all the wrongful acts that were a natural and foreseeable result of the activity they aided and abetted. This is a statement of black letter law and is necessary to clarify to the jury that Bravo is liable for the foreseeable consequences of his actions and the actions of those he assisted under an aiding and abetting theory. *See, e.g.*, *United States v. Lord*, 543 F. App'x 995, 997 (11th Cir. 2013) (finding that, because defendant pleaded guilty to aiding and abetting, he is "punishable as a principal for any 'reasonably foreseeable action of' the crime" (quoting *United States v. Diaz*, 248 F.3d 1065,

1099–1100 (11th Cir. 2001)); *United States v. Jackson*, 534 F. App'x 917, 920 (11th Cir. 2013) (holding that defendant, who aided and abetted codefendants, was liable for codefendant's accidental discharge of the firearm because "an accidental discharge of a firearm is a reasonably foreseeable result of bringing a gun to an attempted bank robbery"); *see also Halberstam v. Welch*, 705 F.2d 472, 478 (D.C. Cir. 1983) ("[U]nder an aiding-abetting theory, it was a natural and foreseeable consequence of the activity [defendant] helped [the perpetrator] to undertake. It was not necessary that [defendant] knew specifically that [the perpetrator] was committing burglaries. Rather, when [defendant] assisted [the perpetrator], it was enough that [defendant] knew [the perpetrator] was involved in some type of personal property crime at night—whether as a fence, burglar, or armed robber made no difference—because violence and killing is a foreseeable risk in any of these enterprises."); *Doe v. Drummond*, 782 F.3d at 608 n.44 (noting that the Eleventh Circuit has "incorporated and applied *Halberstam's* aiding and abetting standards").

Because Plaintiffs' instruction is an accurate statement of the law on aiding and abetting liability in the Eleventh Circuit, the instruction should be given as proposed by Plaintiffs.

Finally, Defendant's instruction also incorrectly uses the phrase "at the hands of the Argentinean government" to mischaracterize Plaintiff's allegation and the "under of color" requirement. *See supra* Plaintiffs' Argument in Support of Instruction No. 4.1.  It is therefore improper.

**4.8     Disputed - Defendant's Proposed Instruction: Liability for Aiding and Abetting[4]**

Defendant Bravo may be found liable if you find that he aided and abetted others in a wrongful act committed against Alberto Camps, Eduardo Cappello, Rubén Bonet, and/or Ana María Villarreal de Santucho. In order to prove the Defendant liable for aiding and abetting any of the violations against Alberto Camps, Eduardo Cappello, Rubén Bonet, and/or Ana María Villarreal de Santucho, Plaintiffs must prove the following by a preponderance of the evidence:

1. One or more of the wrongful acts that comprise the claim were committed;

2. Defendant Bravo substantially assisted some person or persons who committed or caused one or more of the wrongful acts that comprise the claim; and

3. Defendant Bravo knew that his actions would assist in the illegal or wrongful activity at the time he provided the assistance.

**Authority:** *Curbelo Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1237 (S.D. Fla. 2012) (citing *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, 792 F.Supp.2d 1301, 1344 (S.D.Fla.2011)); *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instruction given for torture claim in TVPA case).

---

[4] Defendant reserves an objection to this instruction, to raise at the close of evidence, on the grounds that Defendant does not believe the trial will produce evidence in support of Plaintiffs' secondary liability theories; namely, aiding and abetting, conspiracy, and joint criminal enterprise. Should Plaintiffs fail to produce evidence in support of these theories of liability, Defendant will ask the Court to strike mention of these theories from the jury instructions and will file for a directed verdict.

**Defendant's Argument in Support of Defendant's Proposed Instruction 4.8**

**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.8**

Plaintiffs added the following sentence at the end of the instruction: "If you find that Defendant Bravo is liable for aiding or abetting, then he is liable for all the wrongful acts that were a natural and foreseeable result of the activity Defendant Bravo helped undertake."

**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.8**

Defendant proposed this alternate instruction which was modeled entirely from the jury instruction given in *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004). Defendant objects to Plaintiffs' addition of the sentence "If you find that Defendant Bravo is liable for aiding or abetting, then he is liable for all the wrongful acts that were a natural and foreseeable result of the activity Defendant Bravo helped undertake" as this language is not based on any case from the Southern District of Florida that has dealt with TVPA claims. Further, Plaintiffs' added sentence is unnecessarily confusing and misleading to the jury as it uses language that is highly prejudicial to Defendant. The Southern District of Florida instruction should be used and the sentence Plaintiffs added should not incorporated.

**4.9     Disputed - Plaintiffs' Proposed Instruction: Liability for Conspiracy**

Defendant Bravo may be found liable if you find that he conspired with another person or persons who committed a wrongful act against Alberto Camps, Eduardo Cappello I, Rubén Bonet, and/or Ana María Villarreal De Santucho. To hold Defendant Bravo liable under a theory of conspiracy, Plaintiffs must prove by a preponderance of the evidence, as to each claim:

4.  Two or more persons agreed to commit a wrongful act;

5.  Defendant Bravo joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it; and

6.  One or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy.

**Agreement**

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed to every detail of the conspiracy. Proof of a spoken or written agreement is not required. Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement.

Circumstantial evidence may also be used to show the existence of an agreement. The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme. Among other things, this may include the nature of the acts done, the relationship between the co-conspirators, the interests of the alleged co-conspirators, and the relationships between the co-conspirators and the actions (e.g., the proximity in time and place of the acts, and the duration of the actors' joint activity).

**Knowledge**

The exact limits or scope of the plan need not be known to each conspirator, nor is it necessary that the identity of everyone involved in the conspiracy be known to all of them. What the Plaintiffs must show is that conspirators shared the same general conspiratorial objective, even if their motives for desiring the result are not necessarily identical.

Knowledge of and participation in the plan may also be shown by circumstantial evidence. As long as at least one overt act is done by a member of the criminal conspiracy, then all of the members of the conspiracy are considered to have committed the crime. Defendant can be found liable even if his participation in the scheme is "slight" by comparison to the actions of other co-conspirators. Once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy and all acts that were the natural and foreseeable consequence of the conspiracy. A conspirator can be held liable for all reasonably foreseeable offenses committed by co-conspirators during and in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action, so long as the purpose of the injurious action was to advance the overall object of the conspiracy.

**Sources:** *See* Court's Instructions to the Jury at 16-19, *Mamani v. Berzaín*, Case No. 1:08-cv-21063-JIC (S.D. Fl. Mar. 27, 2018), ECF No. 429; Court's Instructions to the Jury at 18, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, aff'd, 402 F.3d 1148 (11th Cir. 2005); Court's Instructions to the Jury at 19–21, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 (using substantially the same instruction for conspiracy in a TVPA case); *Pinkerton v. United States*, 328 U.S. 640, 645–48 (1946); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157–1160 (11th Cir. 2005) (upholding a jury verdict premised on indirect liability claims under the ATS and TVPA, including conspiracy, and holding that plaintiffs "needed to prove by a preponderance of the evidence that (1) two or more persons agreed to commit a wrongful act, (2) [defendant] joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in

furtherance of the conspiracy"); *United States v. Dozie*, 27 F.3d 95, 97 (4th Cir. 1999) (citation omitted) ("To prove a conspiracy, the government must show an agreement to do something illegal, willing participation by the defendant, and an overt act in furtherance of the agreement. Knowledge and participation may be shown by circumstantial evidence. Once a conspiracy has been established, it is only necessary to show a 'slight connection between the defendant and the conspiracy to support conviction.'"); *United States v. Calderon,* 127 F.3d 1314, 1324, 1326 (11th Cir. 1997); *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996); *United States v. Gold,* 743 F.2d 800, 824 (11th Cir. 1984); *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983) ("As to the extent of liability, once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action, . . . so long as the purpose of the tortious action was to advance the overall object of the conspiracy."); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *6 (S.D. Fla. Sept. 27, 2021) (to prove conspiracy in a TVPA case, plaintiffs must "prove by a preponderance of the evidence that (1) two or more persons agreed to commit a wrongful act, (2) [a defendant] joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy," and finding "the evidence meets every element of a conspiracy theory because Defendant joined with 7,000 paramilitary members for the purpose of controlling drugs and accomplished that objective through a campaign of targeted violence" (quoting *Cabello*, 402 F.3d at 1159))); *Penaloza v. Drummond Co., Inc.*, 384 F. Supp. 3d 1328, 1347 (N.D. Ala. 2019) (holding that plaintiffs alleged sufficient facts to plead conspiracy as to one individual defendant under the TVPA (citing *Cabello*, 402 F.3d at 1159)); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1120–21 (S.D. Fla. 2016) ("To prove an Individual Defendant indirectly liable by means of conspiracy, Plaintiffs must allege and prove (1) two or more persons agreed to commit a wrongful act (2) the defendant joined the conspiracy knowing of at least one of the goals of the conspiracy and with the intent to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy." (citing *Cabello*, 402 F.3d at 1159)); *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK, 2015 WL 8659954, at *3 (M.D. Fla. Dec. 14, 2015) (to establish liability under a conspiracy theory, plaintiffs must show "that Defendant knowingly joined an agreement with one or more persons to commit a wrongful act and one of the members to the conspiracy acted in furtherance of that conspiracy"); *Doe v. Drummond Co.*, No. 2:09-CV-01041-RDP, 2010 WL 9450019, at *15 (N.D. Ala. Apr. 30, 2010) (holding that plaintiffs' TVPA claims based on a conspiracy theory of liability survive dismissal).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 4.9**

Plaintiffs' proposed instruction tracks the elements of conspiracy as recognized under the law of this Circuit and is taken almost verbatim from instructions given on conspiracy in other Eleventh Circuit TVPA cases. Court's Instructions to the Jury at 19–21, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 (using substantially the same instruction for conspiracy in a TVPA case); Court's Instructions to the Jury at 16-19, *Mamani v. Berzaín*, Case No. 1:08-cv-21063-JIC (S.D. Fl. Mar. 27, 2018), ECF No. 429 (same); *see also Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157–1160 (11th Cir. 2005) (holding that, to prove conspiracy in a TVPA case, plaintiffs "needed to prove by a preponderance of the evidence that (1) two or more persons agreed to commit a wrongful act, (2) [defendant] joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy"); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *6 (S.D. Fla. Sept. 27, 2021) (holding that, to prove conspiracy in a TVPA case, plaintiffs must "prove by a preponderance of the evidence that (1) two or more persons agreed to commit a wrongful act, (2) [a defendant] joined the conspiracy knowing of at least one of the goals of the conspiracy and intending to help accomplish it, and (3) one or more of the violations was committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy").

By contrast, Defendant's proposed instruction uses two different standards for *mens rea* stating correctly that Defendant must have joined the conspiracy "knowing" the goals but then referencing "purpose and intent" in his final paragraph. But the only case Defendant cites in support of his proposed heightened "purpose or intent" standard was wrongly decided and contrary to controlling Eleventh Circuit precedent in *Cabello*. *Compare Curbelo Garcia v. Chapman*, 911

F. Supp. 2d 1222, 1237 (S.D. Fla. 2012) (*citing In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, 792 F.Supp.2d 1301, 1344 (S.D. Fla. 2011)) (holding that the mens rea needed for conspiracy is "purpose or intent"), *with Cabello*, 402 F.3d at 1157-1160 (holding that mens rea for conspiracy is knowledge). The only case cited by the court in *Curbelo* in support of its heightened *mens rea* standard for conspiracy liability, *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1344 (S.D. Fla. 2011), was subsequently abandoned in a later decision by the *Chiquita* court in favor of the standard Plaintiffs have incorporated in their jury instruction. *See In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1120–21 (S.D. Fla. 2016) (holding that, to prove conspiracy, the plaintiffs must prove "the defendant joined the conspiracy ***knowing*** of at least one of the goals of the conspiracy and with the intent to help accomplish it") (emphasis added) (citing *Cabello*, 402 F.3d at 1159)).

Defendant's recitation of the each of the elements of conspiracy is also improper and contrary to the law. First, Defendant suggests that the agreement must be to "deliberately torture ***and*** kill innocent civilians" rather than just a "wrongful act" as required. *See Jaramillo*, 2021 WL 4427455, at *6 (finding plaintiffs proved conspiracy in a TVPA case by showing that "defendant founded the BCB [a paramilitary force] [and] used it to combat the illegal drug trade and guerilla forces"); *Chiquita*, 190 F. Supp. 3d at 1120-21 (finding in a TVPA case alleged conspiracy to commit extrajudicial killing where plaintiffs alleged "an agreement to fund the AUC [a Colombian paramilitary force] in exchange for the AUC's services in driving left-wing guerilas and sympathizers out of the banana-growing regions of Colombia"). Of course, it is not necessary in a conspiracy for the agreement to be either to torture or to kill, let alone both. After all, as Defendant's own proposal concedes: "The exact limits or scope of the plan need not be known to

each conspirator" and "Once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy and all acts that were the natural and foreseeable consequence of the conspiracy." Conspirators are regularly held liable for unintended actions of their co-conspirators; that is the nature of conspiracy liability.

Second, Defendant's instruction states that Bravo must have joined in the agreement with the purpose or intent to facilitate "the torture **and** killings" rather than just one of the conspiracy's goals—which, again, need not have been either torture or killing, so long as it was wrongful. *See Cabello*, 402 F.3d at 1157–1160 (11th Cir. 2005) (the second element of conspiracy is that defendant "joined the conspiracy knowing of at least **one of the goals** of the conspiracy and intending to help accomplish it" (emphasis added)). Finally, Defendant replaces the "act in furtherance of the conspiracy" element with "torture and extrajudicial killing" itself – thereby defeating the theory of conspiracy liability and making it entirely circular.

Finally, Defendant objects to Plaintiffs paragraphs on Agreement and Knowledge. However, Defendant is wrong that these paragraphs were not given to the jury in *Mamani* – they were given almost verbatim on pages 17, 18, and 19 of the *Mamani* instructions and they have been used by courts in other TVPA cases. Court's Instructions to the Jury at 16-19, *Mamani v. Berzaín*, Case No. 1:08-cv-21063-JIC (S.D. Fl. Mar. 27, 2018), ECF No. 429; Court's Instructions to the Jury at 19–21, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 (using substantially the same instruction for conspiracy in a TVPA case). As explained above, the instruction given by the court in *Curbelo* should be disregarded.

Because Plaintiffs' instruction is an accurate statement of the law on conspiracy liability in the Eleventh Circuit, the instruction should be given as proposed by Plaintiffs.

**4.9      Disputed - Defendant's Proposed Instruction: Conspiracy[5]**

The second theory under which Plaintiffs seek to hold Defendant Bravo liable for the extrajudicial killing, attempted extrajudicial killing, and torture of their relatives is known as "conspiracy." The law of conspiracy makes a person liable if they conspired with another person to commit a wrongful act. To prove conspiracy liability, Plaintiffs must prove by a preponderance of the evidence, as to each claim:

1. Two or more persons agreed to deliberately torture, kill and attempted to kill innocent civilians;

2. The Defendant joined the conspiracy knowing of at least one of the goals of the conspiracy (torture, kill, and attempted kill) and intending to accomplish it; and,

The torture, attempted extrajudicial killing, and extrajudicial killing of Plaintiffs' relatives were committed by someone who was a member of the conspiracy and acted in furtherance of the conspiracy.

The "purpose or intent" necessary for conspiracy liability requires more than mere knowledge of the Argentinean soldiers' unlawful goals. Rather, Plaintiffs must prove that the Defendant joined the conspiracy with the specific purpose that Argentinean soldiers deliberately torture and kill innocent civilians. In other words, Plaintiffs must prove that the Defendant actually intended for Argentinean soldiers to deliberately torture, attempt to kill and kill innocent civilians.

---

[5] Defendant reserves an objection to this instruction, to raise at the close of evidence, on the grounds that Defendant does not believe the trial will produce evidence in support of Plaintiffs' secondary liability theories; namely, aiding and abetting, conspiracy, and joint criminal enterprise. Should Plaintiffs fail to produce evidence in support of these theories of liability, Defendant will ask the Court to strike mention of these theories from the jury instructions and will file for a directed verdict.

For a conspiracy to have existed, it is not necessary that the conspirators made a formal agreement or that they agreed to every detail of the conspiracy.  Proof of a tacit, as opposed to explicit, understanding is sufficient to show agreement.

The exact limits or scope of the plan need not be known to each conspirator, nor is it necessary that the identity of everyone involved in the conspiracy be known to all of them. What the Plaintiffs must show is that conspirators shared the same general conspiratorial objective, even if their motives for desiring the result are not necessarily identical.

Once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy and all acts that were the natural and foreseeable consequence of the conspiracy. A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable. He need not even have planned or known about the injurious action, so long as the purpose of the tortious action was to advance the overall object of the conspiracy.

**Authority:** Instruction given in *Mamani v. Sanchez*, S.D. Fla., Case No. 08-21063-CIV-COHN/SELTZER (D.E. 429)(March 27, 2018); *Curbelo Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1237 (S.D. Fla. 2012) (citing *In re Chiquita*, 792 F. Supp. 2d at 1343-34); *Curbelo Garcia v. Chapman,* No. 1:12-cv-21891, Dkt. 239-1 (S.D. Fla. Oct. 6, 2014).

**Defendant's Argument in Support of Defendant's Proposed Instruction 4.9**

<u>**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.9**</u>

Plaintiffs added entire sections of definitions including language going into what needs to be proven by circumstantial evidence. The paragraphs added are as follows:

Circumstantial evidence may also be used to show the existence of an agreement. The very nature of conspiracy frequently requires that the existence of an agreement be proved by inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme. Among other things, this may include the nature of the acts done, the relationship between the co-conspirators, the interests of the alleged co-conspirators, and the relationships between the co-conspirators and the actions (e.g., the proximity in time and place of the acts, and the duration of the actors' joint activity).

Knowledge of and participation in the plan may also be shown by circumstantial evidence. As long as at least one overt act is done by a member of the criminal conspiracy, then all of the members of the conspiracy are considered to have committed the crime. Defendant can be found liable even if his participation in the scheme is "slight" by comparison to the actions of other co-conspirators. Once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy and all acts that were the natural and foreseeable consequence of the conspiracy.

<u>**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.9**</u>

Defendant proposed this instruction which was modeled from the jury instruction given in *Mamani v. Sanchez*, S.D. Fla., Case No. 08-21063-CIV-COHN/SELTZER (D.E. 429) (March 27, 2018) and *Curbelo Garcia v. Chapman,* No. 1:12-cv-21891, Dkt. 239-1 (S.D. Fla. Oct. 6, 2014). Defendant objects to Plaintiffs' addition of both paragraphs regarding circumstantial evidence as this language is not based on any case from the Southern District of Florida that has dealt with TVPA claims. The paragraphs added by Plaintiffs were not part of the instructions on conspiracy liability either in the *Mamani* case or in *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instructions in TVPA case). Further, Plaintiffs' added paragraphs are unnecessarily confusing and misleading to the jury as it uses language that is highly prejudicial to Defendant. The Southern District of Florida instruction should be used and the paragraphs that Plaintiffs added should not be incorporated.

**4.10    Disputed - Plaintiffs' Proposed Instruction: Liability for Joint Criminal Enterprise**

Defendant Bravo may be found liable if you find that he was involved in a joint criminal enterprise that resulted in the harms alleged by the Plaintiffs.

Although I have used the term "joint criminal enterprise," recall that you are not being called on to decide a criminal case. As with the other claims, the Plaintiffs' burden of proof is a preponderance of the evidence, and not the higher burden of proof required in criminal cases.

A joint criminal enterprise is a common plan or purpose between two or more people to commit a wrongful act. If Defendant Bravo is found to participate in a joint criminal enterprise, then he is liable as a co-perpetrator of wrongful acts that result from that enterprise.

To establish a joint criminal enterprise, Plaintiffs must prove:

1.  The existence of a common plan or purpose to commit any wrongful act;

2.  Defendant Bravo committed an act that either directly or indirectly contributed to the execution of this common plan;

3.  Defendant Bravo committed this act with the intention to participate in and further the common plan; and

4.  Wrongful acts committed in the execution of this common plan resulted in the harm claimed by Plaintiffs.

Defendant Bravo can also be held liable for acts committed by a member of the joint criminal enterprise that were not agreed upon in the common plan as long as (i) the act was a natural and foreseeable consequence of the enterprise; (ii) Defendant Bravo was aware that the wrongful conduct was a possible consequence of the joint criminal enterprise; and (iii) even with that awareness, he continued to participate in the enterprise.

A common plan or purpose need not be express but can be inferred from the circumstances, such as the fact that several people acted in unison; nor do Plaintiffs need to show that the plan was prearranged. Instead, Plaintiffs can show that the plan materialized spontaneously and without prior preparation.

Plaintiffs need not prove that Defendant Bravo personally committed or personally participated in any of the wrongful acts. Nor do Plaintiffs need to prove that Defendant Bravo was physically present during the commission of the wrongful acts.

**Sources:** Court's Instructions to the Jury at 23–25, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-219-221, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021); *Warfaa v. Ali*, 33 F. Supp. 3d 653, 666 (E.D. Va. 2014) (finding plaintiff had adequately pled claims "against defendant under three theories of secondary liability: command responsibility, aiding and abetting liability, and joint criminal enterprise"), *aff'd*, 811 F.3d 653 (4th Cir. 2016); *Yousuf v. Samantar*, No 1:04-CV-1360 (LMB/JFA), 2012 WL 3730617, at *11 (E.D. Va. Aug. 28, 2012) (explaining the "doctrine of joint criminal enterprise, which is the international law analog to a conspiracy as a completed offense," is a potential theory of liability in a case alleging claims under the TVPA); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 490 (D. Md. 2009) (accepting joint criminal enterprise as a separate basis for liability and explaining that "[t]he concept of joint criminal enterprise provides for joint liability where there is a common design to pursue a course of conduct where: '(i) the crime charged was a natural and foreseeable consequence of the execution of [the] enterprise, and (ii) the accused was aware that such a crime was a possible consequence of the execution of [the] enterprise, and, with that awareness, participated in [the] enterprise'" (quoting *Prosecutor v. Brdjanin*, Case No. IT–99–36–T, Judgment, ¶ 265 (Sept. 1, 2004))), *aff'd on other grounds*, 402 Fed. Appx. 834 (4th Cir. 2010); *Prosecutor v. Vasiljevic*, Case No. IT-98-32-A, Judgment of Appeals Chamber, ¶ 102 (Int'l Crim. Trib. For the Former Yugoslavia Feb. 25, 2004) (finding that if the defendant is found to participate in a joint criminal enterprise, then he is liable as a co-perpetrator of that wrongful act); *Prosecutor v. Tadic*, Case No. IT-94-1-A, Judgment of Appeals Chamber, ¶ 227 (Int'l Crim. Trib. For the Former Yugoslavia Jul. 15, 1999) (detailing elements of joint criminal enterprise and noting that plaintiffs need not show that the plan was prearranged, but that it can be spontaneous).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 4.10**

Plaintiffs proposed instruction accurately reflects the elements of joint criminal enterprise as articulated by U.S. courts and is taken almost verbatim from instructions given to juries in other TVPA cases. *See* Court's Instructions to the Jury at 23–25, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-219-221, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021); *see also Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 490 (D. Md. 2009) (accepting joint criminal enterprise as a separate basis for liability and explaining that "[t]he concept of joint criminal enterprise provides for joint liability where there is a common design to pursue a course of conduct where: '(i) the crime charged was a natural and foreseeable consequence of the execution of [the] enterprise, and (ii) the accused was aware that such a crime was a possible consequence of the execution of [the] enterprise, and, with that awareness, participated in [the] enterprise'" (quoting *Prosecutor v. Brdjanin*, Case No. IT–99–36–T, Judgment, ¶ 265 (Sept. 1, 2004))), *aff'd on other grounds*, 402 Fed. Appx. 834 (4th Cir. 2010).

Defendant's instruction is almost identical to Plaintiffs' apart from three differences. First, both instructions note that, even though this mode of liability is called joint *criminal* enterprise, this is not a criminal case and remind the jury that the burden of proof they must apply is a preponderance of the evidence. Plaintiffs' instruction also notes that the burden of proof is "not the higher burden of proof required in criminal cases." Defendant disputes this clause. Plaintiffs submit that this clause is necessary for clarity and to prevent jury confusion.

Second, Defendant has added to the *mens rea* element that "An essential element of a joint criminal enterprise is a *criminal intention* to participate in a common criminal design." This sentence however is unnecessary and confusing to the jury. This is not a criminal case, and

Defendant has not cited to *any* authority supporting a heightened mens rea standard for joint criminal enterprise in a civil case. Nor will the jury understand what a "criminal intention" is.

Finally, Defendant's instruction does not include the final two paragraphs in Plaintiffs' proposed instruction but does not—because he cannot—provide any justification for omitting them. They are a correct statement of the law, taken verbatim from other instructions on joint criminal enterprise given in TVPA cases and necessary to assist the jury's fact finding. *See* Court's Instructions to the Jury at 23–25, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-219-221, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021); *see also Prosecutor v. Tadic*, Case No. IT-94-1-A, Judgment of Appeals Chamber, ¶¶ 227, 233- (Int'l Crim. Trib. For the Former Yugoslavia Jul. 15, 1999) (explaining the elements of joint criminal enterprise under customary international law and holding that (1) a common plan does not need to be "previously arranged or formulated" but can be spontaneous and (2)"participation [in a joint criminal enterprise] need not involve commission of a specific crime . . . but may take the form of assistance in, or contribution to, the execution of the common plan or purpose", and convicting Tadič for murder as part of a joint criminal enterprise even though there was insufficient evidence to show that he was present during the killing.). Moreover, these last two paragraphs are highly analogous to the last few paragraphs of the conspiracy instructions—where even Defendant's proposal includes such language.

Accordingly, Plaintiffs' instruction should be given to the jury, as proposed.

**4.10    Disputed - Defendant's Proposed Instruction: Joint Criminal Enterprise[6]**

Defendant Bravo may be found liable if you find that he was involved in a joint criminal enterprise that resulted in the harms alleged by the Plaintiffs.

Although I have used the term "joint criminal enterprise," recall that you are not being called on to decide a criminal case. As with the other claims, the Plaintiffs' burden of proof is a preponderance of the evidence.

A joint criminal enterprise is a common plan or purpose between two or more people to commit a wrongful act. If Defendant is found to participate in a joint criminal enterprise, then he is liable as a co-perpetrator of wrongful acts that result from that enterprise.

To establish a joint criminal enterprise, Plaintiffs must prove:

1.    The existence of a common plan or purpose to commit any wrongful act;

2.    Defendant committed an act that either directly or indirectly contributed to the execution of this common plan;

3.    Defendant committed this act with the intention to participate in and further the common plan. An essential element of a joint criminal enterprise is a *criminal intention* to participate in a common criminal design; and

4.    Wrongful acts committed in the execution of this common plan resulted in the harm claimed by Plaintiffs.

---

[6] Defendant reserves an objection to this instruction, to raise at the close of evidence, on the grounds that Defendant does not believe the trial will produce evidence in support of Plaintiffs' secondary liability theories; namely, aiding and abetting, conspiracy, and joint criminal enterprise. Should Plaintiffs fail to produce evidence in support of these theories of liability, Defendant will ask the Court to strike mention of these theories from the jury instructions and will file for a directed verdict.

Defendant Bravo can also be held liable for acts committed by a member of the joint criminal enterprise that were not agreed upon in the common plan as long as (i) the act was a natural and foreseeable consequence of the enterprise; (ii) Defendant was aware that the wrongful conduct was a possible consequence of the joint criminal enterprise; and (iii) even with that awareness, he continued to participate in the enterprise

**Authority:** *See Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 490 (D. Md. 2009), *aff'd on other grounds*, 402 Fed. Appx. 834 (4th Cir. 2010) (accepting joint criminal enterprise as a separate basis for liability) (citation omitted); *Prosecutor v. Tadic*, (ICTY Appeals Chamber), IT-94-1-A, para. 227 (Jul. 15, 1999) (detailing elements of joint criminal enterprise and noting that plaintiffs need not show that the plan was prearranged, but that it can be spontaneous). *Mastafa v. Chevron Corp.*, 770 F.3d 170, 192 n.21 (2d Cir. 2014) (holding that "under a theory of relief based on a joint criminal enterprise, plaintiffs' conspiracy claims would require the same proof of mens rea as their claims for aiding and abetting."); *Bashe Abdi Yousuf v. Mohamed Ali Samantar*, No. 1:04cv1360 (LMB/JFA), 2012 U.S. Dist. LEXIS 122403, at *34 (E.D. Va. Aug. 28, 2012).

**Defendant's Argument in Support of Defendant's Proposed Instruction 4.10**

**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 4.10**

Plaintiffs added to the end of the second paragraph the following sentence: "and not the higher burden of proof required in criminal cases."

Plaintiffs also added these paragraphs to the instruction: entire sections of definitions including language going into what needs to be proven by circumstantial evidence. The paragraphs added are as follows:

A common plan or purpose need not be express but can be inferred from the circumstances, such as the fact that several people acted in unison; nor do Plaintiffs need to show that the plan was prearranged. Instead, Plaintiffs can show that the plan materialized spontaneously and without prior preparation.

Plaintiffs need not prove that Defendant Bravo personally committed or personally participated in any of the wrongful acts. Nor do Plaintiffs need to prove that Defendant Bravo was physically present during the commission of the wrongful acts.

**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 4.10**

Defendant objects to Plaintiffs' addition of the sentence "and not the higher burden of proof required in criminal cases" and of both paragraphs regarding circumstantial evidence as this language is not based on any case from the Southern District of Florida that has dealt with TVPA claims. Further, Plaintiffs' added language are unnecessarily confusing and misleading to the jury as it uses words that are highly prejudicial to Defendant. The language that Plaintiffs added should not be incorporated.

**5. Disputed - Plaintiffs' Proposed Instruction: Affirmative Defenses**

If you find that the Plaintiffs have proved each element that they must prove, you must decide whether Defendant Bravo has established his affirmative defenses by a preponderance of evidence.

**Plaintiffs' Argument in Support of Instruction 5**

Defendant does not dispute the text of Plaintiffs' proposed introduction to the instructions on affirmative defenses, rather he maintains that this instruction should not be given at all. But given the number of claims, theories of liability, and affirmative defenses at issue, this instruction is necessary to introduce the affirmative defenses and how they relate to Plaintiffs' claims. as well as to remind the jury of Defendant's burden of proof with respect to his affirmative defenses. Because this instruction is an accurate statement of the law, and will assist the jury in understanding the instructions and in its deliberations, it should be given to the jury as proposed by Plaintiffs. However, Plaintiffs' would also agree to giving what is currently proposed as instruction 3.7.2 in place of instruction 5, and only at this juncture rather than with instruction 3.71., so that the explanation of Defendant's burden of proof is given only once and not disconnected from the instructions on the affirmative defenses.

**Defendant's Objection to Plaintiffs' Proposed Instruction 5.0**

Defendant objects to Plaintiffs' addition of this instruction as it is unnecessarily repetitive to the 11th Circuit Basic Instruction 3.7.2.  Further, this instruction is not included in any of the cases used by the parties as modeled for their instructions: *Cabello, Jara or Mamani*.

**5.1     Disputed - Plaintiffs' Proposed Instruction: Affirmative Defense – Statute of Limitations**

Defendant Bravo has raised as an affirmative defense that Plaintiffs cannot prevail on their claims because they did not bring suit within the time allowed by the law. Defendant Bravo must prove this affirmative defense by a preponderance of evidence. Statutes of limitations specify the amount of time a person has to initiate legal proceedings after an event occurs. The statute of limitations that applies to the law Plaintiffs rely on to bring their claims – the Torture Victim Protection Act – provides that claims must be brought within 10 years of the date on which the TVPA was enacted, March 12, 1992, or within 10 years of the date the incident occurred, whichever is later. If Plaintiffs brought suit after March 12, 2002, and if any of the acts or occurrences that are the subject of this lawsuit took place more than 10 years before Plaintiffs brought suit, then a claim based on that act or occurrence is barred by the statute of limitations, unless an exception applies.

There are situations in which the statute of limitations is suspended, or "tolled." Tolling applies if Plaintiffs show they could not bring suit due to extraordinary circumstances beyond their control and that were unavoidable even with diligence. Plaintiffs must prove that such circumstances existed by a preponderance of evidence. Such extraordinary circumstances include, but are not limited to, situations where a repressive regime exists, where litigants or witnesses fear or face danger pursuing claims related to human rights violations, where plaintiffs could not investigate their claims because of the circumstances in their home country, where plaintiffs were unable to locate the defendant, where plaintiffs did not pursue their claims in the United States while they were participating in or relying on accountability processes in the country where the incident occurred, or where the defendant was immune from suit.

**The Plaintiffs brought their suit against Defendant Bravo on October 20, 2020.**

**Sources:** Pub. L. No. 102-256, § 2(c), 106 Stat. 73, 73 (1992) (codified at 28 U.S.C.A. § 1350 note); S. Rep. No. 102-249 at 10–11 (1991) (the TVPA "provides for a 10-year statute of limitations, but explicitly calls for consideration of *all equitable tolling principles* in calculating this period with a view toward giving justice to plaintiff's rights" (emphasis added)); Pre-Trial Conf. Tr. at 12:24-13:2, May 24, 2022, ECF No. 100 (defense counsel conceding that the TVPA "wasn't enacted until 1992" so the limitations period could not have started until after that year); *Arce v. Garcia*, 434 F.3d 1254, 1261–62, 1264 (11th Cir. 2006) (holding that equitable tolling applies to TVPA claims when a movant untimely files because of "extraordinary circumstances that are both beyond his control and unavoidable even with diligence" and tolling limitations period when repressive regime existed and when defendant was outside the jurisdictional reach of the United States (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.1999))); *Jean v. Dorelien*, 431 F.3d 776, 779, 780–81 (11th Cir. 2005) (finding that "equitable tolling is clearly legally applicable to the [TVPA] claims" and tolling statute of limitations given the "pattern and practice of torture, mass murder, intimidation and reprisals against perceived opponents of the government during the military regime in Haiti from 1991 to 1994" until "the plaintiff can investigate and compile evidence without fear of reprisals against him, his family and witnesses"); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005) (the statute of limitations under the TVPA was properly tolled until the military dictatorship lost power in 1990, because "the Chilean political climate prevented the Cabello family from pursuing any efforts to learn of the incidents surrounding Cabello's murder"); *Chavez v. Carranza*, 559 F.3d 486, 493–94 (6th Cir. 2006) (finding that the district court properly tolled the TVPA and ATS statute of limitations where the record established "widespread human rights abuses were carried out by the Salvadoran military against civilians during the country's civil war [and after] and that plaintiffs feared reprisals against themselves or their family members."); *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996) (tolling statute of limitations under the TVPA for claims of torture, "disappearance," and summary execution against former Philippine dictator Ferdinand Marcos until he left power and the country regained democratic rule); *Warfaa v. Ali*, 33 F. Supp. 3d 653, 666 (E.D. Va 2014) (tolling the statute of limitations until at least democracy returned to Somalia and noting "[t]here is a consensus among the federal courts that . . . a repressive authoritarian regime constitute[s] 'extraordinary circumstances' for purposes of tolling the TVPA's limitations period" (citing *Jean*, 431 F.3d at 780–81 (collecting cases))); *Yousuf v. Samantar*, No. 1:04-cv-1360, 2012 WL 3730617, at *4–6 (E.D. Va. Aug. 28, 2012) (equitable tolling available for the TVPA and tolling the limitations period because "[i]n addition to the turmoil within Somali[a], defendant's absence—and plaintiffs' lack of knowledge about his whereabuts in the years following his departure from Somalia—prevented the commencement of [plaintiffs' ATS and TVPA claims]"); *Jane W. v. Thomas*, No. CV 18-569, 2021 WL 4206665, at *9 (E.D. Pa. Sept. 15, 2021) (tolling limitations period until Liberian Supreme Court found Truth and Reconciliation Commission's recommendations non-binding); *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 291 (S.D.N.Y. 2009) (tolling limitation period during transitional justice process because "[a] reasonable plaintiff may have assumed that defendants would participate in the . . . process, in which case plaintiffs would have had no need to conduct an independent investigation"); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 482 (D. Md. 2009) (tolling the statute of limitations for plaintiffs' ATS and TVPA claims because plaintiffs pled that "the political climate in Peru was unremittingly hostile to any effort on their part to pursue remedies"); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1146–

48 (E.D. Cal. 2004) (tolling statutes of limitations during and after El Salvadoran civil war due to fear of retaliation from military, government and death squads if plaintiffs brought litigation in United States); *Doe v. Unocal Corp.*, 963 F. Supp. 880, 897 (C.D. Cal. 1997) (ATS and TVPA claims "should be tolled" during Burmese dictatorship based on plaintiffs' alleged inability to "obtain access to judicial review" in Burma and the "threat of reprisal from [the government]" if plaintiffs attempted to access courts in the United States).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 5.1**

Defendant has raised as an affirmative defense that Plaintiffs' claims are time barred by the statute of limitations. Defendant objects to Plaintiffs' instruction, primarily arguing that it improperly provides examples of circumstances that may justify tolling in TVPA cases (even though Defendant's instruction does the same) and that tolling should be decided by the Court not the jury. Defendant's arguments are contradicted by caselaw and the TVPA's legislative history.

Plaintiffs don't dispute that claims under the TVPA are subject to a ten-year statute of limitations. However, tolling is available and Congress made clear in enacting the TVPA that *all* available equitable tolling principles should be considered "with a view toward giving justice to plaintiff's rights." S.Rep. No. 102-249, at 10-11. Defendant's reference to the fact that tolling should only be applied "sparingly" is improper because the jury has no means to measure "sparingly" and it will not help the jury to determine whether Plaintiffs have shown that "extraordinary circumstances that are both beyond [their] control and unavoidable even with diligence" prevented them from filing their TVPA case within the limitations period. *See Arce v. Garcia*, 434 F.3d 1254, 1262 (11th Cir. 2006); *see also id.* 1261–62, 1264 (listing examples and tolling limitations period when repressive regime existed and when defendant was outside the jurisdictional reach of the United States). If the Court determines that the instruction should state that tolling is "applied sparingly", however, the instruction should also state that tolling must be considered "with a view toward giving justice to plaintiffs' rights" as Congress intended. In enacting the TVPA, Congress provided an "illustrative, *but not exhaustive*" list of circumstances in which tolling is appropriate. *Arce*, 434 F.3d at 1262 (11th Cir. 2006); *see also id.* 1261–62, 1264 (listing examples and tolling limitations period when repressive regime existed and when defendant was outside the jurisdictional reach of the United States).

As to Defendant's entirely new contention that Plaintiffs waived their ability to argue the limitations period should be tolled, Plaintiffs' complaint is replete with allegations that extraordinary circumstances toll their claims, *see* Compl. ¶¶ 73–83, and even if it were not, that would not prevent them from rebutting Defendant's affirmative defense by arguing tolling applies, *see Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017) (affirmative defenses are "not something the plaintiff must anticipate and negate in her pleading").

Moreover, Defendant's instruction lists only those circumstances identified in the legislative history of the TVPA, omitting the fact that these are only "illustrative", creating the incorrect impression that there are only a limited set of circumstances when exhaustion applies and ignoring all the relevant circumstances federal courts have found to justify tolling under the TVPA. For instance, Defendant's instruction states that tolling is proper if the defendant conceals its identity from the plaintiff; and while that may be true, exhaustion is in fact equally available where there is no concealment, but where plaintiff is unable to find the defendant through reasonable diligence. *See Id.* (the statute of limitations should be tolled, *inter alia*, "where the defendant has concealed his or her whereabouts **_or_** the plaintiff has been unable to discover the identity of the offender" (quoting S. Rep. No. 102–249, at 10–11)); *Yousuf v. Samantar*, No. 1:04-cv-1360, 2012 WL 3730617, at *4–6 (E.D. Va. Aug. 28, 2012) (tolling the limitations period because "defendant's absence—and plaintiffs' lack of knowledge about his whereabouts in the years following his departure from Somalia—prevented the commencement of" plaintiffs' TVPA claims). Courts have expanded Congress's "illustrative" list of circumstances where tolling is applicable under the TVPA to include each of the circumstances Plaintiffs provide as examples in their proposed instruction. For example, courts routinely toll the TVPA limitations period while a repressive regime exists and where litigants or witnesses fear or face danger pursuing claims

related to human rights violations. *See, e.g.*, *Arce*, 434 F.3d at 1261–62, 1264 (tolling limitations period when repressive regime existed); *Jean v. Dorelien*, 431 F.3d 776, 779, 780–81 (11th Cir. 2005) (tolling limitations period due to "pattern and practice of torture, mass murder, intimidation and reprisals against perceived opponents of the government during the military regime in Haiti"); *Chavez v. Carranza*, 559 F.3d 486, 493–94 (6th Cir. 2006) (tolling limitations period where "widespread human rights abuses were carried out by the Salvadoran military against civilians during [and after] the country's civil war and that plaintiffs feared reprisals against themselves or their family members."); *Warfaa v. Ali,* 33 F. Supp. 3d 653, 666 (E.D. Va 2014) ("There is a consensus among the federal courts that . . . a repressive authoritarian regime constitute[s] 'extraordinary circumstances' for purposes of tolling" (collecting cases)); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1146–48 (E.D. Cal. 2004) (tolling limitations period during and after El Salvadoran civil war due to fear of retaliation from military, government, and death squads if plaintiffs brought litigation in United States); *Doe v. Unocal Corp.*, 963 F. Supp. 880, 897 (C.D. Cal. 1997) (tolling limitations period due to plaintiffs' the "threat of reprisal" in Burma if plaintiffs attempted to access courts in the United States).

Courts also routinely toll the limitations period where plaintiffs could not investigate their claims because of the circumstances in their home country or where plaintiffs were unable to locate the defendant or learn of his identity. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005) (tolling limitations period until the military dictatorship lost power because "the Chilean political climate prevented the Cabello family from pursuing any efforts to learn of the incidents surrounding Cabello's murder"); *Jean*, 431 F.3d at 779, 780–81 (11th Cir. 2005) (tolling limitations period until "the plaintiff can investigate and compile evidence without fear of reprisals against him, his family and witnesses"); *Yousuf v. Samantar*, No. 1:04-cv-1360, 2012 WL

3730617, at *4–6 (E.D. Va. Aug. 28, 2012) (tolling the limitations period because "defendant's absence—and plaintiffs' lack of knowledge about his whereabouts in the years following his departure from Somalia—prevented the commencement of" plaintiffs' TVPA claims); *see also* S. Rep. 102-249, 10-11 (the statute of limitations "should also be tolled where the defendant has concealed his or her whereabouts or the plaintiff has been unable to discover the identity of the offender").

In addition, courts have repeatedly applied tolling where plaintiffs did not pursue their claims in the United States while they were participating in or relying on accountability processes in the country where the incident occurred. *Jane W. v. Thomas*, No. CV 18-569, 2021 WL 4206665, at *9 (E.D. Pa. Sept. 15, 2021) (tolling limitations period while a truth and reconciliation commission investigated the acts underlying plaintiffs' complaint); *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 291 (S.D.N.Y. 2009) (tolling limitation period during truth and reconciliation proceedings because (1) it is unreasonable to expect plaintiffs "to participate in that lengthy and difficult process and simultaneously" bring a TVPA lawsuit and (2) plaintiffs could have reasonably assumed that defendants would participate in the accountability processes in their home country process, "in which case plaintiffs would have had no need to conduct an independent investigation or commence [TVPA] lawsuits").

Defendant's instruction ignores *all* of the relevant caselaw cited above in which federal courts have found repressive regimes, fear of persecution, difficulty investigating claims, inability to locate the defendant, and ongoing efforts in the home country to pursue justice justify tolling under the TVPA. Providing these exemplary circumstances to the jury is critical so that it can meaningfully apply the legal standard.

Moreover, Defendant's proposed instruction incorrectly asserts that "[t]his should be resolved by the Judge as a matter of law barring Plaintiffs' claims." That is wrong. Whether extraordinary circumstances existed that justify tolling the limitations period is a question of fact for the jury. *See Morton's Market Inc. v. Gustafson's Dairy Inc.*, 198 F.3d 823, 832-33 (11th Cir. 1999) (holding summary judgment should have been denied because "there is a jury question regarding tolling the statute of limitations"); *Kleiman v. Wright*, No. 18-CV-80176, 2020 WL 5632654, at *24 (S.D. Fla. Sept. 21, 2020) ("[W]ether the statute of limitations is tolled based on a defendant's alleged fraudulent concealment is a question of fact for a jury to decide."); *In re Chiquita Brands Int'l, Inc.*, 284 F. Supp. 3d 1284, 1322 (S.D. Fla. 2018) (denying motion for summary judgment because disputed evidence was "sufficient to create a jury question as to whether extraordinary circumstances beyond plaintiffs control existed sufficient to trigger equitable tolling"); *Ramos v. Hoyle*, No. 08-21809-CIV, 2010 WL 11505866, at *5 (S.D. Fla. Feb. 23, 2010) (upholding jury's finding that extraordinary circumstances warranted tolling of the statute of limitations).

Defendant instruction also improperly includes a list that includes both one-sided and ***disputed*** facts in his proposed instruction. For instance, Defendant's instruction states that Bravo has lived in the United States since 1980 but elsewhere Bravo has admitted to moving to the United States as early as 1973. *See, e.g.*, Bravo Dep. 137:12-15.

Finally, Defendant suggests that Plaintiffs' instruction does not clearly state Plaintiffs' burden with respect to the applicability of tolling. This makes no sense. Plaintiffs' instruction clearly states what their burden of proof is in the second paragraph: "Tolling applies if Plaintiffs show they could not bring suit due to extraordinary circumstances beyond their control and that

were unavoidable even with diligence. *Plaintiffs must prove that such circumstances existed by a preponderance of evidence.*"

 The Court should adopt Plaintiffs' instruction as it accurately reflects the applicable law and will assist the jury in determining whether "extraordinary circumstances" existed through well-established examples of situations in which courts have found the limitations period should be tolled.

**5.1    Disputed - Defendant's Proposed Instruction: Affirmative Defense – Statute of Limitations**

Defendant asserts that Plaintiffs' claims are barred by the Statute of Limitations. In other words, Defendant claims that Plaintiffs cannot prevail on their claims because they did not bring suit within the time allowed by the law.

The Torture Victim Protection Act has a ten-year statute of limitations, which means that Plaintiffs had to bring their claims within ten years of the date the incident occurred. 28 U.S.C. § 1350, note, § 2(c). Defendant must prove by a preponderance of the evidence that Plaintiffs brought their claims after the expiration of the ten-year statute of limitations.

However, the TVPA's ten statute of limitations can be equitably tolled under extraordinary circumstances that are both beyond Plaintiffs' control and are unavoidable even with diligence. Equitable tolling is a remedy which is only extended sparingly. Equitable tolling is appropriate where the defendant misleads the plaintiff allowing the statutory period to lapse, or when plaintiffs have no reasonable way of discovering the wrong perpetrated against them, or when there is deliberate concealment by the defendant of the actions or of his whereabouts. Plaintiff has the burden of proving by a preponderance of evidence that extraordinary circumstances occurred that prevented them from filing this action within a reasonable time after they obtained, or by due diligence could have obtained, the necessary information to bring the claims to court.

The incidents alleged in the complaint occurred in 1972. Defendant has lived in the United States since 1980. The Plaintiffs brought their suit against Defendant Bravo on October 20, 2020.

This should be resolved by the Judge as a matter of law barring Plaintiffs' claims.

**Authority:**  State Claims Instructions No. 1.3 at p.323 of Eleventh Circuit Pattern Jury Instructions (modified). Torture Victim Protection Act of 1991, 28 U.S.C. § 1350, note; *United States v. Gornto*, 792 F.2d 1028, 1033 (11th Cir. 1986); 16 Am. Jur. 2d Conspiracy; Cabello v. Fernandez-Larios, 402 F.3d 1148 (11th Cir. 2005).

**Defendant's Argument in Support of Defendant's Proposed Instruction 5.1**

**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 5.1**

Plaintiffs proposed its own instruction.

**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 5.1**

Defendant objects to Plaintiffs' instruction. First Plaintiffs did not allege tolling, let alone make any allegation as to any purported basis for tolling. Thus there is no jury question as to statute of limitations. In the event that tolling is an issue, Plaintiffs did not address the burden of proving tolling by preponderance of evidence. Further, Defendant objects to this instruction as the language used by Plaintiffs is unnecessarily confusing and misleading to the jury as it uses words and examples that are highly prejudicial to Defendant without any legal support from this Circuit for the use of same. Indeed, The instruction provided by Defendant should be used.

Plaintiffs' instruction is confusing, misleading, and does not reflect what the TVPA actually states. The TVPA, at Section 2(c) states as follows: "(c) Statute of Limitations. No action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose." The language included by Plaintiffs in this instruction is nowhere in the statute. Defendant objects to Plaintiffs' Jury Instructions as they are verbose, repetitive, unnecessarily long, and confusing. It is this law in this Circuit that jury instructions should be brief, concise, nonrepetitive, relevant to the case's details, understandable to the average juror, and should correctly state the law without misleading the jury or inviting unnecessary speculation. *See generally Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir. 1995) (*citing Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1525 (11th Cir.1985) ("***The purpose of jury instructions is to give the jury a clear and concise statement of the law applicable to the facts of the case.***"); *see also* 9 JAMES WILLIAM MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 51.20 (3d ed. 1997). "If there is no basis in the record for the instruction given, such error may

raise a 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations,' and reversal may be required." *Christopher*, 53 F.3d at 1194. A jury instruction is erroneous when "the trial judge's instructions to the jury, viewed as a whole, present a misleading impression or inadequate understanding of the law and the issues to be resolved." *Stuckey v. N. Propane Gas Co.*, 874 F.2d 1563, 1571 (11th Cir. 1989).

On the other hand, Defendant's instruction accurately reflects the text of the statute clearly and concisely as it is required. Plaintiffs do not provide any legal support for the proposed instruction. In addition, Plaintiffs' instruction confuses the jury as it does not clearly address the shifting burden of proof for the statute of limitations defense. First, Defendant needs to prove by a preponderance of the evidence that Plaintiffs brought their claims after the expiration of the statute of limitations. Then – if the court were to allow tolling -  the burden shifts to Plaintiffs to prove by preponderance of evidence that extraordinary circumstances existed that would allow the statute of limitations to be tolled.  Plaintiffs' instruction does not address that it is the law in this Circuit that in addressing whether Plaintiffs have proven extraordinary circumstances exist, it must be considered that that "[equitable] tolling is an extraordinary remedy which should be extended only sparingly." *See Arce v. Garcia*, 434 F.3d 1254, 1262 (11th Cir. 2006). Further, Defendant objects to this instruction as the language used by Plaintiffs is unnecessarily confusing and misleading to the jury because it uses words and examples that are highly prejudicial and not legally supported by the law in this Circuit.  Indeed, Plaintiffs have not cited and Defendant has not found in the TVPA's legislative history or in any jury instruction given in a TVPA cases within this Circuit the use of the examples given by Plaintiffs. On the other hand, the instruction provided by Defendant and the language and examples cited therein are fully supported by the Act itself, and by TVPA's legislative history and, therefore, should be used. *McNely v. Ocala Star-Banner*

*Corp*., 99 F.3d 1068, 1072 (11th Cir. 1996) (citing U.S. v. Starke, 62 F.3d 1374, 1380 (11th Cir.1995) (stating that the jury instructions and verdict form, considered as a whole, [must be] sufficient "so that the jurors understood the issues and were not misled.").  The use of Plaintiffs instruction would undoubtedly mislead the jury and should not be used.

**5.2     Disputed - Plaintiffs' Proposed Instruction: Affirmative Defense – Exhaustion of Remedies**

Defendant Bravo has raised as an affirmative defense that Plaintiffs cannot prevail on their claims because they have not exhausted adequate and available remedies in Argentina. Plaintiffs are entitled to a presumption that local remedies have been exhausted because they brought suit here in the United States. But, if you find that Defendant Bravo proved by a preponderance of evidence that adequate and available remedies exist and Plaintiffs have not exhausted them, Plaintiffs may rebut that evidence by showing that that the local remedies in Argentina were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. If you find that the local remedies in Argentina were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile, then the Plaintiffs were not required to exhaust such remedies and you should find against Defendant Bravo on this affirmative defense.

You should find that the local remedies in Argentina are ineffective, unobtainable, unduly prolonged, inadequate, or futile if Plaintiffs have shown by a preponderance of evidence, for example, that legal proceedings in the country where the incident occurred made little progress over the years; that pursuing remedies in the country where the incident occurred would have placed the Plaintiffs or witnesses in danger; or that there were legal or other impediments that prevented the Plaintiffs from pursuing a remedy in Argentina.

The exhaustion of remedies defense bars Plaintiffs' claims only if remedies are available in Argentina and Plaintiffs have not tried to pursue them; once Plaintiffs have tried to pursue such remedies in Argentina, the bar is lifted. For example, if Plaintiffs have recovered administrative benefits that were available to them in Argentina due to the events that are the subject of this lawsuit, or have attempted, whether successfully or unsuccessfully,

**to bring civil lawsuits in Argentina relating to the events at issue in this lawsuit, they have adequately exhausted their remedies and the defense fails.**

**Sources:** 28 U.S.C. § 1350(2)(b); S. Rep. No. 102-249, at 9–10 (1991) ("[T]he respondent has the burden of raising the nonexhaustion of remedies as an affirmative defense and must show that domestic remedies exist that the claimant did not use. Once the defendant makes a showing of remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. The ultimate burden of proof and persuasion on the issue of exhaustion of remedies, however, lies with the defendant."); *Jean v. Dorelien*, 431 F.3d 776, 781–82 (11th Cir. 2005) (explaining burden shifting framework for proving exhaustion and finding that ongoing risk of retaliation against plaintiffs and a political structure that would prevent successful litigation of human rights claims in Haiti excuse exhaustion under the TVPA); *Mamani v. Berzain*, 825 F.3d 1304, 1309 (11th Cir. 2016) (holding that exhaustion bar exists only when remedy is available and has not been sought by plaintiffs); *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996) ("[I]n most instances the initiation of litigation under [the TVPA] will be virtually *prima facie* evidence that the claimant has exhausted his or her remedies in the jurisdiction in which the [abuses] occurred." (quoting S. Rep. No. 102-249 at 9–10 (1991))); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1115 (S.D. Fla. 2016) (denying motion to dismiss for lack of exhaustion where plaintiffs alleged that exhausting remedies in Colombia "would be futile because of the ongoing risk of violent retaliation"); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 485 (D. Md. 2009) (finding that defendant failed to prove exhaustion as "[t]he record is barren of any evidence that the criminal case against [defendant] is proceeding apace or that there is any reasonably foreseeable date for its conclusion"), *aff'd in part, appeal dismissed in part sub nom. Ochoa Lizarbe v. Rivera Rondon*, 402 F. App'x 834 (4th Cir. 2010); *Sinaltrainal v. Coca–Cola* Co., 256 F. Supp. 2d 1345, 1357–58 (S.D. Fla. 2003) (finding that plaintiffs "are entitled to a presumption that local remedies have been exhausted"); *Estate of Rodriguez v. Drummond Co.*, Inc., 256 F. Supp. 2d 1250, 1267–68 (N.D. Ala. 2003) (finding that plaintiffs adequately alleged unavailability of remedies because they would have faced retaliation for seeking legal redress); *Presbyterian Church of Sudan v. Talisman Energy, Inc*., 244 F. Supp. 2d 289, 343 n.44 (S.D.N.Y. 2003) ("[T]he Court is aware of no case . . . in which plaintiffs were required to exhaust local remedies . . . where doing so would be futile and would put plaintiffs in great danger."); *Xuncax v. Gramajo*, 886 F. Supp. 162, 178 (D. Mass. 1995) (finding that plaintiff exhausted remedies where domestic criminal case had made no progress for years despite her participation and civil actions could not be brought until final criminal judgment had been rendered).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 5.2**

Defendant has asserted an affirmative defense based on failure to exhaust local remedies. Defendant disputes Plaintiffs' instruction on the basis that it is not a correct statement of the law. Plaintiffs' proposed instruction contains a correct statement of the law, whereas Defendant's proposal is incorrect for multiple reasons.

Plaintiffs' instruction—in its latter two paragraphs—properly provides examples of circumstances in which courts have found that adequate and available remedies did not exist in the home country or that Plaintiffs sufficiently exhausted remedies. These examples are based on relevant caselaw and are necessary to help the jury make a factual determination as to whether Plaintiffs' have shown that local remedies in Argentina are "ineffective, unobtainable, unduly prolonged, inadequate, or futile" or that they have sufficiently exhausted the remedies available to them.

For example, when local proceedings have made little progress over years despite the plaintiffs' participation, courts have routinely found that local remedies are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile" and have excused the TVPA's exhaustion requirement. *See e.g.*, *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 485 (D. Md. 2009) (finding that defendant failed to prove exhaustion as "[t]he record is barren of any evidence that the criminal case against [defendant] is proceeding apace or that there is any reasonably foreseeable date for its conclusion"), *aff'd in part, appeal dismissed in part sub nom. Ochoa Lizarbe v. Rivera Rondon*, 402 F. App'x 834 (4th Cir. 2010); *Xuncax v. Gramajo*, 886 F. Supp. 162, 178 (D. Mass. 1995) (finding exhaustion did not bar plaintiffs' TVPA claims where a criminal case in the country where the incident occurred had made no progress for years despite the plaintiff's participation).

Similarly, courts have found that exhaustion is excused when pursuing remedies places plaintiffs or witnesses in danger or when legal or other impediments prevent Plaintiffs' pursuing local remedies. *Dorelien*, 431 F.3d at 782 (excusing exhaustion where ongoing risk of retaliation and political structure prevented successful litigation of human rights claims in Haiti); *In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 190 F. Supp. 3d 1100, 1115 (S.D. Fla. 2016) (denying motion to dismiss where plaintiffs alleged that exhausting remedies in Colombia "would be futile because of the ongoing risk of violent retaliation"); *Estate of Rodriguez v. Drummond Co.*, Inc., 256 F. Supp. 2d 1250, 1267–68 (N.D. Ala. 2003) (holding local remedies unavailable because plaintiffs would have faced retaliation for seeking legal redress); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 343 n.44 (S.D.N.Y. 2003) (holding that plaintiffs were not required to pursue local remedies "where doing so would be futile and would put plaintiffs in great danger").

The Eleventh Circuit in *Mamani v. Sanchez* also made clear that, the exhaustion of remedies defense bars plaintiffs' claims **only if** domestic remedies are available **and** Plaintiffs have not tried to pursue them; once plaintiffs have tried to pursue such remedies the bar is lifted. 825 F.3d 1304, 1309 (11th Cir. 2016). Indeed, the court determined that because the *Mamani* plaintiffs had applied for administrative benefits in Bolivia, where the wrongful conduct occurred, the TVPA's exhaustion requirement no longer barred their claims. *Id.* The example that Plaintiffs have used to illustrate this proposition and aid the juries fact finding is both relevant to the facts of this case—as Plaintiffs have applied for administrative benefits in Argentina—and drawn directly from *Mamani*. *Id.*

Accordingly, Plaintiffs' instruction should be given as proposed because it is an accurate statement of the law and will better assist the jury because it contains exemplary scenarios—arising

directly out of case law—that provide meaningful guidance. This approach of using exemplary scenarios is one that Defendant himself adopted in his proposed instructions, for example on statute of limitations and extrajudicial killing, so it is unclear how he can plausibly claim it is improper.

**5.2     Disputed - Defendant's Proposed Instruction: Affirmative Defense – Exhaustion of Local Remedies**

Defendant Bravo has raised as an affirmative defense that Plaintiffs cannot prevail on their claims because they have not exhausted adequate and available remedies in Argentina. Plaintiffs are entitled to a presumption that local remedies have been exhausted because they brought suit here in the United States. But, if you find that Defendant Bravo proved by a preponderance of evidence that adequate and available remedies exist and Plaintiffs have not exhausted them, Plaintiffs may rebut that evidence by showing that that the local remedies in Argentina were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile. If you find that the local remedies in Argentina were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile, then the Plaintiffs were not required to exhaust such remedies and you should find against Defendant Bravo on this affirmative defense.

**Authority:** *Jean v. Dorelien*, 431 F.3d 776, 782 (11th Cir. 2005). *Jaramillo v. Naranjo*, No. 10-21951-Civ-TORRES, 2021 U.S. Dist. LEXIS 184724, at *25 (S.D. Fla. Sep. 28, 2021).

**Defendant's Argument in Support of Defendant's Proposed Instruction 5.2**

**<u>Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 5.2</u>**

Plaintiffs added the following two paragraphs to this instruction:

You should find that the local remedies in Argentina are ineffective, unobtainable, unduly prolonged, inadequate, or futile if Plaintiffs have shown by a preponderance of evidence, for example, that legal proceedings in the country where the incident occurred made little progress over the years; that pursuing remedies in the country where the incident occurred would have placed the Plaintiffs or witnesses in danger; or that there were legal or other impediments that prevented the Plaintiffs from pursuing a remedy in Argentina.

The exhaustion of remedies defense bars Plaintiffs' claims only if remedies are available in Argentina and Plaintiffs have not tried to pursue them; once Plaintiffs have tried to pursue such remedies in Argentina, the bar is lifted. For example, if Plaintiffs have recovered administrative benefits that were available to them in Argentina due to the events that are the subject of this lawsuit, or have attempted, whether successfully or unsuccessfully, to bring civil lawsuits in Argentina relating to the events at issue in this lawsuit, they have adequately exhausted their remedies and the defense fails.

**<u>Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 5.2</u>**

Defendant objects to Plaintiffs' addition of the two paragraphs as the instruction uses language that is unnecessarily confusing and misleading to the jury because it contains words and examples that are highly prejudicial to Defendant without any legal support from this Circuit for the use of same. Indeed, this language is not based on any case from the Southern District of Florida that has dealt with TVPA claims.The language that Plaintiffs added should not be incorporated.

### 6. Plaintiffs' Proposed Instruction: Damages

It is my duty to instruct you as to the proper measure of damages to be applied in this case if you find that Plaintiffs have proved each of the elements of their claims. By instructing you regarding damages, I am not indicating, one way or the other, that I have any opinion regarding whether or not damages should be awarded in this case.

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 6**

Defendant does not dispute the text of Plaintiffs' proposed introduction to the damages instructions, rather he maintains that this instruction should not be given at all because it was given previously in instruction 3.7.2. However, this is incorrect—instruction 3.7.2 is on Defendant's burden of proof, not damages. Moreover, Defendant's objection makes no sense—Defendant has proposed identical language as part of his compensatory damages instruction. Because Plaintiffs are requesting both compensatory and punitive damages and because this paragraph serves as an introduction to both of those instructions, Plaintiffs believe separating it from the compensatory damages instruction will avoid confusion for the jury. This instruction is an accurate statement of the law and will assist the jury in understanding the instructions on damages. It should be given as proposed by Plaintiffs.

**Defendant's Objection to Plaintiffs' Proposed Instruction 6.0**

Defendant objects to Plaintiffs' addition of this instruction as it is unnecessarily repetitive to the Instruction 6.1.  Further, this instruction is not given as a separate instruction in any of the cases used by the parties as modeled for their instructions: *Mamani*. *Cabello, or Jara.*

**6.1     Disputed - Plaintiffs' Proposed Instruction: Compensatory Damages**

If you find in favor of any or all Plaintiffs and against Defendant, then you must determine an amount that is fair compensation for the damages suffered by the Plaintiff or Plaintiffs. Compensatory damages seek to make the party whole – that is, to compensate the Plaintiffs for the damage suffered as a result of Defendant's wrongful conduct. The damages, if any, that you award, must be full and fair compensation, no more and no less.

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require Plaintiffs to prove their losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

Compensatory damages are the measure of the loss or injury sustained by the injured Plaintiff, and may embrace shame, mortification, humiliation, indignity to the feelings and the like, and they require no proof.

In particular, you may award compensatory damages for pain and suffering and mental and emotional distress. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damages. Any award you make must be fair in light of the evidence presented at trial.

You should consider the following elements in determining the amount of compensatory damages, to the extent you find them proved by a preponderance of the evidence:

(1) Plaintiffs' physical and emotional pain, suffering, and mental anguish; and

(2) Plaintiffs' physical and mental injury.

**Sources:** Eleventh Circuit Civil Pattern Jury Instructions, §§ 4.1, 5.13 (2020); Court's Instructions to the Jury at 25–26, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Court's Instructions to the Jury at 21, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, aff'd, 402 F.3d 1148 (11th Cir. 2005); Transcript of Trial at III-221–24, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294; *see also Chavez v. Carranza*, 559 F.3d 486, 491, 499 (6th Cir. 2009) (affirming jury's award of $500,000 in compensatory damages and $1 million in punitive damages to each plaintiff under the TVPA and the ATS); *Arce v. Garcia*, 434 F.3d 1254, 1256 (11th Cir. 2006) (affirming jury's award of $54,600,000 in compensatory and punitive damages under the TVPA and the ATS); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (upholding general jury verdict that included an award of compensatory and punitive damages for liability under the TVPA and ATS); *Hilao v. Estate of Marcos*, 103 F.3d 767, 779–87 (9th Cir. 1996) (affirming district court's award of compensatory and punitive damages for liability under the TVPA and the ATS); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *9–*12 (S.D. Fla. Sept. 27, 2021) (reasoning that, in determining a damages award under the TVPA, "[c]ourts typically consider . . . (1) the brutality of the act; (2) the egregiousness of the defendant's conduct; (3) the unavailability of a criminal remedy; (4) international condemnation of the act; (5) deterrence of others from committing similar acts; and (6) provision of redress to plaintiff, country, and world" (quoting *Ahmed v. Magan*, No. 2:10-CV-00342, 2013 WL 4479077, at *7 (S.D. Ohio Aug. 20, 2013))); *Ahmed v. Magan*, No. 2:10-CV-00342, 2013 WL 4479077, at *7 (S.D. Ohio Aug. 20, 2013) (recommending the award of $5,000,000 in compensatory damages and $10,000,000 in punitive damages under the ATS and the TVPA), *report and recommendation adopted*, No. 2:10-CV-00342, 2013 WL 5493032 (S.D. Ohio Oct. 2, 2013); *Yousuf v. Samantar*, No. 1:04-cv-1360 (LMB/JFA), 2012 WL 3730617, at *14-15 (E.D. Va. Aug. 28, 2012) (awarding compensatory and punitive damages based on plaintiffs' "credible and compelling testimony of cognizable [physical and psychological] injuries stemming from the alleged" torture and extrajudicial killing under the ATS and TVPA); *Kpadeh v. Emmanuel*, No. 09-20050-CIV-JORDAN, 2010 WL 11575054, at *6 (S.D. Fla. Feb. 5, 2010) (applying the federal common law to damages under the ATS and TVPA and awarding compensatory damages given "the physical pain and mental anguish the plaintiffs suffered a decade ago and continue to suffer today"); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1158 (E.D. Cal. 2004) (noting that "[c]ourts have awarded significant compensatory and punitive damages for extrajudicial killing under the TVPA" and collecting cases); *Tachiona v. Mugabe*, 234 F. Supp. 2d 401, 441 (S.D.N.Y. 2002) (adopting the magistrate court's recommended award of $20,250,453 in compensatory damages and $51,000,000 in punitive damages for liability under the TVPA and the ATS); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1358–60 (N.D. Ga. 2002) (awarding $10,000,000 in compensatory damages to each plaintiff under the ATS and the TVPA "as compensation for [the plaintiffs'] injuries and suffering"); *Xuncax v. Gramajo*, 886 F. Supp. 162, 198 (D. Mass. 1995) (awarding compensatory damages to plaintiff under the TVPA).

**Plaintiffs' Argument in Support of Plaintiffs' Proposed Instruction 6.1**

Plaintiffs' instruction is taken virtually verbatim from instructions given in a similar TVPA case involving allegations of torture, extrajudicial killing, and attempted extrajudicial killing against military members. *See* Court's Instructions to the Jury at 25–26, *Jara v. Barrientos Nunez*, No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184; Transcript of Trial at III-221–24, Court's Instructions to the Jury, *Warfaa v. Ali*, No. 1:05-cv-00701-LMB-JFA (E.D. Va. Nov. 11, 2019), ECF No. 294, *aff'd* 1 F.4th 289 (4th Cir. 2021).

Moreover, Plaintiffs' proposed instruction tracks the factors courts have found to be relevant when assessing damages in TVPA cases where Plaintiffs claim damages based on physical and mental pain or suffering. *See, e.g.*, *Yousuf v. Samantar*, No. 1:04-cv-1360 (LMB/JFA), 2012 WL 3730617, at *14 (E.D. Va. Aug. 28, 2012) (awarding compensatory and punitive damages based on plaintiffs' "credible and compelling testimony of cognizable [physical and psychological] injuries stemming from the alleged" torture and extrajudicial killing under the ATS and TVPA); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1358-59 (N.D. Ga. 2002) (assessing damages for claims under the ATS and TVPA and noting that courts assess compensatory damages "in light of the gravity of the abuses involved and the serious physical and psychological injuries caused by acts such as those suffered by plaintiffs"). Here, Plaintiffs claim damage for, among other things: (1) the loss of a mother; (2) the loss of a spouse; (3) the loss of an uncle; and (4) the pain and suffering of being tortured by gunshot wound to the stomach and by watching fellow inmates being shot. Given the particularly intangible harm suffered by Plaintiffs and, in Plaintiff Raquel Camps' case, by their family members, Plaintiffs proposed instruction will better enable the jury to assess the damages in this case than the instruction proposed by Defendant.

In addition, Defendant's instruction is redundant and unnecessarily prejudicial to Plaintiffs. For example, in its third paragraph, the instruction twice states that damages should not be based

on speculation within the span of two sentences. *See* Defendant's Proposed Instruction 6.1 ("compensatory damages must not be based on speculation . . . You should not award compensatory damages for speculative injuries"). This point need only be made once, as stated in Plaintiffs proposed instruction. *See* Plaintiffs' Proposed Instruction 6.1 ("you must not let that difficulty lead you to engage in arbitrary guesswork").

Similarly, the penultimate paragraph of Defendant's proposed instruction twice references Plaintiffs' burden of proof, which is redundant and unnecessary. *Compare* Defendant's Proposed Instruction 6.1 (The Plaintiffs have the burden of proving compensatory damages by a preponderance of the evidence. . . . You should consider only the following elements of damage, to the extent you find them proved by a preponderance of the evidence as to each Plaintiff") *with* Plaintiffs Proposed Instruction 6.1 ("You should consider the following elements in determining the amount of compensatory damages, to the extent you find them proved by a preponderance of the evidence").

Finally, Defendant's instruction refers to the fact that Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize the Defendant. *See* Defendant's Proposed Instruction 6.1 ("Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize the Defendant."). As Plaintiffs are also claiming punitive damages, this sentence is confusing and may mislead the jury. To the degree the Court adopts this portion of Defendant's proposed instruction on compensatory damages, it should be accompanied by a clarification that the proper way to award damages to penalize the Defendant is by punitive damages, with a reference to the relevant instruction.

Thus, because Plaintiffs instruction is an accurate statement of the law, will better assist the jury in assessing the award of damages in this case, and is not unduly prejudicial to one side or the other it should be given, as proposed by Plaintiffs.

**6.1     Disputed - Defendant's Proposed Instruction: Compensatory Damages**

It is the duty of the Court to instruct you about the measure of damages. Of course, the fact that I have given you instructions concerning the issue of Plaintiffs' damages should not be interpreted in any way as an indication that I believe that the Plaintiffs should, or should not, prevail in this case.

If you find in favor of any Plaintiff and against Defendant, then you must determine an amount that is fair compensation for the damages suffered by that Plaintiff for any loss or injury you find was actually sustained as a consequence of the Defendant's conduct. In considering the issue of compensatory damages, you are instructed that you should assess the amount you find to be justified by a preponderance of the evidence as full, just and reasonable compensation for all of the Plaintiff's damages, no more and no less.

Compensatory damages are not allowed as punishment and must not be imposed or increased to penalize the Defendant. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable. You should not award compensatory damages for speculative injuries, but only for injuries a Plaintiff actually sustained.

You may not award compensatory damages for economic damages, such as lost earnings or medical expenses, but only for non-economic damages, which cover both mental and physical aspects of injury, both tangible and intangible. Plaintiffs are not required to offer evidence of the actual value of such intangibles as physical or emotional pain and mental anguish. There is no exact standard to be applied; any such award should be fair and just in the light of the evidence.

The Plaintiffs have the burden of proving compensatory damages by a preponderance of the evidence. It is for you to determine what damages, if any, have been proved. You should

consider only the following elements of damage, to the extent you find them proved by a preponderance of the evidence as to each Plaintiff:

- ▪ Plaintiff's Physical and emotional pain, suffering and mental anguish; and

- ▪ Plaintiff's physical and mental injury.

Each Plaintiff must prove that the compensation that he or she seeks relates to damages that naturally flow from the injuries proved. In other words, there must be a sufficient causal connection between the injuries sustained and the harm sustained by the Plaintiff.

**Authority:** Eleventh Circuit Pattern Jury Instructions No. 3.8.1 and 4.1 (2013 Edition); Instruction given in *Mamani v. Sanchez*, S.D. Fla., Case No. 08-21063-CIV-COHN/SELTZER (D.E. 429)(March 27, 2018); *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004); *Paul v. Avril*, 901 F. Supp. 330, 336 (S.D. Fla. 1994); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322 (N.D. Ga. 2002); Fla. Stat. §§ 768.18(1) (specifying types of damages recoverable for survivors in the case of a wrongful death, which would apply here where Plaintiffs bring these claims in their own capacity and as Florida-appointed personal representatives of the estates of decedents), 768.18 (defining minor children as those under 25 years of age); *Varona v. Disc. Auto Parts, LLC*, No. 12-20714-CIV, 2012 WL 2334703, at *1 (S.D. Fla. June 19, 2012) (where, as here, Plaintiffs have disavowed seeking economic damages and failed to provide calculations for non-economic damages, Plaintiffs may not seek economic damages and "are precluded from suggesting any amount of non-economic damages to the jury at any point"); *King v. City of Waycross, Georgia*, No. CV 5:14-CV-32, 2015 WL 5468646, at *3 (S.D. Ga. Sept. 17, 2015) (same).

**Defendant's Argument in Support of Defendant's Proposed Instruction 6.1**

**Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 6.1**

Plaintiffs completely changed the language of Defendant's instruction and provided its own instruction.

**Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 6.1**

Defendant proposed this instruction which was modeled from the jury instructions given in *Mamani v. Sanchez*, S.D. Fla., Case No. 08-21063-CIV-COHN/SELTZER (D.E. 429) (March 27, 2018) and *Curbelo Garcia v. Chapman,* No. 1:12-cv-21891, Dkt. 239-1 (S.D. Fla. Oct. 6, 2014).  Defendant objects to Plaintiffs' instruction as it includes language not based on any case from the Southern District of Florida that has dealt with TVPA claims. The paragraphs added by Plaintiffs were not part of the instructions on compensatory damages given either in the *Mamani* case or in *Cabello v. Fernandez-Larios*, No. 1:99- cv-00528, Dkt. 352 (S.D. Fla. May 24, 2004) (jury instructions in TVPA case). Further, Plaintiffs' added paragraphs are unnecessarily confusing and misleading to the jury as it uses language and examples that are highly prejudicial to Defendant. The Southern District of Florida instruction should be used and the paragraphs that Plaintiffs added should not be incorporated.

**6.2     Disputed - Plaintiffs' Proposed Instruction: Punitive Damages**

In addition to compensatory damages, you have the discretion to award punitive damages. Unlike compensatory damages, which are imposed to reimburse the Plaintiffs for their injuries, punitive damages are designed to make an example of the defendant's conduct so that others will not engage in similar practices.

You may award punitive damages to the Plaintiffs if they have proven that Defendant Bravo's conduct was wanton and reckless, not merely unreasonable. An act is wanton and reckless if it is done in such a manner, and under such circumstances, as to reflect utter disregard for the potential consequences of the act on the safety and rights of others. The purpose of punitive damages is to punish a defendant for shocking conduct, in order to deter him and others from committing similar acts in the future. Punitive damages are intended to protect the community and to express the jury's indignation at a defendant's misconduct.

The award of punitive damages is within your discretion – you are not required to award them nor are you required to limit them to the extent you have awarded compensatory damages. Punitive damages are appropriate only for especially shocking and offensive misconduct. If you decide to award punitive damages, you must use sound reason in setting the amount. It must not reflect bias, prejudice, or sympathy toward any party. But the amount can be as large as you believe is necessary to fulfill the purpose of punitive damages. There is no exact standard for fixing the amount of punitive damages. Any award you make should be fair in the light of the evidence. The amount of any punitive damages award should bear a reasonable relationship to the compensatory damages awarded to the Plaintiffs. This means that the ratio of punitive damages to compensatory damages must not exceed a 9:1 ratio.

Should you award punitive damages to the Plaintiffs, in fixing the amount, you must consider what is reasonably required to accomplish the goals of punishing the defendant and deterring others from committing similar acts. You should also consider the degree of reprehensibility of Defendant Bravo's conduct toward the Plaintiffs and the relationship between the harm suffered by the Plaintiffs and the amount of punitive damages you are considering. In sum, in computing punitive damages you should award the amount you find appropriate to punish the defendant for the injuries to the Plaintiffs in this lawsuit and to set an example to others that will deter them from engaging in similar conduct.

Finally, you may consider the financial resources of the defendant in fixing an amount of punitive damages. However, I instruct you that the burden is on the defendant to show that his financial circumstances warrant a limitation of any award.

**Sources**: Court's Instructions to the Jury at 26–28, *Jara v. Barrientos Nunez*, Case No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184;  Court's Instructions to the Jury at 22–23, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, *aff'd*, 402 F.3d 1148 (11th Cir. 2005); Court's Instructions to the Jury at 26, *Mamani v. Berzain*, Case No. 1:08-cv-21063-JIC (S.D. Fl. Mar. 27, 2018), ECF No. 429; *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1."); *Truesdell v. Thomas*, 889 F.3d 719, 727 (11th Cir. 2018) ("The instruction that punitive damages 'should bear a reasonable relationship to the amount of the compensatory damages awarded to the [p]laintiff' is a correct statement of law." (citing *State Farm*, 538 U.S. at 426); *Searcy v. R.J. Reynolds Tobacco Co*., No. 3:09-CV-13723, 2013 WL 5421957, at *1 (M.D. Fla. Sept. 12, 2013) (Moore, J.) (finding that a ratio of 1.67:1 was proper "especially when ratios much higher than that[,]" specifically 5:1 and 7:1, were affirmed in other tobacco related wrongful death cases), *aff'd*, 902 F.3d 1342 (11th Cir. 2018); *see also Chavez v. Carranza*, 559 F.3d 486, 491, 499 (6th Cir. 2009) (affirming jury's award of $500,000 in compensatory damages and $1 million in punitive damages to each plaintiff under the TVPA and the ATS); *Arce v. Garcia*, 434 F.3d 1254, 1256 (11th Cir. 2006) (affirming jury's award of $54,600,000 in compensatory and punitive damages under the TVPA and the ATS); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (upholding general jury verdict that included an award of compensatory and punitive damages for liability under the TVPA and ATS); *Hilao v. Estate of Marcos*, 103 F.3d 767, 779-786 (9th Cir. 1996) (affirming district court award of compensatory and punitive damages for violations under the TVPA); *Jaramillo v. Naranjo*, No. 10-21951-CIV, 2021 WL 4427455, at *9–*12 (S.D. Fla. Sept. 27, 2021) (reasoning that, in determining a damages award under the TVPA, "[c]ourts typically consider . . . (1) the brutality of

the act; (2) the egregiousness of the defendant's conduct; (3) the unavailability of a criminal remedy; (4) international condemnation of the act; (5) deterrence of others from committing similar acts; and (6) provision of redress to plaintiff, country, and world" (quoting *Ahmed v. Magan*, No. 2:10-CV-00342, 2013 WL 4479077, at *7 (S.D. Ohio Aug. 20, 2013))); *Ahmed v. Magan*, No. 2:10-CV-00342, 2013 WL 4479077, at *7 (S.D. Ohio Aug. 20, 2013) (recommending the award of $5,000,000 in compensatory damages and $10,000,000 in punitive damages under the ATS and the TVPA), *report and recommendation adopted*, No. 2:10-CV-00342, 2013 WL 5493032 (S.D. Ohio Oct. 2, 2013); *Yousuf v. Samantar*, No. 1:04-cv-1360 (LMB/JFA), 2012 WL 3730617, at *15-16 (E.D. Va. Aug. 28, 2012) (finding that "[p]unitive damages are commonly awarded in cases under the . . . TVPA"); *Kpadeh v. Emmanuel*, No. 09-20050-CIV-JORDAN, 2010 WL 11575054, at *6 (S.D. Fla. Feb. 5, 2010) (awarding punitive damages under the ATS and the TVPA as defendant's "horrific" actions, which were "a chilling example of man's inhumanity to man" and were "designed to strip the plaintiffs of their humanity and dignity, deserve the strongest judicial condemnation and warrant stiff awards of punitive damages to punish [defendant] and deter any others who might be inclined to engage in similar reprehensible conduct"); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1158 (E.D. Cal. 2004) ("Courts have awarded significant compensatory and punitive damages for extrajudicial killing under the TVPA[.]"); *Tachiona v. Mugabe*, 216 F. Supp. 2d 262, 282 (S.D.N.Y. 2002) (awarding compensatory and punitive damages for violations under the ATS and the TVPA); *Mehinovic v. Vuckovic*, 198 F. Supp. 2d 1322, 1358–60 (N.D. Ga. 2002) (awarding $10,000,000 in compensatory damages and $25,000,000 in punitive damages to each plaintiff under the ATS and the TVPA "to punish defendant and deter others from committing similar abuses"); *Xuncax v. Gramajo*, 886 F. Supp. 162, 199-200 (D. Mass. 1995) (acknowledging that Congress contemplated the award of punitive damages for violations under the TVPA).

**Plaintiffs Argument in Support of Instruction 6.2**

Plaintiffs' instruction is taken almost verbatim from instructions given in other Eleventh Circuit TVPA cases involving allegations of torture and extrajudicial killing. *See* Court's Instructions to the Jury at 26–28, *Jara v. Barrientos Nunez*, Case No. 6:13-cv-1426-ORL-37GJK (M.D. Fl. June 28, 2016), ECF No. 184 ("*Jara* Punitive Damages Instruction"); Court's Instructions to the Jury at 22–23, *Cabello v. Fernandez-Larios*, No. 1:99-cv-00528-JAL (S.D. Fla. Oct. 17, 2003), ECF No. 308, *aff'd*, 402 F.3d 1148 (11th Cir. 2005) ("*Cabello* Punitive Damages Instruction").

Defendant's instruction, on the other hand, is confusing and misleading. It conflates two different standards for punitive damages, first noting that punitive damages should be awarded if Defendant's conduct was "wanton and malicious" and then stating that punitive damages are proper if the jury finds that Defendant acted "willfully or maliciously." Defendant's Proposed Instruction 6.2. Rather, courts in the Southern and Middle Districts of Florida typically apply the "wanton and reckless" standard Plaintiffs propose in their instruction. *See Jara*Punitive Damages Instruction; *Cabello* Punitive Damages Instruction.

Defendant's instruction also fails to instruct the jury on the fact that any award for punitive damages must bear a reasonable relationship to the compensatory damages awarded, as required by due process. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425-26 (2003) (punitive damages "should bear a reasonable relationship to the amount of the compensatory damages awarded to the [p]laintiff' and "[s]ingle-digit multipliers are more likely to comport with due process"). Similarly, Defendant's instruction fails to instruct the jury that it is his burden to show that his financial resources warrant a limitation of any award on punitive damages. *See Laboy v. Fla. Dept. of Children & Fam. Servs.*, Case No. 07-14071-CIV-GRAHAM/LYNCH, 2008 WL 11408625, at *1 (S.D. Fla. Jan. 1 2008) ("it is the Defendant's

burden of proof to show grounds warranting a punitive award reduction"); *Paul v. Avril*, 901 F. Supp. 330, 336 (S.D. Fla. 1994) ("Although in assessing punitive damages, the Court must consider the defendant's financial condition, the burden is on the defendant to introduce evidence of his modest means."); *Jara* Punitive Damages Instruction; *Cabello* Punitive Damages Instruction.

Given the particular context of cases involving international human rights violations and the egregiousness of the allegations at issue, Plaintiffs' more detailed, less confusing, and more accurate instruction, modeled on one used by other courts in similar contexts, will better help the jury assess an appropriate award of punitive damages in this case. Plaintiffs' instruction should, therefore, be given as proposed.

**6.2     Disputed - Defendant's Proposed Instruction: Punitive Damages – The Torture Victim Protection Act**

Plaintiffs also claim that Defendant's conduct was wanton and malicious, which would entitle Plaintiffs to punitive damages in addition to compensatory damages. You will only reach the issue of punitive damages if you find that a Plaintiffs have proved the elements of his or her TVPA claim against Defendant. If you find for a Plaintiff on his or her TVPA claim and find that Defendant acted willfully or maliciously, the law allows you, in your discretion, to award the Plaintiff punitive damages as a punishment for the Defendant and as a deterrent to others.

A person acts with malice if the person's conduct is motivated by evil intent or motive. An act is wanton if done in a reckless or callous disregard of, or indifference to, the safety and rights of others. Punitive damages are appropriate only for especially shocking and offensive misconduct.

If you decide to award punitive damages, you must use sound reason in setting the amount. It must not reflect bias, prejudice, or sympathy toward any party. There is no exact standard for fixing the amount of punitive damages. You should consider the degree of reprehensibility of the Defendant's conduct toward a Plaintiff and the relationship between the harm suffered by a Plaintiff and the amount of punitive damages you are considering. You may also consider the evidence regarding the Defendant's financial resources in fixing the amount of punitive damages.

**Sources:** Eleventh Circuit Pattern Jury Instructions No. 2.1; Instruction given in *Mamani v. Sanchez*, S.D. Fla., Case No. 08-21063-CIV-COHN/SELTZER (D.E. 429)(March 27, 2018).

**Defendant's Argument in Support of Defendant's Proposed Instruction 6.2**

**<u>Defendant's Description of Plaintiff's Response to Defendant's Proposed Instruction 6.2</u>**

Plaintiffs completely changed the language of Defendant's instruction and provided its own instruction.

**<u>Defendant's Reply to Plaintiffs' Objection to Proposed Instruction 6.2</u>**

Defendant proposed this instruction which was modeled from the jury instructions given in *Mamani v. Sanchez*, S.D. Fla., Case No. 08-21063-CIV-COHN/SELTZER (D.E. 429) (March 27, 2018). Defendant objects to Plaintiffs' instruction as its language and examples are highly prejudicial to Defendant. Further, the language added by Plaintiffs is unnecessarily confusing and misleading to the jury. The Southern District of Florida instruction from 2018 should be used and the instruction provided by Plaintiffs should not be incorporated.