## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO. 1:20-CV-24294-LFL

RAQUEL CAMPS, in her capacity as the
personal representative of the ESTATE OF
ALBERTO CAMPS,

EDUARDO CAPPELLO, in his individual
capacity, and in his capacity as the personal
representative of the ESTATE OF EDUARDO
CAPPELLO,

ALICIA KRUEGER, in her individual
capacity, and in her capacity as the personal
representative of the ESTATE OF RUBÉN
BONET,

and, MARCELA SANTUCHO, in her
individual capacity, and in her capacity as the
personal representative of the ESTATE OF
ANA MARÍA VILLARREAL DE
SANTUCHO,

       Plaintiffs,

  v.

ROBERTO GUILLERMO BRAVO,

        Defendant.

## **<u>PLAINTIFFS' EVIDENTIARY BRIEF</u>**

1871937

I.     **BRAVO'S IRRELEVANT EVIDENCE SUGGESTING PROPENSITY FOR VIOLENCE MUST BE EXCLUDED (OPENING PHOTO DX 10-25, 30)**

Although this Court has repeatedly ruled that using the Trelew victims' political affiliations to imply a propensity for violence is inadmissible under FRE 401 and 404, and more generally confirmed that propensity evidence is improper, Bravo persists in seeking to admit such irrelevant, improper, and prejudicial evidence. ECF 90 (Omnibus Order) at 11-13; ECF 107 (Evid. Order) at 21–22; ECF 116-1 (Depo. Desig. Order) at 4 (sustaining objection to designation regarding Ms. Santucho's political beliefs on the basis that such beliefs "do not make it more or less likely that an attempted escape was made, nor do they justify her mother's murder").

Now, Bravo intends to use in opening a highly inflammatory "demonstrative" photo (never identified as an exhibit) of the Trelew victims being paraded before cameras by the Argentine military with guns at their feet—thus implying that they had a propensity for violence. *See* Ex. A. Similarly, Bravo intends to question Plaintiffs' witnesses, potentially with news articles on his exhibit list (DX 10-25 and 30) that describe conduct of "guerrilla" groups in Argentina in the 1970s—so as to argue that these groups were violent, the Trelew victims may have been part of these groups, and that accordingly the Trelew victims were likely violent too.

This improper propensity evidence should be excluded—in these forms, and whatever new form Bravo tries next. What matters is whether the Trelew victims were violent *in the cell block where they were shot*. Gleaning what happened there based on political affiliations or past alleged violent acts violates FRE 404, runs counter to this Court's prior rulings, and is highly prejudicial. Likewise, as this Court explained, the ***reasons*** (*e.g.*, drug use, politics) defendant may posit for why the victims were violent are irrelevant; what matters is actual violence that night. Dkt. 97 at 11 (citing *United States v. Wilk*, 572 F.3d 1229, 1234 (11th Cir. 2009)).

*First*, Bravo's "demonstrative" photo for use in opening is highly problematic. No witness in this case has personal knowledge that the guns in the photo belong to the Trelew victims—but it will imply that the victims had a propensity for violence. It is therefore inadmissible under FRE 602 and 404; it is also blatantly inflammatory and prejudicial under FRE

1

403. *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1004-05 (5th Cir. 1998) (affirming exclusion under FRE 403 of photos as having even more potential than testimony to inflame the jury). Nor is it a proper demonstrative for an opening statement. The purpose of an opening statement "is not to poison the jury's mind" and "it is certainly not to recite items of highly questionable evidence." *U.S. v. DeRosa*, 548 F.2d 464, 470 (3d Cir. 1977). Given Bravo's self-defense theory, the photo "simply cannot be viewed as a non-argumentative visual aid." *Bell v. United States*, 2014 WL 12037896 at *3 (S.D. Cal. 2014). It is therefore inadmissible for the bases given in this Court's prior orders (*i.e.*, FRE 401 and 404) as well as FRE 602 and 403.

*Second*, as to the exhibits, DX 10-13, 16, 18-25, and 30 do not discuss the Trelew victims or incident whatsoever and are accordingly entirely irrelevant to this case. *See U.S. v. Gregg*, 451 F.3d 930, 936 (8th Cir. 2006) (affirming exclusion of evidence regarding violent tendencies of individuals other than the victim as it was irrelevant to self-defense).

For DX 14-15 and 17, which tie the victims to guerrilla groups in conclusory fashion, this Court already held that, "no matter how violent Defendant claims the decedents were based on those purported affiliations," political views are "not relevant to Defendant's claim that he acted in self-defense in that instant." Dkt. 90 at 11 (citing *Wilk*, 572 F.3d at 1234-35 (11th Cir.) ("underlying reasons" why a victim might act aggressively "neither prove nor disprove any material fact at issue" and are not "crucial or necessary to [Defendant's] establishment of a valid defense"). The ***reasons*** for the Trelew victims' purported conduct on August 22, 1972—such as group affiliation—are therefore irrelevant to Bravo's self-defense. *See also Spivey v. Rocha*, 194 F.3d 971, 978 (9th Cir. 1999) ("[m]embership in an organization does not reasonably lead to any inference as to the conduct of a member on a given occasion") (citation omitted); *Lewis v. Jones*, 2015 WL 1003408 at *8–9 (N.D. Fla. March 6, 2015) (excluding circumstantial evidence of gang membership because it "had no tendency to prove that [victim] was in a gang" and thus "was of no consequence in determining whether Petitioner acted in self-defense").

Such evidence also constitutes improper character evidence under FRE 404(a)(1). This Court has already held that "evidence, argument, and/or suggestion that the nineteen decedents

had ties to communism and Cuba such that the decedents were violent is inadmissible under Federal Rule of 404(a)(1) to prove that the decedents acted violently on the particular occasion in question." Dkt. 90 at 12-13. The Court should likewise preclude evidence or argument that the Trelew victims had ties to guerrilla groups to prove that they acted violently on August 22, 1972.

Moreover, several of these exhibits violate the Court's more recent order on June 17, 2022. For example, Defense Exhibits 13, 14, 17, 18, 19, 21, 22, 23, 24, 30 purport to link the Argentine guerrilla organizations with left-wing political parties and/or Cuba, despite the Court's instruction that "references to Argentine guerilla groups in the 1970s are not permitted to the extent doing so would constitute evidence, argument, and/or suggestion that the nineteen decedents had ties to communism or Cuba, as precluded by the Court's May 17, 2022 Omnibus Order." Dkt. 107 at 22. Defense Exhibit 15 refers to the victims as terrorists, despite the Court's ruling precluding Bravo and his counsel "from using the labels 'terrorists' and 'convicted terrorists' in reference to the nineteen Trelew decedents." Dkt. 107 at 20.

The Court should therefore exclude DX 10-25 and 30, Bravo's proposed opening "demonstrative" photo and any related argument on the Trelew victims' propensity for violence.

## II.    BONET'S AND LESGART'S AUTOPSIES SHOULD BE ADMITTED (PX 71, 72)

The Court has already admitted the relevant deposition testimony that authenticates and describes the autopsies of Ruben Bonet and Susana Lesgart. Dkt. 115-1 at 7-13. Plaintiffs seek to admit the exhibits discussed in the admitted testimony (*i.e.*, the autopsies themselves).

For PX71, the Court has effectively decided the issue, finding that the "book excerpts may be introduced...but that Defendant will be permitted to seek reconsideration...in light of the evidence actually presented at trial." Dkt. 107 at 42-43. However, the record will not change at trial because the only witness with relevant knowledge is Alicia Kruger, whose deposition testimony the Court already considered (*id.*) and admitted (Dkt. 115-1 at 7-11).

Like PX 71 (Dkt. 107 at 41), PX 72 is an admissible ancient document under FRE 803(16): the autopsy was performed in August 1972, and thus before January 1, 1998. And PX 72 has also been authenticated. Kruger did so in testimony that has already been admitted (Dkt.

115-1 at 11-13); and she personally provided it to the Argentine trial court that convicted Bravo's co-perpetrators in 2012 (*id.* at 13)—which court found it sufficiently reliable to cite as evidence in support of conviction. PX 18 at 183 (relying on "the examination of Lesgart's body"). PX 72 is separately authentic under FRE 901(b)(8) (authenticating ancient documents) because it was located where one would expect to find it (*i.e.*, with Lesgart's family, Dkt. 115-1 at 12) and Bravo has raised no evidence of suspicion as to its authenticity. PX 72 is therefore admissible.

### III.    BRAVO'S JUNE 22, 2022 STATEMENT OF ASSETS SHOULD BE EXCLUDED

At 3:39 PM on Friday—less than 1.5 business hours before trial—Bravo served an "updated" statement of assets, showing a 26% reduction in his net worth since his deposition last year.[1] This "update" came after ignoring over two weeks of Plaintiffs' requests for confirmation that he would not assert a change in assets relevant to damages.

This eve-of-trial sandbag should not be permitted. Courts preclude parties from relying on untimely discovery supplementations "when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Berryman-Dages v. City of Gainesville Fla.*, 2012 WL 1130074 at *2 (N.D. Fla. 2012). Where "we are now at the eve of trial…[r]e-deposing [Bravo] at this juncture is unfeasible." *O'Brien v. NCL (Bahamas) Ltd.*, 2017 WL 6949261 at *7 (S.D. Fla. 2017).

Without discovery into Bravo's changed finances, Plaintiffs face trial by ambush and cannot effectively examine him on the "update." The Court previously compelled discovery into Bravo's financial assets—which are relevant to punitive damages—recognizing that Plaintiffs need not blindly accept Bravo's word on his finances. Dkt. 48 at 2-3. The same applies here. Additionally, Bravo's "update" is suspicious. This update was prepared by Bravo himself, and asserts that virtually everything "is in the name of both my wife and I." His annuity has also been reduced by over $1.2 million, despite his May 2021 deposition testimony that he and his wife "don't take any money from the annuity." Bravo Depo. Tr. at 207:18. The Court should exclude evidence and argument from Bravo on any change in net worth since his deposition.

---

[1] Plaintiffs will bring copies of the original and updated statements of assets to the June 27, 2022.

Dated:  June 26, 2022        By:    */s/ A. Margot Moss*

**MARKUS/MOSS PLLC**
A. MARGOT MOSS
Florida Bar Number 091870
mmoss@markuslaw.com
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
Email: mmoss@markuslaw.com

**KEKER, VAN NEST & PETERS LLP**
JOHN W. KEKER *(pro hac vice)*
AJAY S. KRISHNAN *(pro hac vice)*
FRANCO MUZZIO *(pro hac vice)*
NEHA SABHARWAL *(pro hac vice)*
633 Battery Street
San Francisco, CA 94111
Tel:    (415) 391-5400
Fax:    (415) 397-7188
Email: jkeker@keker.com
        akrishnan@keker.com
        fmuzzio@keker.com
        nsabharwal@keker.com

**CENTER FOR JUSTICE & ACCOUNTABILITY**
CLARET VARGAS *(pro hac vice)*
ELZBIETA T. MATTHEWS *(pro hac vice)*
CARMEN K. CHEUNG *(pro hac vice)*
One Hallidie Plaza, Suite 750
San Francisco, CA 94102
Tel:    (415) 544-0444
Fax:    (415) 544-0456
Email: cvargas@cja.org
        ematthews@cja.org
        ccheung@cja.org

*Attorneys for Plaintiffs Raquel Camps, Eduardo Cappello, Alicia Kreuger and Marcela Santucho*

1871937

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing instrument was electronically served on the attorneys of record for all parties to the above cause in accordance with the Federal Rules of Civil Procedure on June 26, 2022.

<u>/s/ A. Margot Moss</u>
A. MARGOT MOSS

## <u>SERVICE LIST</u>

Neal R. Sonnett
NEAL R. SONNETT, P.A.
2 S. Biscayne Boulevard
Suite 2600
Miami, FL  33131-1819
Tel: (305) 358-2000
Fax: (888) 277-0333
Email: nrslaw@sonnett.com

Counsel for Defendant

Steven W. Davis
Roger Slade
Maria S. Bodero
HABER LAW, P.A.
251 NW 23rd Street
Miami, Florida 33127
Telephone No.: (305) 379-2400
Facsimile No.: (305) 379-1106
Email: sdavis@haber.law
       rslade@haber.law
       mbodero@haber.law
       service@haber.law
       cpla@haber.law

Counsel for Defendant

A. Margot Moss
MARKUS/MOSS PLLC
40 N.W. Third Street, PH1
Miami, FL  33128
Tel:    (305) 379-6667
Fax:    (305) 379-6668
Email: mmoss@markuslaw.com

Counsel for Plaintiffs

Claret Vargas
Elzbieta T. Matthews
Carmen K. Cheung
Center for Justice & Accountability (CJA)
One Hallidie Plaza, Suite 750
San Francisco, CA 94102
Tel:    (415) 544-0444
Fax:    (415) 544-0456
Email: cvargas@cja.org
       ematthews@cja.org
       ccheung@cja.org

Counsel for Plaintiffs

1871937